**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| **INTERSPIRO, INC.,**<br><br>**and**<br><br>**SCOTT TECHNOLOGIES, INC., d/b/a/ SCOTT HEALTH & SAFETY,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant,**<br><br>**and**<br><br>**MINE SAFETY APPLIANCES CO.,**<br><br>**Defendant-Intervenor.** | **Civil Action No. 06-425C**<br>**(Judge Firestone)** |

**PLAINTIFF INTERSPIRO, INC.'S MOTION AND MEMORANDUM TO CORRECT AND SUPPLEMENT THE ADMINISTRATIVE RECORD**

David Hazelton
Joshua Chandler
Latham & Watkins LLP
555 Eleventh St. NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Attorneys for Interspiro, Inc.

Of Counsel:

Kevin A. Russell
Kyle R. Jefcoat
David P. Palmer

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

I. THE AR FILED BY DEFENDANT IS INCOMPLETE AS A MATTER OF LAW ........................................................................................................2

II. THE AR SHOULD INCLUDE THE MATERIALS SET FORTH IN INTERSPIRO'S ACCOMPANYING AR SUPPLEMENT ..........................................5

A. The AR Should Include the Air Force's Requests for Industry Input and the Information Received in Response to Its Requests ..........................................6

B. The AR Should Include the Air Force's Guidance to Prospective Offeror Regarding the RFP's Requirements and Proposal Preparation ............................11

C. The AR Should Include Additional Materials from Prior GAO Protests .............16

D. The AR Should Include the Declarations and Patent Filings Offered by Interspiro ........................................................................................................17

III. CONCLUSION ........................................................................................................20

## TABLE OF AUTHORITIES

**CASES** **PAGES**

Aero Corp., S.A. v. United States,
38 Fed. Cl. 408 (1997) ....................5, 10, 15, 17

Asia Pacific Airlines v. United States,
68 Fed. Cl. 8 (2005) ....................10

Blue & Gold Fleet, LP v. United States,
70 Fed. Cl. 487 (2006), .................... passim

Clairton Sportsmen's Club v. Pennsylvania Turnpike Commission,
882 F. Supp. 455 (W.D. Penn. 1995) ....................10

Chapman Law Firm Co. v. United States,
71 Fed. Cl. 124 (2006) .................... passim

Cubic Applications, Inc. v. United States,
37 Fed. Cl. 339 (1997) ....................5

Cubic Applications, Inc. v. United States,
37 Fed. Cl. 345 (1997) ....................4, 16

Esch v. Yeutter,
876 F.2d 976 (D.C. Cir. 1989) ....................4, 5

Fort Carson Support Services v. United States,
2006 U.S. Claims LEXIS 217 (2006) ....................10

Graphicdata, LLC v. United States,
37 Fed. Cl. 771 (1997) .................... passim

In re CBMC, Inc.,
B-295,586, 2005 WL. 35813 (Comp. Gen. Jan. 6, 2005) ....................3

In re Lyons Security Services, Inc.,
B-289,974, 2002 WL. 977435 (Comp. Gen. May 13, 2002) ....................3

International Resources Recovery Inc. v. United States,
59 Fed. Cl. 537 (2004) ....................3, 4, 16

North Carolina Division of Services for the Blind v. United States,
53 Fed. Cl. 147 (2002) ....................19

Orion International Technologies v. United States,
60 Fed. Cl. 338 (2004) ........................................ 5, 17

Pikes Peak Family Housing, LLC v. United States,
40 Fed. Cl. 673 (1998) ........................................ 4, 5, 16

Precision Standard, Inc. v. United States,
69 Fed. Cl. 738 (2006) ........................................ 18

Space Exploration Technology Corp. v. United States,
68 Fed. Cl. 1 (2005) ........................................ 3

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216 (2001) ........................................ 17, 18

Vantage Associates, Inc. v. United States,
59 Fed. Cl. 1 (2003) ........................................ passim

Worldwide Language Resources Inc.; SOS International Ltd.,
2005 WL 3143870 (Comp. Gen. Nov. 14, 2005) ........................................ 3

**STATUTES & REGULATIONS**

48 C.F.R. § 2.101 (2005) ........................................ 2

48 C.F.R. § 5.102(a)(1) (2005) ........................................ 3

Federal Acquisition Regulation; Electronic Commerce in Federal Procurement,
68 Fed. Reg. 56,676 (October 1, 2003) ........................................ 3

**OTHER**

Rules Committee Note to Court of Federal Claims Rule 52.1 ........................................ 5

## INTRODUCTION

Plaintiff Interspiro, Inc. ("Interspiro") respectfully submits that the Administrative Record ("AR") as filed by Defendant is incomplete and misleading. In its Memorandum of Points and Authorities in Support of Its Motion for Judgment on the Administrative Record ("Interspiro Mem."), Interspiro documented that the Air Force published materials in Federal Business Opportunities ("FBO") directly relevant to this procurement. See Interspiro Mem. at 2-6. The Air Force's publication of these materials in FBO, which is the Government's official method of dissemination of pertinent procurement-related information to prospective offerors, documents their relevance. Not only did the materials published by the Air Force in the FBO provide prospective offerors with instructions and other information regarding this procurement, but the Air Force also sought and obtained input from prospective offerors through its FBO notices regarding products available in the market that could satisfy agency needs. Despite the clear relevance of these and other materials, Defendant failed to include them in the AR that it filed with the Court.

Interspiro repeatedly has asked Defendant to correct this oversight by including these materials in a supplemental AR filing with the Court. See, e.g., Letters from Interspiro's counsel to Defendant's counsel (copies attached hereto as Exhibit A). Until last Thursday afternoon, Defendant's counsel has indicated that she was simply busy on other matters and was still considering how to proceed regarding the AR. It is also noteworthy that, although Interspiro itself provided several of the documents with its Motion for Judgment on the Administrative Record (see Interspiro Mem., Appendix, Tabs A-F), Defendant has raised no objection to Interspiro's provision of these materials in the Appendix previously filed with the Court. However, last Thursday at approximately 3:00 p.m., Defendant's counsel left a voicemail

message for Interspiro's counsel stating that Defendant had decided to oppose supplementing the AR.[1]

Because the AR as currently filed by Defendant fails to include materials directly relevant to this case, Interspiro is filing this motion to correct and supplement the AR. Part I explains that, as a matter of law, the AR as filed by Defendant is incomplete. Part II further documents that, as a matter of fact and law, the materials set forth in the accompanying Interspiro's Supplement to the Administrative Record ("Supp. AR") should be included in the record reviewed by the Court when deciding this case. Based on the facts and law as discussed below, Interspiro respectfully requests that the Court grant this motion to correct and supplement the AR.

## I.
## THE AR FILED BY DEFENDANT IS INCOMPLETE AS A MATTER OF LAW

Incredibly, the AR filed by Defendant omits information about this procurement that the Air Force published on the official FBO website for disseminating pertinent information to prospective offerors. The Federal Acquisition Regulation ("FAR") specifies this FBO website (http://www.fedbizopps.gov) as the "Governmentwide point of entry" where agencies are to publish "synopses of proposed contract actions, solicitations, and associated information." 48 C.F.R. § 2.101 (2005) (definition of "Governmentwide point of entry (GPE)"). FAR 5.102(a)(1)

---

[1] After this Motion was virtually complete but before it was filed, Interspiro learned that both Defendant and Defendant-Intervenor made filings on August 7, 2006, seeking to supplement the AR. Defendant's filing would add two of the documents that Interspiro is seeking to include in the record. See Supp. AR, Tabs 31 and 32. In light of Defendant's filing, it apparently now has no objection to these two items. Defendant-Intervenor's motion to supplement concerns materials not at issue in Interspiro's motion.

Significantly, both Defendant's and Defendant-Intervenor's request to supplement the AR demonstrate that they too agree that the AR as previously filed by Defendant is incomplete and needs to be supplemented.

further provides that "the contracting officer must make available through the GPE [i.e., the FBO website] solicitations synopsized through the GPE [as with the current Air Force solicitation], including specifications, technical data, and other pertinent information determined necessary by the contracting officer." 48 C.F.R. § 5.102(a)(1) (2005) (emphasis added). The FBO website was designed to "permit[] agencies to make accessible via FedBizOpps information that allows potential offerors to better understand how they can meet the Government's needs." Federal Acquisition Regulation; Electronic Commerce in Federal Procurement, 68 Fed. Reg. 56,676 (October 1, 2003) (interim rule).

Consistent with these FAR provisions, this Court has explained: "Federal Business Opportunities ('FedBizOpps'), [is] the Government-wide publication that communicates its requirements to potential suppliers." Space Exploration Tech. Corp. v. United States, 68 Fed. Cl. 1, 2 (2005). Similarly, in its bid protest decisions, the General Accounting Office ("GAO") has emphasized that the FBO website has been "expressly designated by statute and regulation as the official public medium for providing notice of contracting actions by federal agencies." Worldwide Language Res. Inc.; SOS Int'l Ltd., 2005 WL 3143870, at *7 (Comp. Gen. Nov. 14, 2005). Information published on the FBO website is of such importance it "imputes knowledge to a party without regard to the party's actual knowledge of the matters at issue." Id.; see also In re CBMC, Inc., B-295,586, 2005 WL 35813, at *1 (Comp. Gen. Jan. 6, 2005); In re Lyons Sec. Servs., Inc., B-289,974, 2002 WL 977435, at *2, n.1 (Comp. Gen. May 13, 2002).

The Government cannot omit materials from the AR simply because they support protester's allegations. "Effective judicial review of an agency's exercise of discretion is irreconcilably at odds with notion that the reviewing court's inquiry must be confined to an administrative record that is likewise the product of the agency's sole discretion." Int'l Res.

Recovery Inc. v. United States, 59 Fed. Cl. 537, 541-42 (2004) (quoting Pikes Peak Family Hous., LLC v. United States, 40 Fed. Cl. 673, 677 (1998)). The AR "certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review." Graphicdata, LLC v. United States, 37 Fed. Cl. 771, 780 (1997) (quoting Cubic Applications, Inc. v. United States, 37 Fed. Cl., 345, 350 (1997)). Applying these principles, the Court has explained:

> In order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence, and possibly limited discovery aimed at determining, for example, whether other materials were considered, or whether the record provides an adequate explanation to the protester or the court as to the basis of the agency action[.]

Id. See also Int'l Res. Recovery, 59 Fed. Cl. at 542 (noting that the COFC has adopted "a flexible approach . . . in putting together the evidence that will be considered" during judicial review).

Consequently, this Court has recognized several well-established circumstances under which the administrative record may be supplemented to facilitate meaningful judicial review, including the oft-cited "Esch exceptions": "when agency action is not adequately explained in the record before the court"; "when the agency failed to consider factors which are relevant to its final decision"; "when an agency considered evidence which it failed to include in the record"; "when a case is so complex that a court needs more evidence to enable it to understand the issues clearly"; "in cases where evidence arising after the agency action shows whether the decision was correct or not", and "in cases where relief is at issue, especially at the preliminary injunction stage."[2] See, e.g., Vantage Assocs., Inc. v. United States, 59 Fed. Cl. 1, 13 (2003) (quoting

---

[2] These exceptions are among those originally set forth in a decision from the United States Court of Appeals for the District of Columbia Circuit: Esch v. Yeutter, 876 F.2d 976, 991

Cubic Applications, Inc. v. United States, 37 Fed. Cl. 339, 341-342 (1997) ("Cubic I")); see also Aero Corp., S.A. v. United States, 38 Fed. Cl. 408 at 411 (1997) (citing the Esch exceptions and stating "[i]t is well-settled that these exceptions apply to bid protest actions brought in this court."). Additionally, "the record may be supplemented with . . . relevant information that by its very nature would not be found in an agency record – such as evidence of bad faith, information relied upon but omitted from the paper record, or the content of conversations." Orion Int'l Techs. v. United States, 60 Fed. Cl. 338, 343-44 (2004).

## II.
## THE AR SHOULD INCLUDE THE MATERIALS SET FORTH IN INTERSPIRO'S ACCOMPANYING SUPPLEMENT

Interspiro respectfully submits that the AR in this case should be supplemented with: (A) the Air Force's FBO notices requesting industry input on this procurement and the information provided in response to those requests, see Supp. AR, Tabs 24-27, 29-31; (B) the Air Force's answers to vendor questions as published on the FBO website providing guidance regarding the procurement's requirements and the submission of proposals, id., Tabs 28, 32-33; (C) materials reflecting the decision of the General Accounting Office ("GAO") dismissing the earlier protests of this procurement based on the Air Force's pledge of "corrective action," id., Tabs 34-35; and

---

(D.C. Cir. 1989). See Graphicdata, 37 Fed. Cl. at 779. The Esch exceptions have routinely been accepted as a basis for supplementing the AR in bid protest cases by both the Court of Federal Claims and (previously) federal district courts. Id.; see also Pikes Peak Family Hous., 40 Fed. Cl. at 677 ("In order to preserve meaningful judicial review in bid protest cases, this court has followed certain established and recognized principles of APA jurisprudence which define the circumstances in which the administrative record may be appropriately supplemented, as set out in Esch v. Yeutter."). They, and additional exceptions accepted by this Court, provide the basis for correcting and/or supplementing the record in bid protest cases, as directed by the Rules Committee responsible for RCFC 52.1. See Rules Committee Note to Court of Federal Claims Rule 52.1 "Administrative Records," 2006 Adoption ("[A]ny motion for correction or supplementation of the administrative record should be made on the basis of either the specific law to be applied in the particular case or generally applicable principles of administrative law.").

(D) declarations memorializing communications between Interspiro and the Air Force, id., Tab 39, and providing background information regarding Interspiro's Three-Mode SCBA and patents pending thereon, id., Tabs 36-38.

The following discussion explains why these materials are highly relevant to this case and should be included in the AR as a matter of law.

**A. The AR Should Include the Air Force's Requests for Industry Input and the Information Received in Response to Its Requests**

The AR filed by Defendant omits a series of notices published by the Air Force on the FBO website soliciting industry input regarding the requirements for this procurement. On or about August 11, 2004, the Air Force issued a "Sources Sought Notice" on the FBO stating that the Air Force was "preparing a solicitation package for a long-term contract for SCBAs," that "industry input is critical" to this effort, that the Air Force was engaged "[i]n an effort to identify the most current features of SCBAs in the market as well as to capture common, commercial practices in the manufacturing, production and business practices. . . ." See Supp. AR, Tab 25. This "Sources Sought Notice" further invited prospective offerors to respond to a Market Research Questionnaire and comment on a Draft Performance Specification accompanying this FBO notice. As explained further below, the Air Force's Draft Performance Specification issued by the Air Force at that time (Supp. AR, Tab 24) did not include a requirement for a Three-Mode SCBA.

[redacted]

[redacted] Supp. AR, Tab 26 at 2426-27. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

The Air Force's dialogue with industry on this procurement continued into 2005. On or about March 1, 2005, the Air Force convened an SCBA Informational Forum at which prospective offerors could review draft procurement documents and discuss them with Air Force representatives. See Supp. AR, Tab 29 at 2449. In anticipation of the Informational Forum, the Air Force issued a Draft RFP and a Revised Draft Purchase Description. See Supp. AR, Tabs 30 and 31. As explained in the Air Force's notice accompanying the Draft RFP, prospective offerors were invited to submit questions or comments to the Air Force. Id., Tab 30 at 2450. "All questions and/or comments relating to the Draft RFP will be addressed at the Informational Forum." Id.[3]

Significantly, the Revised Draft Purchase Description contained changes based on industry input already received by the Air Force--including Interspiro's input that it had developed and marketed a Three-Mode SCBA. In the Revised Purchase Description, the Air

---

[3] Defendant has not included any records regarding the Air Force's Informational Forum. Nor has it included any industry input that the Air Force received prior to proposal submission. While Interspiro can provide materials regarding its own input, it cannot provide either the materials provided by other prospective offerors or internal agency record reflecting the Air Force's consideration of industry input. Therefore, as reflected in the accompanying proposed Order, Interspiro requests that the Court direct Defendant to produce these additional materials.

Force imposed a new requirement for a SCBA that could operate in three different modes: "1.) SCBA only mode, 2.) SCBA and APR selectable mode, and 3.) SCBA and PAPR selectable mode" (hereinafter "Three-Mode SCBA"). Supp. AR, Tab 31 at 2487. It further added language requiring that: "During transition of SCBA to APR or PAPR mode, the wearer shall not be exposed to inhalation, absorption, or ingestion contamination." Id. at 2491. Neither the Draft Performance Specification nor the Draft RFP imposed this requirement.[4]

Based on the extensive documentation provided by Interspiro, the Air Force representatives indicated that they understood and agreed that Interspiro had developed and manufactured Three-Mode SCBAs which it had been marketing at industry trade shows and in the marketplace. See Brookman Supp. Decl. ¶ 6 at 2614. Indeed, Interspiro's understanding is that the Air Force added the Three-Mode SCBA requirement in this procurement based on the information and documentation provided by Interspiro that it had developed and was manufacturing Three-Mode SCBAs. Id. No other possible explanation for the Air Force's addition of a Three-Mode SCBA requirement is suggested in the AR as filed by Defendant.[5]

---

4 This change marked a major technological breakthrough in SCBA capability. The traditional single mode SCBA allowed an emergency service responder to breathe compressed air from an air cylinder when working in a hazardous environment. Supp. AR, Tab 24 at 2401. The cylinder provides an air supply for, at most, between 45 and 60 minutes. Id. at 2406. Thus, with the traditional SCBA, the wearer must exit the hazardous conditions before the air supply runs out or risk exposure to the contaminated atmosphere. However, with the Three-Mode SCBA specified in the Air Force's new PD, the wearer can switch from the air cylinder to an air purifying respirator (either powered or unpowered) without exposure to the contaminated atmosphere. Supp. AR, Tab 31 at 2491. This new technology allows for continued work in the contaminated environment for a much longer period of time. The life saving and other benefits of a multiple mode SCBA are thus readily apparent.

5 [redacted]

The materials discussed above, which Defendant omitted from the AR that it filed with the Court, provide information highly relevant to the Air Force's decision in this case as explained above. It is also beyond dispute that these materials were in the Air Force's possession when it decided to award the contract being protested by Interspiro. If the Air Force took these materials into consideration during the evaluation and source selection process, then they should be included in the AR because they "were before the agency when it made its final decision." Aero Corp., 38 Fed. Cl. at 411; Graphicdata, 37 Fed. Cl. at 780; see also Vantage Assocs., 59 Fed. Cl. at 13 (the AR may be supplemented "when an agency considered evidence which it failed to include in the record").[6]

Alternatively, if the Air Force failed to consider these materials during evaluation and award process, then they should be included in the AR under the Esch exception applicable "when the agency failed to consider factors which are relevant to its final decision." Chapman Law Firm Co. v. United States, 71 Fed. Cl. 124, 127 (2006); Blue & Gold Fleet, LP v. United States, 70 Fed. Cl. 487 at 494 (2006); Vantage Assocs., 59 Fed. Cl. at 13. In connection with its Motion for Judgment on the AR, Interspiro documented at length that the Air Force failed to

[redacted]

6 The exact level of consideration ultimately given by the Air Force to the documents in that process is not dispositive: where there exists a "reasonable possibility that a contracting officer may have taken into account information beyond that in the administrative record, supplementation of the record is appropriate." See Asia Pac. Airlines v. United States, 68 Fed. Cl. 8, 19 (2005); Cf. Clairton Sportsmen's Club v. Pa. Tpk. Comm'n, 882 F. Supp. 455, 465 (W.D. Penn. 1995) ("A document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record."). See also Fort Carson Support Servs., 2006 U.S. Claims LEXIS 217 at *44 (2006) ("[T]he record must reflect 'all of the information considered by the agency officials involved in the evaluation'") (internal citation omitted).

consider critical information when evaluating proposals and making its source selection decision. See Interspiro Mem. at 18-26. Defendant's omission of relevant materials in the AR that it filed with the Court provide additional support for Interspiro's argument that the Air Force failed to consider information directly relevant to the evaluation and source selection process. See Vantage Assocs., 59 Fed. Cl. at 13 (allowing the AR to be supplemented with materials which "may assist the court in determining whether or not the agency considered factors relevant to its final decision").

Moreover, whether the Air Force considered these materials or not, the AR in this case is incomplete and inadequate without such information; the materials should therefore be added "for a full and complete understanding of the issues." See Blue & Gold Fleet, 70 Fed. Cl. at 494; see also Vantage Assocs., Fed. Cl. at 13 (supplementing the AR with evidence that "may shed light on agency actions not adequately explained in the record presently before the court").

### B. The AR Should Include the Air Force's Guidance to Prospective Offeror Regarding the RFP's Requirements and Proposal Preparation[7]

In the AR that it filed with the Court, Defendant also omits information that the Air Force provided to prospective offerors on the FBO website relevant to the solicitation's requirements and the preparation of proposals. On January 14, 2005, the Air Force published answers to over 20 vendor questions. See Supp. AR, Tab 28. Following the issuance of the final RFP (AR, Tab 1), the Air Force published on the FBO website two additional sets of answers to vendor questions about the RFP and applicable technical requirements on August 17 and August 26, 2005. Id., Tabs 32 and 33.

---

7 Based on Interspiro's preliminary review of Defendant's filing dated August 7, 2006, it now appears that Defendant agrees that two out of the three documents discussed in this section (Supp. AR, Tabs 32 and 33) should be included in the AR.

In its August 17 Questions and Answers ("Q&As"), the Air Force addressed specifically the RFP's Three-Mode SCBA requirement. "Please clarify the transition modes. Does the Government anticipate transitioning from either SCBA to APR or PAPR and from PAPR to APR?" Id., Tab 32 at 2538. The Air Force's response emphasized again the Three-Mode SCBA requirement, explaining: "The Purchase Description requires SCBA units to have the ability to transition from SCBA to APR or APR to SCBA modes, and from APR to PAPR or vice versa when CBRN threat is present." Id.

Similarly, in its August 26 Q&As, the Air Force again confirmed the solicitation's new Three-Mode SCBA requirement under "RFP FA8532-05-R-76133." Id., Tab 33. One question sought clarification about the different modes of operation required by the RFP, noting specifically that "the final release of the PD lists three modes of operation: SCBA only, SCBA and selectable APR, and SCBA and selectable PAPR." Id. at 2548. In its response, the Air Force repeated the RFP's requirement that the SCBA system must "provide respiratory protection in a chemical, biological, radiological and nuclear (CBRN) environment in: 1.) SCBA only mode, 2.) SCBA and Air Purifying Respirator (APR) selectable mode, and 3.) SCBA and Powered Air Purifying Respirator (PAPR) selectable mode," and that "[t]ransition from compressed breathing air (SCBA) to filtered air (APR or PAPR) must not expose the user to inhalation, absorption, or ingestion contamination." Id. at 2549. The Air Force's response further instructed: "Per PD, one unit shall have the capability of operating in SCBA mode, APR mode, or PAPR mode without exposure during transitioning between modes." Id.

In addition to confirming the Three-Mode SCBA requirement, the Air Force also provided critical guidance on which elements of a proposed SCBA system had to be certified by the National Institute of Occupational Safety and Health ("NIOSH"). Interspiro carefully

followed these instructions when preparing its proposal in response to the RFP. The Air Force's instructions carefully distinguished between "accessories" and "the traditional basic SCBA." It specifically defined an "accessory" as "any component not part of the traditional basic SCBA." Supp. AR, Tab 32 at 2538. The Air Force stated repeatedly that the PAPR as well as the APR (which is simply a PAPR with the power turned off) are to be considered "accessories." In response to a question about whether "**each and every mention of accessories include the PAPR,**" the Air Force responded: "Yes, except as otherwise specified in the PD. . . ." Supp. AR, Tab 33 at 2550 (emphasis in original). See also id. at 2552 ("Is the PAPR considered an accessory? Response: Yes."); id. (explaining a PD requirement covered the PAPR based on "the use of the word 'accessories' and the definitions and clarifications provided by the Government"); id. at 2554 (again citing the Air Force's previous definition of the word 'accessories'" to explain why the PD's requirements included the PAPR); id., Tab 32 at 2538. ("[A]re the PAPR and APR systems to be considered accessories? Response: Accessory is any component not part of the traditional basic SCBA, so yes the PAPR has been referred to as an accessory within the PD.")

This distinction between "accessories" and "the traditional basic SCBA" is important in part because, while the traditional basic SCBA had to be NIOSH certified (AR at 47, § 3.4.6), the Air Force explained in its August 17 answers to vendor questions that the PAPR was required only to meet "NIOSH standard (draft) requirements." Id., Tab 32 at 2539. Because no final NIOSH standards for PAPR certification existed,[8] the Air Force recognized--and made

---

8 [redacted]

allowances--for providing PAPRs not subject to a NIOSH certification requirement so long as they met the draft NIOSH requirements.

[redacted]

[redacted]

[redacted]

---

[redacted]

The Air Force's answers to vendor questions, as published on the FBO website, are therefore necessary for a proper understanding of both the RFP's requirements and Interspiro's proposal. By omitting these highly relevant materials from the AR, Defendant invites confusion and misunderstanding regarding the RFP and proposals. Interspiro properly relied on the Air Force's instructions published on the FBO website. If the Air Force's evaluation of Interspiro's proposal failed to consider its own instructions to offerors (as suggested by Defendant's failure to include those instructions in the AR filed with the Court), then this fact provides yet another ground for granting Interspiro's protest.

The Air Force's answers to vendor questions, as published on the FBO website, are highly relevant to this case and clearly part of the official procurement record at the time of the award decision. If the Air Force took these materials into consideration during the evaluation and source selection process, then they should be included in the AR because they "were before the agency when it made its final decision." Aero Corp., 38 Fed. Cl. at 411; Graphicdata, 37 Fed. Cl. at 780; see also Vantage Assocs., 59 Fed. Cl. at 13 (the AR may be supplemented "when an agency considered evidence which it failed to include in the record"). Alternatively, if the Air Force failed to consider these materials during the evaluation and award process, then they should be included in the AR under the Esch exception applicable "when the agency failed to consider factors which are relevant to its final decision." Chapman Law Firm, 71 Fed. Cl. at 127; Blue & Gold Fleet, 70 Fed. Cl. at 494; Vantage Assocs., 59 Fed. Cl. at 13. In either case, the AR is incomplete and inadequate without such highly relevant information; the Air Force's answers to vendor questions should therefore be added "for a full and complete understanding of the issues." See Blue & Gold Fleet, 70 Fed. Cl. at 494; see also Vantage Assocs., Fed. Cl. at 13

(supplementing the AR with evidence that "may shed light on agency actions not adequately explained in the record presently before the court").

### C. The AR Should Include Additional Materials from Prior GAO Protests

Although the AR filed by Defendant included much of the record from Interspiro's and Scotts' prior protests at the GAO (see AR, Tabs 15.A to 15.N), Defendant omitted two of the most important items: (1) the Air Force's filing with the GAO promising to take "corrective action" based on those protests, and (2) the GAO's decision to dismiss the protests as academic based on the Air Force's promise to take "corrective action." See Supp. AR, Tabs 34 and 35. These materials are highly relevant because they show that the Air Force itself recognized that its original contract award to Mine Safety Appliances Company ("MSA") was flawed, and because the Air Force failed to take the "corrective action" that it had promised in connection with its subsequent reaffirmation of the award to MSA. See, e.g., Interspiro Mem. at 33-35.

There is no legitimate basis for Defendant's failure to include these two critical documents with the other GAO materials that it filed as part of the AR. The Government certainly cannot omit materials from the AR simply because they support protester's allegations. "Effective judicial review of an agency's exercise of discretion is irreconcilably at odds with notion that the reviewing courts inquiry must be confined to an administrative record that is likewise the product of the agency's sole discretion." Int'l Res. Recovery, 59 Fed. Cl. at 541-42 (quoting Pikes Peak Family Hous., 40 Fed. Cl. at 677). See also Graphicdata, 37 Fed. Cl. at 780 (quoting Cubic Applications, 37 Fed. Cl. at 349).

The Air Force's promise to take "corrective action" and the GAO's dismissal based on that promise were before the Air Force at the time it made the decision to reaffirm the contract award to MSA. If the Air Force took these materials into consideration during the evaluation and source selection process, then they should be included in the AR because they "were before

the agency when it made its final decision." Aero Corp., 38 Fed. Cl. at 411; Graphicdata, 37 Fed. Cl. at 780; see also Vantage Assocs., 59 Fed. Cl. at 13 (the AR may be supplemented "when an agency considered evidence which it failed to include in the record"). Alternatively, if the Air Force failed to consider these materials during the evaluation and award process, then they should be included in the AR under the Esch exception applicable "when the agency failed to consider factors which are relevant to its final decision." Chapman Law Firm, 71 Fed. Cl. at 127; Blue & Gold Fleet, 70 Fed. Cl. at 494; Vantage Assocs., 59 Fed. Cl. at 13. In either case, the AR is incomplete and inadequate without such highly relevant information; the materials reflecting the Air Force's promise to take "corrective action" and the GAO's dismissal based on that promise should therefore be added "for a full and complete understanding of the issues." See Blue & Gold Fleet, 70 Fed. Cl. at 494; see also Vantage Assocs., Fed. Cl. at 13 (supplementing the AR with evidence that "may shed light on agency actions not adequately explained in the record presently before the court").

### D. The AR Should Include the Declarations and Patent Filings Offered by Interspiro[9]

The Supplemental Declaration of Michael Brookman (Supp. AR, Tab 39) memorializes meetings and conversations with Air Force representatives during the period when the Air Force was seeking industry input. See Part II.A above. As this Court explained in Orion Int'l Techs., 60 Fed. Cl. at 343-44, "the record may be supplemented with . . . relevant information that by its very nature would not be found in an agency record – such as . . . the content of conversations." The same principles apply to the earlier Declaration of Michael Brookman (Supp. AR, Tab 36), which also provides helpful background information. See, e.g., Tech Sys., Inc. v. United States,

---

[9] Significantly, in its filing dated August 7, 2006, Defendant asks for the Court to consider a declaration from an Air Force representative. It thus appears clear that Defendant itself recognizes the need in this case for declarations to supplement the AR.

50 Fed. Cl. 216, 222 (2001) (where this Court supplemented the record with affidavits by the plaintiff's president (and others) because the documents "provid[ed] information useful for the evaluation of facts and statements contained in the administrative record."). See also Vantage Assocs., 59 Fed. Cl. at 13 (internal citations omitted) (allowing the record to be supplemented with information which "may shed light on agency actions not adequately explained in the record before the court"). The Brookman declarations also provide evidence documenting the Air Force's failure "to consider factors which are relevant to its final decision." Id.; see also Precision Standard, Inc. v. United States, 69 Fed. Cl. 738 at 745 (2006). Moreover, because it "may assist the court in determining whether or not the [Air Force's] action was correct," the Brookman Declaration should be included in the AR. See Vantage Assocs., 59 Fed. Cl. at 13.

The Declaration of Roger Hepperman (Supp. AR, Tab 38) provides copies of patent materials regarding Interspiro's Three-Mode SCBA. Id. at Exs. A and B. These materials come from publicly available records at the United States Patent and Trademark Office ("USPTO"). See Hepperman Decl. ¶¶ 4, 6 at 2567-68. [redacted] These materials were publicly available government records. See Hepperman Decl. ¶¶ 4, 6 at 2567-68. Moreover, [redacted]

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

[redacted] Further, because it "may assist the court in determining whether or not the [Air Force's] action was correct," the Hepperman Declaration and accompanying patent materials should be included in the AR. See Vantage Assocs., 59 Fed. Cl. at 13.

Finally, the Declaration of Wade Grimm (Supp. AR, Tab 36) should be included in the AR for several reasons. [redacted] the Air Force failed "to consider factors which are relevant to its final decision." Vantage Assocs., 59 Fed. Cl. at 13; see also Chapman Law Firm, 71 Fed. Cl. at 127 (supplementing the record with disposition testimony and other potentially relevant documents as, inter alia, evidence of "[w]hen the agency failed to consider factors which are relevant to its final decision"). It also "shed[s] light on agency action not adequately explained in the record presently before the court." Vantage Assocs., 59 Fed. Cl. at 13; see also N.C. Div. of Servs. for the Blind, 53 Fed. Cl. at 158. Finally, because it "may assist the court in determining whether or not the [Air Force's] action was correct," the Grimm Declaration should be included in the AR. See Vantage Assocs., 59 Fed. Cl. at 13.

**III.**
**CONCLUSION**

Based on the controlling law and relevant facts Interspiro respectfully requests that the Court enter the accompanying proposed Order granting Interspiro's Motion to Correct and Supplement the AR.

Dated: August 8, 2006

Respectfully Submitted,

David R. Hazelton, Esq. (Counsel of Record)
Joshua K. Chandler, Esq.
LATHAM & WATKINS LLP
555 11th St., N.W., Suite 1000
Washington, D.C. 20004-1304
Direct Dial: (202) 637-2254
Facsimile: (202) 637-2201
David.Hazelton@lw.com
Joshua.Chandler@lw.com

Attorneys for Plaintiff Interspiro, Inc.

Of Counsel:
Kevin A. Russell, Esq.
Kyle R. Jefcoat, Esq.
David P. Palmer, Esq.
LATHAM & WATKINS LLP