**AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERSPIRO, INC., | ) | |
| and | ) | |
| SCOTT TECHNOLOGIES, INC., d/b/a SCOTT HEALTH & SAFETY, | ) | |
| Plaintiffs, | ) | No.06-425C (Judge Firestone) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| MINE SAFETY APPLIANCES CO., | ) | |
| Defendant-Intervenor. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Defendant, the United States, respectfully submits its opposition to the motion to supplement the administrative record filed by the plaintiff, Interspiro, Inc. ("Interspiro"). Interspiro seeks to overturn the contract award made by the Department of the Air Force to intervenor, Mine Safety Appliances Company ("MSA"). As set forth more fully below, the administrative record in this action provides a completely adequate basis upon which the Court may judge the award decision in this case and decide the merits of this protest. Because this case can be decided based upon the administrative record filed with the Court, supplementation of the record is not necessary.

We do not, however, oppose Interspiro's motion to the extent that it seeks to include the

GAO decision dismissing Interspiro's protest (Tab 35). Two documents proferred by Interspiro in its proposed supplement – Questions and Answers that the Air Force posted after the Request for Proposals ("RFP") was issued and before the proposals were submitted (Tabs 32 and 33) – were submitted as part of the administrative record on August 7, 2006. Interspiro's Tab 34 is also in the administrative record. See AR2117. As to the remaining documents set forth in Interspiro's proposed supplement to the administrative record, Interspiro's motion to supplement should be denied.

I. This Case Should Be Decided Based Upon The Administrative Record

The Court possesses jurisdiction to entertain this action pursuant to the bid protest jurisdiction of the Tucker Act, 28 U.S.C. § 1491(b)(1). Section 1491(b)(4) requires the Court to "review the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA").

It is well-settled that the APA does not permit the Court to undertake a de novo review of agency action, but rather limits the Court to a consideration of whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," based solely upon the record before the agency. 5 U.S.C. §§ 702, 706(2)(A).[1] In reviewing agency action pursuant to this deferential standard, "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially by the reviewing court.'" Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).

Limiting judicial review of agency action to the administrative record reflects the ultimate

---

[1] Section 706(2) of the APA provides that, in reviewing the validity of agency action, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C § 706(2).

standard of review under the APA, which presumes the validity of agency action and precludes the judiciary from substituting its judgment for that of the agencies entrusted by Congress to implement and administer various governmental programs. See, e.g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 557-558 (1978). "'To permit an administrative determination to be attacked or supported in court by new evidence,' the Supreme Court has admonished, 'would substitute the court [for] the administrative tribunal . . . .'" Doraiswamy v. Secretary of Labor, 555 F.2d 832, 840 (D.C. Cir. 1976) (citation omitted).

Therefore, in determining whether to look outside of the record for an explanation of an agency decision, the Court must start its analysis with the presumption of regularity that attaches to agency decision-making. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001) ("Because of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious. The litigant challenging that presumption necessarily bears a heavy burden.") (citation and footnote omitted).

II. The Administrative Record Contains All Materials Required By This Court's Rules

Interspiro alleges that the administrative record "is incomplete as a matter of law." Pl. Mot. at 2-5. Other than setting forth information about the Government's website, Federal Business Opportunities ("FedBizOpps"), and quotes from case law regarding appropriate circumstances that warrant supplementation, Interspiro makes **no** argument that the record is incomplete as a matter of law. See id.

The administrative record filed with the Court contains the documents described in paragraph 22 of Appendix C of the Rules of the Court of Federal Claims, and Interspiro does not contend otherwise. No further supplementation of the record is necessary or required "as a

matter of law."

III. The Administrative Record Contains The Necessary Information For The Court To Determine Whether The Award Complied With APA Standards

A. Because The Air Force Was Precluded From Considering Materials Generated And Discussions Occurring Prior To Issuance Of The RFP, Such Information Should Be Excluded From The Administrative Record

Interspiro alleges that the administrative record should be supplemented with (1) information posted on FedBizOpps **prior to** the issuance of the RFP, Tabs 24-31, (2) a declaration which purportedly "memorializ[es] communications between Interspiro and the Air Force," Tab 39, and (3) declarations setting forth "background material, " Tabs 36-38. As previously noted, Tabs 32, 33, and 34 are already in the administrative record, and the Government does not oppose including Tab 35 within the administrative record.

Interspiro seeks primarily to include materials that were generated as part of the Air Force's market research, an activity that is required, to some degree, for any new acquisition. See 48 C.F.R. § 10.000 et seq. (describing policies and procedures for conducting market research). As previously described in our opposition to plaintiffs' motions for judgment upon the administrative record, the Air Force conducted extensive research into Air Force needs for SCBA equipment from 2002 through March 2005. AR1443. Numerous meetings were held with the Air Force Civil Engineer Support Agency, the Air Force customer and focal point, and Air Force firefighters and emergency responders from various bases in an attempt to identify key performance characteristics needed in the equipment. Industry sources were an important aspect of this research, and the Air Force conducted its first industry event in December 2002, at which Air Force first responders discussed their SCBA requirements and desires and the industry representatives discussed the current state of art of their commercial units. AR1443, 1710.

A draft Purchase Description was issued on January 14, 2005, and a draft RFP was issued on February 11, 2005. These documents were issued by the Air Force as a precursor to a second industry event that the Air Force team hosted on March 1, 2005. With this knowledge of the Air Force's specific goals, approximately seven companies were represented and participated in discussions on the current capabilities of their products and future enhancements in their product line. AR1710-11. Based upon this market research, the Air Force determined that SCBAs constituted a commercial item within the definition of the Federal Acquisition Regulations, 48 C.F.R. § 2.101. AR1709; see also AR1544 ("Research indicates that the marketplace could not fulfill the Government's need . . . without some modification to their existing units; however, these modifications are considered minor, and the SCBA is determined to be commercial pursuant to FAR 2.101" ).

The final RFP was posted on FedBizOpps on August 1, 2005. AR1-145. Upon receipt of the offerors' proposals, the Air Force evaluated the proposals in strict accordance with the terms of the RFP. Thus, the Air Force evaluated each offeror's Mission Capability, Proposal Risk, Past and Present Performance, Cost/Price, and Small Business Participation. See AR32.

These evaluation factors are "the uniform baseline against which each offeror's proposal is evaluated allowing the government to make a best value determination." Air Force Federal Acquisition Regulation Supplement ("AFFARS") Mandatory Procedures ("MP") 5315.304, ¶ 4.4.1.[2] More importantly, the evaluation team must ensure that "proposals are evaluated based **solely** on the criteria contained in the solicitation." MP5315.305, ¶ 5.3 (emphasis added). The

---

[2] These regulations are accessible at http://farsite.hill.af.mil/ by going to the FARSearch page, selecting AFFARS from the Index drop-down menu, and searching for 5315.3.

RFP does not permit the Government to take into account any representations made by the offeror other than representations set forth in an offeror's proposal or in its two-hour orientation/instructional session for the Air Force (see AR28, Subfactor Two, subparagraph (b)). Accordingly, Interspiro cannot establish that representations made by Interspiro **prior to** the submission of its proposal should have been considered in the award process. See Olympia USA, Inc. v. United States, 6 Cl. Ct. 550, 555 (1984) (Court's review of Government's bid selection process is "limited to determining whether [the Government] followed the terms of the solicitation in evaluating plaintiff's bid"); 48 C.F.R. § 15.201 (potential offerors' responses to Government requests for information made prior to an RFP "are not offers and cannot be accepted by the Government"). Since it would have been improper for the Government to have considered any such representations, it is similarly improper to include any such representations in the administrative record.

Moreover, Interspiro's motion is based upon the false premise that the Air Force was not seeking a requirement for a multi-mode SCBA until it learned that Interspiro "had developed" a multi-mode SCBA. According to Interspiro, the draft performance specification dated July 16, 2004, "did not include a requirement for a Three-Mode SCBA." Pl. Mot. at 6. Mr. Brookman, the president of Interspiro, ultimately concludes that "the Air Force added the Three-Mode SCBA requirement in this procurement based on the information and documentation provided by Interspiro that it had developed and was manufacturing Three-Mode SCBAs." Tab 39, ¶ 6. Interspiro adds: "No other possible explanation for the Air Force's addition of a Three-Mode SCBA requirement is suggested in the AR as filed by Defendant." Pl. Mot. at 9.

The documents proffered by Interspiro demonstrate the falsity of its premise. The draft of the performance specifications, dated July 16, 2004, provided that the SCBA shall have "the

capability to perform and provide full filtered respiratory protection in a nuclear biological or chemical (NBC) full spectrum threat (FSTR)/warfare environment. The filtered air capability shall be provided by both an air purifying respirator (APR) and powered air purifying respirator (PAPR)." Tab 24 at 4; see also Tab 24, ¶ 3.3.1 (describing transition from compressed breathing air to filtered air, using either APR or PAPR capabilities); id., ¶ 3.3.4 (describing SCBA system with PAPR). Accordingly, as of July 16, 2004, and **before** Interspiro's presentation in August 2004, the draft performance specification required multi-mode capability. The Air Force did **not** add multi-mode capability based upon information provided by Interspiro. Indeed, upon its receipt of information from all of the manufacturers, the Air Force wrote:

> SCBA and Chemical Warfare masks are standard commercial items utilized by first responders world wide. This Market Survey indicates that there are currently five potential manufacturers that may be able to meet the Air Force's requirements. The information presented also indicates that [redacted] all highly capable of meeting the Air Force's requirements and time constraints due to minimal design and development.
>
> * * * * *
>
> The information obtained indicates that the marketplace will not fulfill the need of the Government without some modifications made to their existing items. Commercially, SCBA and CW units exist as two separate masks. . . . The USAF objective is a one face mask configuration with dual purpose capabilities, SCBA positive pressure mode and filtered negative pressure mode both with CBRN protection.

AR1873.

Interspiro further seeks to supplement the administrative record with Mr. Brookman's declaration that, in August 2004, "Air Force representatives indicated that they understood and agreed that Interspiro had developed and manufactured Three-Mode SCBAs which it had been marketing at industry trade shows and in the marketplace." Pl. Mot. at 9; Tab 39, ¶ 6. Even if

this representation was true, it is irrelevant. Interspiro was evaluated based upon the proposal it submitted. Interspiro's proposal expressly states that [redacted] See AR363 (Interspiro's proposal: [redacted]

Finally, nothing in Interspiro's proposal demonstrates that it had marketed a three-mode SCBA "in the marketplace." Pl. Mot. at 9. Indeed, Interspiro was so concerned about [redacted]

[redacted]

AR367.

Interspiro alleges that these materials should be included in the administrative record because they are "relevant to [the Air Force's] final decision." Interspiro has not offered any

explanation as to how the materials are relevant to the evaluation factors of the RFP. Indeed, the consideration of such materials would be contrary to the provisions of the RFP. Accordingly, the Court should deny Interspiro's motion to supplement the record with Government documents published prior to issuance of the RFP or Mr. Brookman's declarations.

B. Because The Air Force Was Precluded From Considering Whether MSA's Proposal Potentially Infringes Upon A Pending Patent, Information About Interspiro's Pending Patent Should Be Excluded From The Administrative Record

Interspiro also seeks to supplement the record with the declaration of Roger Hepperman with attached copies of Interspiro's "patent materials" and the declaration of Wade Grimm, who purports to opine that MSA's proposal "raises issues of patent infringement." Pl. Mot. at 18-19. Interspiro argues that the Air Force was required to determine "whether MSA's proposal would raise infringement issues." Id. Interspiro provides no authority for this proposition.

As we discussed in our opposition to plaintiffs' dispositive motions, Interspiro's claim of patent infringement is speculative and irrelevant to the award decision. In Aircraft Porous Media, Inc., B-242665.2, 91-1 CPD ¶ 356 (1991), the General Accounting Office rejected a similar claim, stating: " A potential for patent infringement does not provide a basis for objection to award. As we have recognized, 28 U.S.C. § 1498 (1988) gives patent holders an adequate and effective remedy for patent infringement, while saving the government from having its procurements delayed pending litigation of patent disputes." See also Motorola, Inc. v. United States, 729 F.2d 765, 771 (Fed. Cir. 1984) ("it is the policy of the United States that it must award the bid to the lowest qualified bidder irrespective of the possibility or inevitability of infringing the patents of other bidders or non-bidders"); 48 C.F.R. § 27.104(b) ("Generally, the Government will not refuse to award a contract on the grounds that the prospective contractor

may infringe a patent"). Accordingly, there is no basis for the Court to supplement the administrative record with the declarations of Mr. Hepperman, Mr. Grimm, or Interspiro's "patent materials."

CONCLUSION

For these reasons, we respectfully request that the Court grant Interspiro's motion to supplement the record with respect to Tab 35, and in all other respects, deny Interspiro's motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

OF COUNSEL

JAMES CAINE
JOHN G. TERRA, MAJOR
United States Air Force

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

August 17, 2006