AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

**Electronically Filed on August 7, 2006**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | |
|---|---|
| INTERSPIRO, INC., Plaintiff, and SCOTT TECHNOLOGIES, INC., d/b/a SCOTT HEALTH & SAFETY, Plaintiff, v. UNITED STATES, Defendant, and MINE SAFETY APPLIANCES CO., Defendant-Intervenor. | No. 06-425C; No. 06-443C<br>Judge Firestone<br>**CONSOLIDATED** |

# DEFENDANT-INTERVENOR MINE SAFETY APPLIANCES COMPANY'S RESPONSE IN OPPOSITION TO SCOTT HEALTH & SAFETY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Of Counsel:
Brian T. McLaughlin

Thomas P. Humphrey, Esq.
Counsel of Record
Elizabeth W. Newsom, Esq.
Amy E. Laderberg, Esq.
Rebecca K. Lee, Esq.
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel. (202) 624-2500
Fax (202) 628-5116

Counsel for Mine Safety Appliances Company

Dated: August 7, 2006

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii
QUESTIONS PRESENTED ..... 3
COUNTER-STATEMENT OF FACTS ..... 3
- A. The Air Force's Requirement for the Next Generation Self Contained Breathing Apparatus ..... 3
- B. The RFP Evaluation Process ..... 5
- C. Purchase Description and NIOSH Standards ..... 7
- D. Submission of Proposals, Evaluation and Award Decision ..... 8

ARGUMENT ..... 11
- I. Submission of [redacted] Was Irrelevant to the Evaluation ..... 11
- II. The Air Force Evaluated the Offerors Equally and Applied the Appropriate Draft NIOSH CBRN PAPR Concept ..... 14
  - A. Proposals Based on the November 2005 Draft NIOSH Concept Were Deemed to Be Acceptable ..... 15
  - B. Scott Proposed a [redacted] PAPR Because of its Own Business Decision or Error, not Because of any Fault of the Air Force ..... 19
- III. MSA's Warranty Met the RFP Requirements ..... 23
- IV. The Air Force Properly Evaluated the Risks Posed in MSA's Proposal and Treated the Offerors Equally in its Price Evaluation ..... 24
  - A. There Are No Added Risks in MSA's Proposal Arising Out of MSA's Warranty, "Work-Around Costs," or Any Alleged Life-Cycle Costs ..... 25
  - B. The Air Force Evaluated Price on an Equal Basis that Reflects the True Price Difference Between Scott and MSA ..... 28
  - C. MSA's Relationship with [redacted] Was Fully Disclosed and the Air Force's Evaluation Satisfied the RFP Requirements ..... 30
- V. The Air Force Adhered to the Evaluation Process in the RFP and Treated the Offerors Equally ..... 32
  - A. Scott Failed to Mention in its Proposal Any [redacted]; Scott is Not Entitled to Credit for a Capability it did not Claim to Have ..... 34

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERALCLAIMS PROTECTIVE ORDER

B. The Record Shows that the [redacted] and [redacted] Achieved with MSA's Unit Was Better Than with Scott's Unit .......... 35

C. The Air Force Reasonably Determined that Scott Was Not Entitled to [redacted] for the Fact that its Unit [redacted] .......... 35

VI. Scott is Not Entitled to Declaratory or Injunctive Relief .......... 37

CONCLUSION .......... 40

## APPENDIX TABLE OF CONTENTS

Exhibit 1: NIOSH Concept for Chemical, Biological, Radiological, and Nuclear (CBRN), Tight Fitting, Powered Air Purifying Respirator (PAPR), March 30, 2005 (Draft for Discussion)

Exhibit 2: NIOSH Concept for Chemical, Biological, Radiological, and Nuclear (CBRN), Tight Fitting, Powered Air Purifying Respirator (PAPR), June 20, 2005 (Draft for Discussion)



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Banknote Corp. of America, Inc. v. United States*, 56 Fed. Cl. 377 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004) .......... 33

*Bannum, Inc. v. United States*, 60 Fed. Cl. 718 (2004) .......... 27

*Consolidated Engineering Services, Inc. v. United States*, 64 Fed. Cl. 617 (2005) .......... 29

*Data General Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996) .......... 21

*Gentex Corp. v. United States*, 58 Fed. Cl. 634 (2003) .......... 39

*Gulf Group, Inc. v. United States*, 61 Fed. Cl. 338 (2004) .......... 21

*Information Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) .......... 31

*PGBA, LLC v. United States*, 389 F.3d 1219 (Fed. Cir. 2004) .......... 38

*Southfork Systems, Inc. v. United States*, 141 F.3d 1124 (Fed. Cir. 1998) .......... 14

*Unified Architecture & Engineering, Inc. v. United States*, 46 Fed. Cl. 56 (2000), *aff'd* 251 F.3d 130 (Fed. Cir. 2000) .......... 37

## GOVERNMENT ACCOUNTABILITY OFFICE CASES

*Cortez, Inc.*, B-292178 .......... 32

*Eastman Kodak Co.*, B-194584 .......... 27

*Marquette Med. Sys., Inc.*, B-277827 .......... 27

*Oceanometrics, Inc.*, B-278647 .......... 31

*Star Mountain, Inc.*, B-285883 .......... 29

*Wackenhut Servs., Inc.*, B-286037 .......... 29



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

## FEDERAL STATUTES

28 U.S.C. § 1491(b)(3) .......... 39

## FEDERAL REGULATIONS

42 C.F.R. Part 84.......... 15, 17, 18


PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

**Electronically Filed on August 7, 2006**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | |
|---|---|
| INTERSPIRO, INC.,<br>Plaintiff,<br>and<br>SCOTT TECHNOLOGIES, INC., d/b/a SCOTT HEALTH & SAFETY,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant,<br>and<br>MINE SAFETY APPLIANCES CO.,<br>Defendant-Intervenor. | No. 06-425C; No. 06-443C<br>Judge Firestone<br>**CONSOLIDATED** |

**DEFENDANT-INTERVENOR MINE SAFETY APPLIANCES COMPANY'S RESPONSE IN OPPOSITION TO SCOTT HEALTH & SAFETY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1, Defendant-Intervenor Mine Safety Appliances Company ("MSA") respectfully requests that the Court deny the Motion for Judgment on the Administrative Record and for Declaratory and Injunctive Relief filed by Scott Health & Safety ("Scott"), deny Scott's request for injunctive relief, and grant MSA Judgment on the Administrative Record.

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

In the end, Scott lost to a superior proposal. In explaining his decision to award the contract to MSA and not Scott, the Source Selection Authority ("SSA") found MSA's proposal clearly superior to Scott's. He cited the [redacted] AR 1888.[1] The price difference between MSA and Scott was [redacted] advantages.

Scott attempts to argue that the obvious advantages in MSA's design were the product of unequal evaluation standards or deviations from the RFP evaluation scheme, but the record shows otherwise. The Air Force applied the same standards to evaluate all the proposals. Moreover, the record shows that the disadvantages that the Air Force found in Scott's design were the product of Scott's own business decisions regarding what design to propose, that Scott was told during discussions exactly what problems the Air Force found in its design, and that Scott was given an opportunity to modify its proposal to address those flaws. Armed with knowledge about the problems found by the Air Force, Scott chose not to submit a final proposal revision. That decision was Scott's to make, and it is not for the Air Force – or this Court – to fix what was, in the end, Scott's business decisions.

---

1 "AR" refers to the Administrative Record filed by the Government.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

## QUESTIONS PRESENTED

1. Were the Air Force evaluation and award decision irrational, inconsistent with the RFP and not supported by the record?

2. Did the Air Force fail to apply the RFP evaluation criteria fairly and equally to the proposals?

3. Did the Air Force waive any requirements in its evaluation of MSA's proposal?

4. Should this Court grant Scott declaratory or injunctive relief?

## COUNTER-STATEMENT OF FACTS

### A. The Air Force's Requirement for the Next Generation Self Contained Breathing Apparatus

In this procurement, the Air Force sought to fulfill its need for "next generation Self Contained Breathing Apparatus (SCBA)" that, among other things:

> provide[s] respiratory protection in a chemical, biological, radiological, and nuclear (CBRN) environment in 1.) SCBA only mode; 2.) SCBA and Air Purifying Respirator (APR) selectable mode, and 3.) SCBA and Powered Air Purifying Respirator (PAPR) selectable mode.

AR 38. An SCBA, as its name implies, is one type of device used to provide breathable air to persons, typically emergency services responders, who must enter hazardous environments. *See generally* AR 38, 1708. Other types of devices that perform a similar function include an Air Purifying Respirator ("APR") and a Powered Air Purifying Respirator ("PAPR"). The difference between an SCBA, on the one hand, and an APR or PAPR, on the other hand, is the source of the air supply. An SCBA supplies compressed air from a cylinder mounted on the user's



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

back. *See generally* AR 38, 49 (describing cylinders). The obvious limitation of this device is that the cylinder holds a limited air supply, and the user must leave the scene before that air supply is exhausted.

APRs and PAPRs supply air from the atmosphere, called "ambient" air, sending it through a filter to clean it for the user. *See* AR 44 (discussing "filtered air capability"). In an APR, the user's breath draws air through the filter and into the facepiece, while in a PAPR, air is pushed through the filter by a battery powered blower. *See* AR 48 (discussing PAPR battery requirements). APRs and PAPRs are not restricted by limited duration air supplies like SCBAs, but they can only operate properly when ambient air contains sufficient oxygen levels and limited contamination. The Air Force sought a "next generation" unit that could operate as an SCBA alone, or as an APR or PAPR, and could operate safely in chemical, biological, radiological, and nuclear ("CBRN") environments in any of these modes. AR 38.

Prior to issuing the RFP, the Air Force conducted "extensive" market research. AR 1709-11 (summarizing market research); AR Tab 13 (Market Research Report). Its market research showed that SCBAs "are readily available in the commercial market," but that commercial units "could not fulfill the Government's need for a one-face mask configuration with dual purpose capabilities . . . both with CBRN protection." AR 1544. The Air Force determined, however, only "minor" modifications would be needed to existing commercial units to satisfy the Air Force requirement. AR 1545.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

### B. The RFP Evaluation Process

The Air Force recognized that the commercially available units were at "various stages of development." AR 1545. To maximize competition, the RFP implemented a multi-staged evaluation process. Offerors were to submit their *existing* commercially available SCBAs, called "base units," for field test evaluation. AR 28 (RFP Subfactor 2 part a). Also, offerors were to submit a narrative explaining their approach for modifying the base units to meet the Air Force's ultimate requirements. AR 28 (RFP Subfactor 3).

The RFP set forth fewer requirements for the base unit than for the end product unit that was to be designed and delivered under the contract. The requirements for the base units were minimal: they were required to be the offeror's "existing commercial SCBA units," and the offeror was required to ensure that they had been certified in accordance with certain minimum industry standards. AR 28 (citing specifically ¶¶ 3.4.5 and 3.4.6 of the Purchase Description); AR 47 (¶¶ 3.4.5, 3.4.6). The unit to be developed and delivered under the contract, however, was required to meet all of the requirements of the RFP's Purchase Description ("PD"). AR 47. The PD contained detailed specifications for the unit's design, operation, wearability and other characteristics. AR 43. There was no requirement that the end product to be delivered under the contract be available commercially, either at the time proposals were submitted or even at the time of award.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

Significantly, the Air Force noted in the RFP that it would use formal source selection procedures for a best value procurement. It notified offerors that the Air Force's decision may result in an award to a higher rated, higher priced offeror, stating:

> This is a best value source selection conducted in accordance with Air Force Federal Acquisition Regulation Supplement (AFFARS) 5315.3 and MP5315.3, Source Selection, as supplemented by AFMCFARS. Award will be made to the offeror who is deemed responsible in accordance with the FAR, whose proposal conforms to the solicitation's requirements, and which is judged to represent the best value to the Government. . . . This may result in an award to a higher rated, higher priced offeror.

AR 31.

The RFP established 5 evaluation factors: (I) Mission Capability, (II) Proposal Risk, (III) Present and Past Performance, (IV) Cost/Price and (V) Small Business Participation. AR 32. The Mission Capability factor was further comprised of 4 Subfactors. Under Subfactor One, Certifications and Test Data, the Air Force confirmed that the certifications and test data of the base unit met the RFP minimum requirements. Subfactor Two was the Field Evaluation. This evaluation consisted of the Air Force's field testing of the offeror's base unit. Subfactor Three was SCBA Design Approach. The Air Force evaluated the offeror's approach to modifying its base unit to meet the Air Force's ultimate needs. Under Subfactor Four, Program Production Plan, the Air Force evaluated the offeror's production plan and assessed its viability. AR 32.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Because the proposed prices were to be firm-fixed prices, the RFP provided a straightforward price evaluation. After reviewing the proposed prices for reasonableness and to ensure they were reasonably balanced across the various contract line items ("CLINs"), the Air Force multiplied the proposed unit price for each CLIN by the estimated quantities provided in the RFP, totaled them and compared the totals. AR 35-36.

### C. Purchase Description and NIOSH Standards

The PD incorporated industry standards for the SCBA product that was to be developed. It stated that the end product SCBA "shall meet and/or exceed all minimum requirements specified in the referenced standards." AR 43. The PD referenced, among others, standards developed by the National Fire Protection Association ("NFPA") and by the National Institute for Occupational Safety and Health ("NIOSH"). The Air Force was aware that at least one NIOSH "standard" was still in the process of development and was subject to change: the NIOSH Concept for Chemical, Biological, Radiological, and Nuclear (CBRN) Tight Fitting, Powered Air Purifying Respirator (PAPR) Standard 2004. AR 44. Throughout this procurement and today, this document has been in draft, not final, form and exists only as a "Concept" paper and not as a final standard. *See* Scott Mot., App. B (marked "Draft for Discussion").

The Air Force accounted for this and other evolving concepts in its PD, stating that should "these existing standards be replaced by a newer numbered or titled standard, the most current standard shall always apply." AR 43. The PD



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

referenced the 2004 version of this NIOSH Concept. AR 44. Before offerors submitted initial proposals, NIOSH revised the draft Concept twice, once on March 30, 2005 and again on June 20, 2005. *See* Exhibits 1 & 2 attached hereto. On August 23, 2005, NIOSH announced that it would revise the draft Concept again, to include relaxing some requirements. AR 1027. On September 16, 2005, offerors submitted initial proposals. Subsequently, on November 4, 2005, NIOSH issued the promised revised draft CBRN PAPR Concept relaxing certain flow rate/breathing rate standards. *See* Scott Mot., App. B.

**D. Submission of Proposals, Evaluation and Award Decision**

[redacted] offerors submitted proposals by the due date of September 16, 2005, including Interspiro, Scott and MSA. AR 1702. After initial evaluations, [redacted] proposals remained in the competitive range. AR 1702. The Air Force conducted discussions, requesting each offeror to respond to questions, framed as Evaluation Notices ("EN"). *See, e.g.*, AR Tab 2 at 1119-79 (ENs and responses of Scott). Following discussions, on January 12, 2006, offerors were provided the chance to revise their proposals. *See, e.g.,* AR 1117. Scott declined to submit a final proposal revision. AR 1115.

After discussions the Air Force conducted a final evaluation. The Air Force rated offerors on the Mission Capability Factor with adjectival ratings, in which a "blue" meant "exceptional," a "green" meant "acceptable," a "yellow" meant "marginal" and a "red" meant "unacceptable." AR 33. The Air Force rated offerors on the Proposal Risk Factor as either "high" risk, "moderate" risk, or "low" risk,



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

with "low" obviously the most favorable rating. *Id.* The Air Force rated the relevance of each example of the offerors' past performance to the present procurement as either "very relevant," "relevant," "semi-relevant" or "not relevant." Based upon its assessment of the quality of the offerors' past performance as a whole, the Air Force assigned overall past performance ratings of either "high," "significant," "satisfactory," "unknown," "little" or "no" confidence. AR 34-35.

After the final evaluation, the results stood as follows:

| | MSA | Interspiro | Scott |
|---|---|---|---|
| **Factors 1 & 2: Mission Capability and Proposal Risk** | | | |
| Subfactor 1: Certifications/Test Data | green/low risk | [redacted] | [redacted] |
| Subfactor 2: Field Evaluation | blue/low risk | [redacted] | [redacted] |
| Subfactor 3: Design Approach | blue/low risk | [redacted] | [redacted] |
| Subfactor 4: Program Production Plan | green/low risk | [redacted] | [redacted] |
| **Factor 3: Present and Past Performance Confidence Rating** | high confidence | [redacted] | [redacted] |
| **Factor 4: Price** | $35,995,298 | [redacted] | [redacted] |
| **Factor 5: Small Business Participation** | [redacted] | [redacted] | [redacted] |

AR 1485-88, 1491-96; AR 1886; AR 1702-03. As the table shows, MSA's proposal was clearly superior on [redacted] evaluation factors. In the Mission Capability subfactors, MSA [redacted] receive a "blue" *i.e.* exceptional rating [redacted] [redacted] proposal element, and MSA received two of them. MSA also received [redacted] ratings on the [redacted] factors, including



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

"low" Proposal Risk ratings across all Mission Capability subfactors and a "high confidence" Present and Past Performance assessment.

As for price, [redacted]. The prices proposed by MSA [redacted]: $35,995,298 [redacted], respectively. AR 1702-03.

The RFP provided that award would be made to the proposal that the Air Force found represented the best value. AR 31. [redacted] The Source Selection Authority ("SSA") chose MSA, deeming its superior [redacted] price. In explaining his judgment, the SSA recognized the life-saving nature of this technology:

> In my opinion, MSA's technical proposal and the benefits associated with its proposal [redacted] provided by [redacted] the other offerors. MSA had the [redacted] in Factor I . . . However, it was the reason for the blue ratings that convinced me that MSA's proposal was [redacted]. MSA's proposal provided [redacted] because of its [redacted] which will [redacted] for the emergency responder. It is [redacted] and it provides superior [redacted]. The MSA proposal also provided a [redacted] system with the PAPR and the ability [redacted].

AR 1888.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

## ARGUMENT

### I. Submission of a [redacted] Was Irrelevant to the Evaluation

Scott contends that the Air Force "permitted MSA, but not Scott," to submit a [redacted] that Scott claims reflected MSA's design approach for the procurement and an [redacted] in contravention of the RFP page limitations. Scott Mot. at 11, 14. Scott contends that the submission of a [redacted] gave MSA advantages in the evaluation that Scott did not have. These contentions are factually incorrect.

The Air Force has explained that, while MSA and Interspiro both submitted [redacted], the Air Force did not evaluate them. Beebe Decl. ¶ 4, attached to Gov't. Mot. The [redacted] played no role in the evaluation. Similarly, the Air Force did not review MSA's [redacted], too, played no role in the evaluation. *Id.*

Scott infers that the [redacted] evaluated, based on Scott's claim – unsupported by evidence – that the Air Force told Scott during the debriefing that the evaluation was based on the offerors' "progress of development." Scott Mot. at 16. For this assertion, Scott relies not on the record but solely upon an allegation in its complaint. Of course, an allegation in a complaint is not evidence, but even if this allegation were true, that statement would not prove, or even tend to suggest, that the Air Force [redacted]. The progress of development of MSA's design is evident from MSA's written proposal. *See, e.g.*, AR Tab 3 at 628-50.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

Scott also cites two pages from the field evaluation forms that mention [redacted] (It cites none that mention [redacted].) Scott Mot. at 16. In fact, only one of those pages, AR 2244, mentions [redacted] However, that excerpt simply repeats, word for word, a line that appears in MSA's proposal. *Compare* AR 2244 *with* AR 650; *compare* AR 2259 *with* AR 633. Those citations are *not* evidence that the Air Force [redacted]), but only evidence that an evaluator read MSA's written proposal, which is not at issue. It is significant that there are [redacted] of Field Assessment Evaluation forms for MSA, completed by [redacted] different evaluators, and Scott can only point to one page (Scott claims two pages) that mention [redacted]

Finally, Scott also contends that MSA was given a blue rating because its proposed unit would [redacted] Scott Mot. at 16. Scott complains of unequal treatment, contending that Scott's product also had that capability but Scott was only given [redacted], and it suggests (without evidence) that the Air Force concluded that MSA offered these features because of MSA's [redacted]. *Id.*

In fact, this excerpt refers to two *separate* features that are both fully explained in its written proposal. First, it refers to the capability to [redacted] that is, to [redacted]. MSA's proposal discusses that very feature:



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

[redacted]

AR 640. Along with this description, MSA provided [redacted] – that enables [redacted]. *See* AR 640. Second is the capability of MSA's design to [redacted]. MSA explained clearly in its proposal how this feature exceeded the requirements:

[redacted]

AR 565 (emphasis added). Through the addition of [redacted], even if a [redacted] AR 565, 640-41, 648.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Scott does not cite any language from its proposal in which it claimed to offer these capabilities, but instead cites to a few individual evaluator forms. AR 2317-28, 2329. These forms discuss different features altogether. *Id.* In any event, MSA's "blue" rating on Subfactor 3 was based upon numerous superior features in its proposal, not simply on these 2 features. AR 1492.

In summary, Scott's contention that it was prejudiced by MSA's submission of [redacted] is wholly without merit, and should be rejected.

## II. The Air Force Evaluated the Offerors Equally and Applied the Appropriate Draft NIOSH CBRN PAPR Concept

Scott contends that the Air Force did not apply to Scott the most current November 2005 draft standard issued by NIOSH for SCBAs that operate in CBRN environments, and that the Air Force waived this standard altogether for MSA. Scott Mot. at 17-25. These arguments are without merit. The Air Force adhered to the RFP and applied the most current NIOSH standard, and it applied that standard equally to all offerors. *See, e.g., Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1137 (Fed. Cir. 1998). More importantly, however, irrespective of which draft NIOSH Concept was applied, MSA's proposed SCBA unit [redacted] Scott's unit, and for those reasons, the evaluators judged MSA's unit to be superior to Scott's unit. AR 1888.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

### A. Proposals Based on the November 2005 Draft NIOSH Concept Were Deemed to Be Acceptable

The RFP PD, Section 3, stated that the SCBA unit proposed "shall meet and/or exceed all minimum requirements specified in the referenced standards below." AR 43. The PD then listed 13 separate standards issued by various industry and governmental entities. *Id.* Significantly, the Air Force was aware that at least one "standard" had not been finalized by NIOSH and was subject to change: the NIOSH Concept for Chemical, Biological, Radiological and Nuclear (CBRN) Tight-Fitting, Powered Air Purifying Respirator (PAPR) was in draft form. Accordingly, the Air Force built into the RFP a means to account for changing standards, stating that "should these existing standards be replaced by a newer [standard], the most current standard shall always apply." AR 43.

Throughout this procurement there has been no final NIOSH CBRN PAPR standard. The PD lists the November 2004 version of the *draft* NIOSH CBRN PAPR Concept, and this *draft* Concept was revised at least twice prior to submission of initial proposals – once on March 30, 2005 and again on June 20, 2005. On August 23, 2005, NIOSH announced its intention to change its June 20, 2005 version of its draft CBRN PAPR Concept, including its intention to relax some of its requirements. AR 1027. Thus, prior to the release of the RFP as well as during the evaluation, this NIOSH "standard" was a moving target. Indeed, the only final NIOSH standards and approvals applicable to PAPR units even today are those set forth in 42 C.F.R. Part 84.



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

Initial proposals were due on September 16, 2005. AR 1478. At that time, NIOSH had not yet issued its anticipated revision to the draft Concept, so the "most current" draft NIOSH CBRN PAPR Concept remained the June 20, 2005 draft. However, [redacted] the Air Force were well aware that the draft CBRN PAPR Concept was going to be changed.[2]

Thus, in performing the initial evaluations, the Air Force applied the "most current" June 2005 draft NIOSH CBRN PAPR Concept issued prior to proposal submission. Where, however, an offeror informed the Air Force that it was designing its proposed unit to the requirements in the anticipated new draft Concept, the Air Force deemed it acceptable. Beebe Decl. ¶ 8. While evaluations were proceeding, NIOSH issued its revised draft CBRN PAPR Concept on

---

2 [redacted] AR 1124.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

November 4, 2005.[3] Scott Mot., App. B. The Air Force evaluated [redacted] the November 2005 draft Concept equally and in a manner consistent with the RFP.

Notably, this approach benefited Scott, because the relaxed requirements in the November draft Concept enabled Scott to [redacted] Scott's initial proposal stated that the [redacted] of its proposed [redacted] is [redacted], and its proposed [redacted]. AR 1325. Scott acknowledged that the [redacted] represented a [redacted] AR 1325.

The Air Force issued an EN to Scott on November 22, 2005 requesting Scott's response to the fact that the [redacted] AR 1172. In response, Scott explained that its unit would [redacted] because of the relaxed November 2005 Concept:

[redacted]

---

[3] Among other changes, the November draft Concept eliminates the earlier and more restrictive breathing rate requirements and now only mandates those air flow requirements set forth in 42 C.F.R. Part 84 and testing at a single flow rate. *Compare* Scott Mot., App. B *with* Scott Mot., App. A.



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

[redacted]

AR 1124. Based on this response, the Air Force raised Scott's Subfactor Three rating from [redacted] to [redacted]. AR 1495. On the basis of [redacted], the Air Force reasonably determined that MSA's proposed product also would comply with the PD.

Scott incorrectly asserts that nothing in MSA's proposal confirmed that its proposed [redacted] [redacted] – would comply with the [redacted]. Scott Mot. at 20. That is not true. MSA explained that its proposed [redacted], the [redacted], was [redacted], AR 1027-28, and that the [redacted] NIOSH Concept would [redacted] AR 1027. MSA also represented that [redacted].[4] AR 518.

Moreover, what was being evaluated under Subfactor 3 was a developmental item, not a finished product. In this regard, an offeror's promise to comply with the applicable standard is evaluated, because there is no finished product. The Air Force deemed [redacted] by Scott that its product would comply to be sufficient basis to find its proposal compliant. *See, e.g.*, AR 1124. Consistent with

---

4 [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

the language in the PD, the Air Force considered the most recent draft NIOSH CBRN PAPR Concept applicable at the time of award, and Scott and MSA were treated equally.

### B. Scott Proposed [redacted] Because of its Own Business Decision or Error, not Because of any Fault of the Air Force

Scott also contends that MSA was only able to propose [redacted] that was [redacted] than Scott's [redacted] because the Air Force did not evaluate MSA's proposal against the November 2005 draft Concept. Scott Mot. at 22. The premise of this argument – that the Air Force evaluated the proposals against different standards – is erroneous, as has been demonstrated. The same standards were applied to both MSA and Scott. Moreover, the record demonstrates that Scott's [redacted] solely because of Scott's own business decisions or errors, not because of any inequality in the Air Force evaluation.

Scott and MSA proposed [redacted]. The [redacted] proposed by MSA [redacted] is [redacted]. AR 1028; AR 363. [redacted] AR 1028. [redacted], Scott proposed a [redacted] (also referred to as [redacted] or [redacted]) PAPR. AR 1322; Scott Mot. at 24. [redacted] Scott Mot. at 24.

Scott tries to suggest that it proposed a [redacted] because Scott supposedly "designed to meet the [redacted]," and the [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted], it claims, "required" a [redacted]. Scott Mot. at 24 ("[t]he [redacted] required a [redacted]"). The Court should note carefully the major inconsistency in Scott's arguments. On the one hand, Scott contends that that the Air Force should have evaluated proposals against [redacted]. Scott Mot. at 18. On the other hand, Scott is contending that it designed its [redacted] "to meet the [redacted]." Scott Mot. at 24. Scott is trying to have it both ways.

In any event, Scott's contention that the draft concepts required [redacted] is not true. In fact, the October 2004, March 2005, and June 2005 drafts of the NIOSH Concept *all* contain requirements for *either* a [redacted]" [redacted]." *See, e.g.*, Scott Mot., App. A[redacted] *see also* Exhs. 1 & 2 hereto. Thus, [redacted] type was allowed under any of the draft Concepts at issue in this case.

In fact, Scott's selection of a [redacted] was a product of its own business decision in hopes of receiving extra credit from the Air Force, or its own mistaken belief that such a unit was required, when no such requirement existed.[5] Unfortunately for Scott, [redacted] require [redacted]

---

5 Scott also contends that because its proposed [redacted] maintains [redacted] in compliance with the 2004 Concept, it should receive a higher rating because this feature exceeds the requirements of the 2005 Concept. Scott Mot. at 24. If [redacted] is no longer a requirement, as Scott

(continued...)



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted] and as a result [redacted]. *See, e.g.*, Scott Mot., App. A, § 5.2 (requiring [redacted]). Accordingly, as a result of its own choice, Scott has proposed the development of a unit that is [redacted] [redacted] offerors' proposed units. This Court should not entertain a protestor's allegations attributed to its own mistakes and internal decisions and are not a product of the agency's actions. *See, e.g., Gulf Group, Inc. v. United States*, 61 Fed. Cl. 338, 363 (2004) (concluding that offeror's decision to raise its price was a product of nothing other than "its own business judgment"); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1564 (Fed. Cir. 1996) (quoting from Board of Contract Appeals decision in which bid protester "lost the procurement not because [of the agency's actions but] because [the protester] made a poor business decision to offer an expensive system")).

Scott also contends that its unit was [redacted] because of the [redacted] [redacted] and [redacted]" that caused Scott to [redacted] [redacted] than would be required under the [November] 2005 Concept." Scott Mot. at 24. That is, the November 2005 draft Concept reduced the breathing rate requirements of the previous drafts. *Compare* Scott Mot., App. A, Table 3 *with*

(continued)

suggests, it is the Air Force's decision as to whether or not this feature provides an additional benefit. However, irrespective of the desirability of this feature, as [redacted] AR 1028, Scott can demonstrate no prejudice from the evaluation of this feature, as it was not [redacted].



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

Scott Mot., App. B at 7. Scott contends that if the Air Force had applied the November 2005 draft Concept (which of course it did), Scott could have [redacted] its unit had, and thus [redacted].

Here again, Scott's contemporaneous statements belie its litigating positions. Scott *planned contemporaneously* – and so informed the Air Force in the above-quoted EN response – that it would [redacted] to meet the [redacted] AR 1124. Even after that EN response, on January 12, 2006, the Air Force gave Scott the opportunity to revise its proposal and submit a final proposal revision. AR 1117-18. Scott could have changed its design to [redacted] of its proposed [redacted]. Scott declined to do so, stating that such revisions were "not necessary." AR 1115.

After its business decision did not succeed, Scott now improperly attempts to use the protest process to lever another chance at competing. This Court should reject Scott's attempt.

Finally, even if there were some merit in Scott's contention – which there is not – these arguments would not help Scott. Even without the [redacted] that Scott now claims are unnecessary, Scott Mot. at 24, Scott's unit ([redacted]) would remain [redacted] than MSA's unit. The removal [redacted] also would not remedy Scott's [redacted], AR 48, as Scott's [redacted] would remain



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

[redacted]. AR 1325. Scott has not, and indeed, cannot demonstrate that it was entitled to an equal or higher rating than MSA under the SCBA Design Subfactor in light of such undisputed shortcomings. As explained in the Source Selection Decision, among other reasons, the fact that MSA's proposed [redacted] was [redacted] and [redacted] than Scott's proposed unit was [redacted] AR 1888.

## III. MSA's Warranty Met the RFP Requirements

Scott contends that the Air Force waived the warranty and maintenance requirements for MSA, Scott Mot. at 25, but it is wrong. The RFP warranty requirement stated that the contractor was required to:

> to provide at least the same express warranty terms, including offers of extended warranties, offered to the general public in the customary commercial marketplace, and *will conform with all requirements of the contract for a period of 365 days from the date of Government acceptance.*

AR 20 (emphasis added).

Scott contends that MSA did not propose to "conform with all requirements of the contract," as stated in the RFP because MSA did not promise a system that would be [redacted] in accordance with [redacted], which provides:

> [redacted].



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

AR 55 (emphasis added). Scott contends that MSA's proposed system is [redacted] because MSA's warranty [redacted]. Scott Mot. at 25.

On the contrary, MSA's warranty was fully compliant. Indeed, the most obvious refutation of Scott's argument is evident from the very passage in MSA's proposal that Scott quotes. *Id.* at 26. MSA's warranty provides that [redacted] AR 558 (emphasis added). [redacted] AR 559-60. Thus, MSA's equipment [redacted] and is [redacted] Were there any doubt – which there is not – MSA's proposal stated that [redacted] *See, e.g.*, AR Tab 3 at 635 [redacted]; AR 650. Scott's contention should be rejected.

## IV. The Air Force Properly Evaluated the Risks Posed in MSA's Proposal and Treated the Offerors Equally in its Price Evaluation

Scott alleges that the Air Force failed to consider risks and costs in MSA's proposal that "undermines both [MSA's] Proposal Risk and Price evaluations." Scott Mot. at 27. Contrary to Scott's claims, the Air Force properly evaluated the risks in MSA's proposal to be "low" based on ample documentation in the record. Scott's arguments challenging MSA's ratings are based on a misreading of MSA's



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

proposal. Moreover, there are no extra costs to the Air Force that would result from MSA's proposal; the price evaluation was done fairly, equally and in accordance with the RFP.

### A. There Are No Added Risks in MSA's Proposal Arising Out of MSA's Warranty, "Work-Around Costs," or Any Alleged Life-Cycle Costs

Scott challenges MSA's "low" Proposal Risk rating, claiming that under MSA's proposal, the Air Force will incur additional warranty/repair costs, additional costs for work-arounds, and additional life-cycle costs. Scott Mot. at 27-30. Scott, however, misreads MSA's proposal. First, the Air Force will not "incur additional costs to pay [redacted]." Scott Mot. at 27; AR 33, 1886. Scott mistakenly claims that MSA's warranty states that [redacted] but that is not correct, as has been demonstrated. This is no basis for Scott's challenge to MSA's "low" Proposal Risk rating.

Scott also claims there is additional risk in MSA's proposal because it contends MSA stated that [redacted] and that MSA would perform a work-around involving [redacted] Scott Mot. at 27; AR 1042. Again, Scott misreads MSA's proposal, which does not state that [redacted] will cause "work-around" costs or higher life-cycle costs.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

Rather, these statements are part of the required analysis of potential risks in MSA's [redacted] risks that all offerors were required to identify. The RFP required each offeror to analyze potential risks in its design, stating:

> address proposal risk by identifying those aspects of the proposal considered to involve cost and/or mission capability subfactor risk. . . . Describe the impact of each identified risk in terms of its potential to interfere with or prevent the successful accomplishment of other contract requirements. . . . Suggest a realistic 'work-around' or risk mitigator for identified risks that will eliminate or reduce risk to an acceptable level.

AR 27. All offerors, including Scott and Interspiro, discussed risks in their proposals. AR 1360-67, 366-69. Scott, for example, pointed out in its risk matrix that if [redacted] AR 1362. To mitigate the risk, Scott stated that it [redacted] AR 1362. Similarly, MSA's risk matrix identified potential risks, along with actions that MSA could take to mitigate the risks if they came to pass. AR 1042. Thus, MSA did not state that it *would* incur "work around" costs; rather, the work-arounds are possible methods to deal with the various risks identified. *Id.* For example, if the [redacted] MSA stated that it could [redacted] *Id.* As noted above, Scott's proposal also identified work-arounds for its potential risks. AR 1362-67. However,



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

because this is a fixed-price contract, if these potential risks come to pass, they would not cause increased cost to the Government.

The Air Force conducted a thorough evaluation of MSA's proposal, finding that MSA had "low Proposal Risk ratings for all four subfactors (Factor II), which was [redacted] low risk ratings." AR 1491-93, 1887. Scott offers no basis to challenge that risk assessment.[6]

According to Scott, the Air Force further erred by giving MSA a "blue" rating under Subfactor 3, Design Approach on the basis that MSA's proposal [redacted] Scott contends that MSA's proposal will require [redacted] because it will not [redacted]. Scott Mot. at 29; AR at 1492. Of course, MSA's blue rating under the Design Approach Subfactor was based on [redacted]

---

6 In a footnote, Scott alleges that the Air Force deviated from Air Force acquisition regulations, because it claims the Air Force was required always to consider life-cycle costs. Scott Mot. at 28 n. 13. That provision, however, does not state that the Air Force must include life cycle costs as an evaluated element in every RFP.

More importantly, Scott admits that there was no mention in the RFP that the Air Force would consider life-cycle costs in its evaluation. Scott Mot. at 28 n. 13; AR 1-145, 1705-26. As a result, it would have been improper for the agency to consider such costs. *See, e.g., Marquette Med. Sys., Inc.*, B-277827, Apr. 29, 1999, 99-1 CPD ¶ 90 (holding that the RFP should have identified life cycle costs to put the offerors on notice if such costs were to be evaluated in this procurement); *Eastman Kodak Co.*, B-194584, Aug. 9, 1979, 79-2 CPD ¶ 105. To the extent that Scott means to suggest that the RFP should have included such a provision, its allegation is waived. Scott should have raised this concern when the RFP was first issued rather than waiting until the contract has been awarded to contest the evaluation criteria. *Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 726-28 (2004).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

features and [redacted]. AR 1492, 1887-88. Moreover, Scott's argument relies on same incorrect assumption that has already been refuted. MSA's warranty [redacted].

Although Scott asserts that the Air Force acted in a capricious and arbitrary manner by neglecting to consider factors that will allegedly increase costs to the Government, the record shows that the Air Force correctly evaluated MSA's proposal as for a firm-fixed-price contract and provided a rational basis for determining MSA's Proposal Risk and other ratings, adequately supporting the SSA's award decision to MSA.

### B. The Air Force Evaluated Price on an Equal Basis that Reflects the True Price Difference Between Scott and MSA

Scott alleges that the [redacted] price difference between its and MSA's proposals does not capture the true price differential between the two because MSA's proposal will ultimately cost more to the Government, taking into account MSA's warranty costs, work-around costs and life-cycle costs. Scott Mot. at 31; AR 1888. Contrary to Scott's recycled allegations, the Air Force will not incur such extra costs, for the reasons already explained.[7]

---

7 Scott also claims the Air Force failed to give MSA and Scott equal treatment because the agency permitted MSA to include [redacted] costs that went unevaluated, thereby allowing MSA to "artificially lower its proposed price schedule, knowing that any cost or profit not recovered in those prices would be recovered in [redacted]." Scott Mot. at 31-32. This argument is based on the

(continued...)



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

More significantly, this is a fixed-price contract. A "fixed-price contract provides for a definite price and places the risk and responsibility for all contract costs and resulting profit or loss upon the contractor. . . in a fixed-price contract, the purpose of a price analysis generally is to ensure a fair and reasonable price." *Star Mountain, Inc.*, B-285883, Oct. 25, 2000, 2000 CPD ¶ 189. "Agencies may provide for a cost/price analysis for the purpose of assessing understanding of the requirement, or risk inherent in the offeror's approach, but the extent of the analysis in these circumstances is largely within the agency's discretion." *Wackenhut Servs., Inc.*, B-286037, Nov. 14, 2000, 2001 CPD ¶ 114.

Here, the agency adhered to the RFP, which provided a straightforward price evaluation. After reviewing the proposed prices for reasonableness and to ensure they were reasonably balanced across the various contract line items ("CLINs"), the Air Force multiplied the proposed unit price for each CLIN by the estimated quantities provided in the RFP, totaled them and compared the totals. AR 35-36; *see also Consol. Eng'g Servs., Inc. v. United States*, 64 Fed. Cl. 617, 635-36 (2005) (explaining that for a firm-fixed-price contract, an agency's "simplistic bottom-line comparison" among proposals it received is all that is required). The Air Force

---

(continued)

same flawed assumption that MSA has already refuted. Because MSA's warranty [redacted] there will be no extra [redacted] revenue stream to MSA.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

performed the price evaluation in accordance with the RFP and rationally decided to award the contract to MSA.

For these reasons, Scott's contention that the Air Force neglected to evaluate MSA's proposal risks and treated the offerors on an unequal basis is meritless, and should be dismissed.

### C. MSA's Relationship with [redacted] Was Fully Disclosed and the Air Force's Evaluation Satisfied the RFP Requirements

Finally, Scott contends that the Air Force failed to evaluate the [redacted] MSA proposed as a [redacted] that would [redacted]. Scott Mot. at 32. This argument is wholly without merit. Scott raises no basis for concern about [redacted], which is a well-established [redacted]. *See, e.g.*, AR 363. Scott also erroneously asserts that "MSA"s proposal does not fully disclose the relationship between MSA and [redacted] and contains no [redacted] to MSA or to the Air Force." Scott Mot. at 32. Contrary to Scott's contention, MSA included a [redacted] as part of its proposal. AR 1085-86. In this [redacted] to MSA. AR 1085-86.

As MSA explained in its proposal, [redacted] which is a [redacted] AR 565.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

MSA proposed to use [redacted]. *Id.*

Scott contends that the Air Force was obligated to scrutinize [redacted] as a part of the evaluation of the Program Production Plan, Proposal Risk, and Present and Past Performance factors. The RFP does not support that argument. None of those factors mentions a requirement for the Air Force to evaluate an offeror's [redacted]. AR 32-34. Under the Present and Past Performance Factor, the RFP states that "Present and Past Performance information will also be considered regarding any critical subcontractors and key personnel." AR 34. However, the RFP did not require submission of past performance information about suppliers or subcontractors, but rather required past performance information about the offeror. AR 29. Moreover, the determination of what is a "critical subcontractor" and how deeply to evaluate subcontractors are judgments within the sound discretion of the agency. *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 352-53 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003); *Oceanometrics, Inc.*, B-278647; B-278647.2, June 9, 1998, 98-1 CPD ¶ 159. Scott has advanced no basis to question the scope of the Air Force's evaluation in this regard.

Moreover, there is no prejudice to Scott: Scott does not contend that the evaluation was conducted unequally, *i.e.*, that the Air Force scrutinized Scott's [redacted] but gave MSA's [redacted] a free pass. Nor, indeed, does Scott raise a basis for concern about [redacted], such that if the Air Force had scrutinized [redacted] more closely, the ratings would have been different. Scott fails utterly to allege, let alone prove, that whether [redacted] made any difference



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

whatsoever. Notably, Interspiro claims that if the Air Force had evaluated [redacted] – [redacted] – it would have improved Interspiro's scores. Interspiro Mot. at 32.

In sum, this argument fails because Scott has not alleged, and cannot demonstrate, that applying more scrutiny [redacted] would have changed the result. This argument should be rejected.

## V. The Air Force Adhered to the Evaluation Process in the RFP and Treated the Offerors Equally

Scott persists in its allegations that because it eliminated the deficiencies identified in the initial evaluation in response to ENs under [redacted] it should be entitled [redacted] ratings. A [redacted] rating is defined as [redacted] AR 33. MSA's blue ratings are the result of the [redacted] benefits to the Air Force of a number of identified strengths. Even if Scott's proposal shares some, or portions of some, of MSA's proposed features, this does not justify an identical rating. *See, e.g., Cortez, Inc.*, B-292178, *et al.*, July 17, 2003, 2003 CPD ¶ 184 (holding that the evaluation finding that the awardee's proposal was more advantageous overall under the technical evaluation factor was reasonable because the awardee had a "substantially greater number of significant strengths and other strengths"). Further, although Scott did eliminate its deficiencies through numerous proposed alterations to its unit, the Air Force noted that [redacted] . . . ." AR 1495.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Overall, despite Scott's assertion of common elements of strengths, MSA had [redacted] strengths and a far superior unit overall.[8] As plainly articulated in the SSDD, [redacted] AR 1888. MSA's two blue ratings were each supported by [redacted] strengths. AR 1887. Under Subfactor Two, the rating was based on [redacted] elements: [redacted]. AR 1887. Under Subfactor Three, the rating was based on [redacted] elements: [redacted]. AR 1887. Scott's identification of one individual area where it purportedly "exceeds" a minimum requirement is insufficient to establish prejudice, as it cannot demonstrate that its overall technical rating should have been identical to MSA's. *See Banknote Corp. of America, Inc. v. United States*, 56 Fed. Cl. 377, 384 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

Further, as explained in response to each of Scott's allegations below, even in connection with the areas for which Scott now claims it is entitled to "identical"

---

8 Contrary to Scott's assertion that it was initially evaluated as [redacted] in various areas including [redacted] Scott Mot. at 35[redacted] area in Scott's initial evaluation under the [redacted] subfactor was noted as [redacted] – an area for which the evaluators also noted [redacted]. AR 2297-98. Further, it is particularly surprising that Scott would suggest that it should be entitled to an exceptional rating for its [redacted] when it received an EN on [redacted] AR 1172.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

strengths as MSA, Scott Mot. at 35, the record does not support such ratings, much less demonstrate that the Air Force evaluation was arbitrary or capricious.

### A. Scott Failed to Mention in its Proposal Any Capability to [redacted]; Scott is Not Entitled to Credit for a Capability it did not Claim to Have

Scott contends that it proposed the "very same capability" as MSA that serves as the basis for MSA's strength for "[redacted] Scott Mot. at 35. Yet, Scott identifies not a single reference in its proposal to demonstrate that it provides this capability. While Scott cites to individual evaluator notes (at AR 2317-18) in support of its contention, no observation or comment in these notes reflects that Scott's [redacted].[9] Simply put, Scott was not assigned a strength for good reason – it did not propose this capability.

---

[9] While Scott's proposal refers to [redacted], only when the unit is [redacted] Scott proposal offers neither of these features. In fact, when Scott's unit is [redacted] AR 1314.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

### B. The Record Shows that the [redacted] and [redacted] with MSA's Unit Was Better Than with Scott's Unit

The Air Force has plainly stated in the SSDD that, while Scott's [redacted] by the technical evaluators, AR 1494, MSA's SCBA was [redacted] and [redacted] than Scott's SCBA. AR 1888. Consistent with this conclusion, while [redacted] was noted for Scott, the "[redacted] evaluation included identified [redacted] namely, two users noted [redacted]. AR 2266, 2268. In contrast, MSA's [redacted] AR 2207. Similarly, with regard to [redacted] for Scott's SCBA, "users noted [redacted] AR 2268, as opposed to consistently [redacted] ratings for MSA. AR 2207. The record confirms the SSA's observations in the SSDD – MSA's proposal was superior to Scott's with regard to these features. Further, Scott does not even contend that its SCBA unit has the [redacted] of MSA's unit, which were identified by the Air Force as additional bases for MSA's blue rating. AR 1888.

### C. The Air Force Reasonably Determined that Scott Was Not Entitled to a [redacted] for the Fact that its Unit Would Not [redacted]

Scott contends that it "shared" an "identical evaluated strength[ ] with MSA" for [redacted], yet Scott failed to receive credit for this feature. Scott Mot. at 35. First, MSA's blue rating is not based on [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

[redacted] but rather on [redacted] superior features in MSA's proposed SCBA unit. AR 1492 (listing [redacted] features that exceed the requirements and stating that the benefits to the Air Force [redacted] on first responders and [redacted]

Further, despite Scott's allegation to the contrary, as reflected in the final SSDD, the SSA did not attribute MSA's blue rating to [redacted] AR 1887; *see also* AR 1683 (Award Decision Briefing attributing blue rating to [redacted]). As such, among the [redacted] exceptional features noted by the evaluators for MSA under the Design Approach subfactor, the [redacted] was not flagged as a [redacted] in MSA's favor. Both offerors actually received identical credit for this [redacted] feature during the technical evaluation, AR 1492, 1495, and it was not ultimately cited as the justification for a blue rating for MSA. AR 1887.

The mere fact that the final technical evaluation reflected that Scott's proposal [redacted] does not mean that Scott was entitled to [redacted]. AR 1495. Scott's assertion to the contrary would require that this Court ignore that one of the requirements for a [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

is that the proposal [redacted] AR 33 (emphasis added). "[D]etermination of what constitutes an advantage over other proposals and what features would be beneficial to [the agency] [i]s within the discretion of the SSA." *Unified Architecture & Eng'g, Inc. v. United States*, 46 Fed. Cl. 56, 63 (2000), *aff'd* 251 F.3d 130 (Fed. Cir. 2000). As the Air Force did not assign any offeror a blue based on the fact that its proposal [redacted]; the Air Force did not deem this feature sufficiently beneficial to warrant a blue rating. MSA's blue rating under Subfactor Three is the product of [redacted] strengths – none of which, let alone all of them, are reflected in Scott's proposal.

Further, with regard to [redacted], the following was noted in Scott's evaluation: [redacted] AR 2315; AR 1344. The need for this [redacted] was noted by the evaluators and illustrates MSA's relative superiority in this area. AR 2327.

## VI. <u>Scott is Not Entitled to Declaratory or Injunctive Relief</u>

In no event is Scott entitled to declaratory or injunctive relief. Scott seeks a declaratory judgment that "the Air Force's conduct of this procurement and its award of the SCBA contract to MSA were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Scott Mot. at 40. Scott also



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

seeks corresponding injunctive relief. Scott alleges that it suffered irreparable harm by being "deprived of the opportunity to compete in a fair and lawful competition," that an injunction would promote the public interest by "preserving the integrity of the procurement process," and that these two factors "outweigh[ ] any inconvenience, additional time and/or agency resources to be spent in reevaluating the proposals." *Id.* at 39-40. Scott is not entitled to relief.

In deciding whether to issue a permanent injunction, this Court examines the following four factors: (1) whether the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

As an initial matter, Scott is not entitled to any relief because, as has been demonstrated, Scott cannot prevail on the merits. Even if Scott could succeed on the merits, it still is not entitled to equitable relief.

The Federal Circuit has made it clear that "in a bid protest action, section 1491(b)(4) does not automatically require a court to set aside an arbitrary, capricious, or otherwise unlawful contract award." *PGBA*, 389 F.3d at 1226. Rather, even if a plaintiff succeeds on the merits, this Court must examine the strengths of the three other factors and use its "equitable discretion" to determine whether granting the relief would be appropriate. *See id.* at 1225-26, 1228-29, 1231



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

(affirming this Court's decision to withhold injunctive relief even though the agency's action was determined to be arbitrary and capricious).

In addressing the remaining factors regarding irreparable harm, harm to the respective parties, and the public interest, Scott relies only on garden variety arguments that generically apply in nearly every post-award bid protest. This, however, is not a garden-variety procurement. The SCBAs that the Air Force is seeking to procure are *life-saving* instruments, to be used by first responders in service to the national defense. In these circumstances, Scott must adduce more than the ordinary protester concerns to justify delay in the procurement process. *See Gentex Corp. v. United States*, 58 Fed. Cl. 634, 636 (2003) (denying injunctive relief notwithstanding the agency's violations because "the public interest, in particular, the safety of our nation's aircrew, could be compromised by the delay in this procurement which would result from such an injunction").

The degree of harm to the Air Force as well as to the public interest in granting the injunction strongly weigh in favor of allowing the Air Force to continue with the award decision. Indeed, this Court is required to give "due regard to the interests of national defense and national security" in bid protest decisions. 28 U.S.C. § 1491(b)(3). The safety of Air Force personnel is at stake in this procurement. AR Tab 14 at 1888. Indeed, the SCBAs that the Air Force seeks do not currently exist—they are the "next-generation" SCBAs. AR 1544-45. Thus, the extra margin of safety they provide over the current SCBAs is currently unavailable to first responders. This procurement should not be further delayed. For all of



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

these reasons, Scott is not entitled to declaratory or injunctive relief, even if it could prevail on the merits.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenor MSA respectfully requests that the Court deny the Motion for Judgment filed by Scott and dismiss the complaint with prejudice.

Respectfully Submitted,

Of Counsel:
Brian T. McLaughlin

s/ Thomas P. Humphrey, Esq.
Counsel of Record
Elizabeth W. Newsom, Esq.
Amy E. Laderberg, Esq.
Rebecca K. Lee, Esq.
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel. (202) 624-2500
Fax (202) 628-5116

Counsel for Mine Safety Appliances Company

Dated: August 7, 2006



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## CERTIFICATE OF FILING

I hereby certify that on the 7th day of August, 2006, the foregoing Defendant-Intervenor Mine Safety Appliances Company's Opposition to Scott Health & Safety's Motion For Judgment On The Administrative Record And Cross Motion For Judgment On The Administrative Record was filed electronically. This filing will be available to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Courtesy service was also provided at the following addresses:

Dorie Finnerman, Esq.
Trial Attorney
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

Rand L. Allen, Esq.
Daniel P. Graham, Esq.
Wiley, Rein & Fielding LLP
1776 K Street, N.W.
Washington, D.C. 20006

David R. Hazelton, Esq.
Latham & Watkins
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004

s/ Thomas P. Humphrey