AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

**Electronically Filed on August 25, 2006**
**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | |
|---|---|
| INTERSPIRO, INC., Plaintiff, and SCOTT TECHNOLOGIES, INC., d/b/a SCOTT HEALTH & SAFETY, Plaintiff, v. UNITED STATES, Defendant, and MINE SAFETY APPLIANCES CO., Defendant-Intervenor. | No. 06-425C; No. 06-443C<br>Judge Firestone<br>**CONSOLIDATED** |

**DEFENDANT-INTERVENOR MINE SAFETY APPLIANCES COMPANY'S REPLY TO INTERSPIRO'S RESPONSE TO MSA'S <u>CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD</u>**

Of Counsel:
Brian T. McLaughlin

Thomas P. Humphrey, Esq.
Counsel of Record
Elizabeth W. Newsom, Esq.
Amy E. Laderberg, Esq.
Rebecca K. Lee, Esq.
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel. (202) 624-2500
Fax (202) 628-5116

Counsel for Mine Safety Appliances Company

Dated: August 25, 2006

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

## TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

I. There Were No "Fatal Flaws" in the Evaluation .......... 2

A. There Were No "Fatal Flaws" in the Evaluation of Interspiro's Proposal .......... 2

1. Under the RFP, the Air Force Could Not Have Subjected Interspiro's [redacted] to Field Evaluation .......... 2

2. The Air Force Did Not Ignore the RFP's Terms Regarding Commercial Availability and Did Not Fail to Consider the State of Interspiro's Technology .......... 5

3. The Air Force was Not Required to Speculate About Possible Infringement of a "Pending Patent" .......... 6

B. There Were no "Fatal Flaws" in the Evaluation of MSA's Proposal .......... 9

1. MSA Satisfied All the RFP Requirements for the Unit Submitted for Field Testing .......... 9

2. MSA Satisfied the RFP Requirement Regarding Commercial Availability of the SCBA Unit Submitted for Field Testing; Interspiro Continues to Misstate the RFP Commercial Item Provisions .......... 10

II. The Record Shows That The Air Force Took Reasonable Corrective Action .......... 11

III. The Evaluation and Scoring of Proposals Was Rational and Consistent with the RFP's Terms .......... 12

A. The Evaluation of Subfactor 3 Was Reasonable, Consistent with the RFP, and Is Supported by the Record .......... 12

1. Only MSA's Proposed Design Has the Capability [redacted] .......... 12

2. The Evaluation of [redacted] was Reasonable, Consistent with the RFP, and Supported by the Record .......... 14

3. The Evaluation of MSA's [redacted] Was Reasonable, Consistent with the RFP, and Supported by the Record .......... 15

B. The Evaluation of the Program Production Plan Subfactor Was Reasonable, Consistent with the RFP, and Supported by the Record .......... 17

C. The Evaluation of Interspiro's Past Performance Was Reasonable, Consistent with the RFP, and Supported by the Record. .......... 18

IV. Interspiro is Not Entitled to Equitable Relief .......... 20

CONCLUSION .......... 20


PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Aero Corp., S.A. v. United States*, 38 Fed. Cl. 739 (1997) ....9

*Day & Zimmerman Services v. United States*, 38 Fed. Cl. 591 (1997) ....18, 19

*Information Tech. & Applications Corp. v. United States*, 316 F.3d 1312 (Fed. Cir. 2003) ....4

*Motorola, Inc. v. United States*, 729 F.2d 765 (Fed. Cir. 1984) ....6, 8

*Synetics, Inc. v. United States*, 45 Fed. Cl. 1 (1999) ....19

*TVI Energy Corp. v. Blane*, 806 F.2d 1057 (Fed. Cir. 1986) ....7, 8

*WorldTravelService v. United States*, 49 Fed. Cl. 431 (2002) ....12

## GENERAL ACCOUNTABILITY OFFICE CASES

*Aircraft Porous Media, Inc.*, B-241665.3 ....8

*Am. Native Med. Transport, L.L.C.*, B-276873 ....15

*Forest Regeneration Servs.* LLC, B-290998 ....6

*Gen. Servs. Eng'g, Inc.*, B-245458 ....16

*Herbert Cooper Co.*, 38 Comp. Gen. 276 (1958) ....6, 7

*SGT, Inc.*, B-294722.4 ....13

## FEDERAL STATUTES

28 U.S.C. § 1498 ....7

## FEDERAL REGULATIONS

FAR 27.104(d) ....7

FAR 2.101 ....10

FAR 12.101(a) ....11

FAR Part 12 ....11

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

**Electronically Filed on August 25, 2006**
**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | |
|---|---|
| INTERSPIRO, INC., Plaintiff, and SCOTT TECHNOLOGIES, INC., d/b/a SCOTT HEALTH & SAFETY, Plaintiff, v. UNITED STATES, Defendant, and MINE SAFETY APPLIANCES CO., Defendant-Intervenor. | No. 06-425C; No. 06-443C<br>Judge Firestone<br>**CONSOLIDATED** |

**DEFENDANT-INTERVENOR MINE SAFETY APPLIANCES COMPANY'S REPLY TO INTERSPIRO'S RESPONSE TO MSA'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

The thrust of almost all of Interspiro's contentions is that Interspiro's technology was [redacted] than that of other offerors', because supposedly Interspiro [redacted] had developed a so-called "Three-Mode SCBA." Interspiro ignores a fundamental principle of procurement law: what is evaluated is the proposal, not what an offeror contends after the fact are the true capabilities of its product or designs. Moreover, Interspiro in effect contends that a single proposal element – [redacted] of an offeror's technology – should have weighed more heavily in the evaluation than any other.

Interspiro's argument simply cannot be reconciled with any reasonable reading of the record. As a factual matter, Interspiro has not demonstrated that its technology was [redacted]

[redacted] than MSA's, and, even if it were, the RFP evaluation criteria did not allow the Air Force to weigh this one element of an offeror's proposal so heavily. Interspiro would have the Air Force ignore all the advantages in the designs proposed by MSA (and other offerors), all the [redacted] MSA received, and all positive aspects of MSA's (and other offerors') program production plans. That is not the evaluation scheme set forth in the RFP, and it would in fact have been unlawful if the Air Force had conducted the evaluation in that fashion.

## I. There Were No "Fatal Flaws" in the Evaluation

### A. There Were No "Fatal Flaws" in the Evaluation of Interspiro's Proposal

#### 1. Under the RFP, the Air Force Could Not Have Subjected Interspiro's [redacted] to Field Evaluation

First, Interspiro contends that the Air Force erred by failing to field test its [redacted], arguing that, even though its [redacted] was only [redacted], the RFP allowed the Air Force to field test [redacted]. Interspiro Reply at 4-7. Interspiro's arguments are wrong, but also are beside the point.

As MSA explained in its Motion, the Air Force field tested the very unit that Interspiro proffered for field testing: [redacted]. Also, Interspiro's [redacted] did not qualify for field testing. Interspiro stated in its proposal:

[redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

AR 327. To qualify for field testing, the unit had to be the offeror's "existing commercial SCBA," and the unit had to have been certified by NIOSH and NFPA.[1] AR 28. Proof of NIOSH and NFPA certifications was required to be submitted by Subfactor 1 in order for the unit to be field tested. AR 28. Interspiro's [redacted] did not qualify for field testing because Interspiro did not submit any of the required NIOSH or NFPA certifications for that [redacted], and because it was not Interspiro's commercial unit. A list of the certifications and other data is provided in Interspiro's proposal, and there is no mention of a certification for [redacted]. AR 246-326.[2]

Interspiro also contends that the RFP required the unit submitted for field testing to be a so-called "Three-Mode SCBA." Interspiro Reply at 6. It cites RFP language stating the "two SCBA units shall be the same model and shall represent the base unit that the offeror intends to provide on the contract effort should it receive the contract award." *Id.*; AR 28. However, the Air Force clarified in response to a vendor question that that language did not require submission of APRs and PAPRs for field testing, stating:

> Ref: RFP, Page 24 of 33, paragraph a under Subfactor Two

---

1 Interspiro argues that the RFP did not require that in order to be field tested, the [redacted] had to be NIOSH certified. Interspiro Reply at 8-9. Interspiro erroneously relies upon a question and answer about PD Section 3.4.7.1, but that Section only applies to the unit to be developed under the contract, not the units for field testing. The RFP stated that the only sections of the PD that applied to the units submitted for field testing were Sections 3.4.5 and 3.4.6. AR 28.

2 Interspiro asserts numerous arguments attempting to show that it was not a deviation from the RFP to field test its [redacted]. Interspiro Reply at 4-6. Those arguments are wrong for several reasons. First, neither the "Field Evaluation Exercise" nor the Questionnaire modified the RFP eligibility requirements for field tests. Second, the "Field Evaluation Exercise" procedures in Appendix A of the Purchase Description ("PD") that Interspiro cites set forth evaluation procedures for the first units developed under the contract, in addition to procedures for the procurement. AR 72; AR 19. The reference to a [redacted] in that appendix distinguishes the initially developed units from production units. Finally, the same explanation applies to the Field Assessment Questionnaire, which was to be used to document the results of the Field Evaluation Exercise during contract performance as well as during the procurement. AR 130.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

> The two SCBA that are to be supplied with our proposal are to be our existing commercial units. But this paragraph requires that we ensure that these units comply with paragraph 3.4.5 and 3.4.6 of the purchase description. 3.4.6 requires that the unit be NIOSH certified. Para 3.4.6 implies that these units include the NBC APR modes. *Does the government require that these units include the APR and PAPR modes?* Or is the government's intent that the 2 SCBA must be NIOSH CBRN certified? *Response: 2 SCBA NIOSH CBRN certified; APR and PAPR modes are not required.*

AR 2409 (emphasis added). Moreover, as MSA explained, and Interspiro has not disputed, if there had been a requirement to submit a unit for field testing that met all of the ultimate PD requirements for the unit developed under the contract, Interspiro would have failed this requirement. Interspiro acknowledged in its proposal that its base unit [redacted]. It describes [redacted] AR 328.

Finally, Interspiro has not demonstrated prejudice. All offerors' base units were field tested against the same requirements. Interspiro concedes that both MSA and Interspiro were given [redacted]. Interspiro Reply at 5 n.2. After testing against the requirements applicable to the base units, MSA's unit was found to be outstanding in many respects.[3] Even if the Air Force had tested [redacted], Interspiro has made no showing that this would have increased Interspiro's chances for award. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). In sum, the Air Force followed the RFP when it did not subject Interspiro's [redacted] to field testing.

---

3 [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

### 2. The Air Force Did Not Ignore the RFP's Terms Regarding Commercial Availability and Did Not Fail to Consider the State of Interspiro's Technology

Interspiro next contends that the Air Force ignored the RFP when it concluded that Interspiro "did not have an [redacted]," and ignored the alleged "fact" that Interspiro had already developed, manufactured, or marketed "three-mode SCBAs." Interspiro Reply at 7-10, 14-17. Interspiro misses the central point made by the Government and by MSA: there was no RFP requirement for an offeror to have developed or submitted an "existing commercial three-mode SCBA." MSA Mot. at 12-15. Thus, it is irrelevant whether or not the Air Force found Interspiro to have developed such a unit previously and irrelevant whether or not Interspiro submitted one for field testing.

MSA showed in its Motion that Interspiro never claimed in its proposal to have a [redacted] MSA Mot. at 16. Interspiro expends many words attempting to refute this showing, largely by arguing that the [redacted] and [redacted] in its proposal did not mean that [redacted]. Interspiro Reply at 7-10. These arguments are wrong,[4] and they miss the central point that there was no such requirement in the first place.

Interspiro's contention that the Air Force's market research showed that Interspiro has already "developed, manufactured and marketed Three-Mode SCBAs" is irrelevant for the same reasons. Interspiro Reply at 14-17. If Interspiro had believed that such information was relevant

---

[4] For instance, MSA explained, and Interspiro has not rebutted, that Interspiro told the Air Force in its proposal that its [redacted]. AR 367-69. Moreover, Interspiro told the Air Force in its proposal that it deemed its [redacted] AR 363 (emphasis added). These statements cannot be reconciled with Interspiro's claim in this litigation that those units are commercially available.

to the evaluation, Interspiro would have [redacted] that it has "developed, manufactured or marketed a Three-Mode SCBA." No such statement was made [redacted]; all the "evidence" that Interspiro cites is extraneous [redacted]. If Interspiro expected the Air Force to consider such information, it should have [redacted]. *See Forest Regeneration Servs.* LLC, B-290998, Oct. 30, 2002, 2002 CPD ¶ 187. These arguments must be rejected.

### 3. The Air Force was Not Required to Speculate About Possible Infringement of a "Pending Patent"

Finally, Interspiro reiterates its contention that the Air Force erred by failing to consider whether or not other offerors might infringe Interspiro's "patents pending." Interspiro Reply at 10-14. MSA explained previously that controlling authority holds that such patent issues should not interfere with the Government's evaluation and award of a contract. MSA Mot. at 17-20.

Interspiro attempts without success to distinguish the cases MSA cited. Interspiro argues that *Motorola, Inc. v. United States*, 729 F.2d 765 (Fed. Cir. 1984), "directs that potential royalty payments may only be ignored where there is an indemnification clause." Interspiro Reply at 11. *Motorola* does not so hold. The language Interspiro quotes is not from the Court in *Motorola*, however, bur rather is that of the Comptroller General in *Herbert Cooper Co.*, 38 Comp. Gen. 276, 277 (1958). Interspiro's contention is that, in a solicitation and award, governmental authorization and consent to infringe a patent can only be given where the RFP includes an indemnification provision and potential royalty payments are reflected in the bid evaluation. *Herbert Cooper*, however, stands for just the opposite proposition, noting that the agency should not take possible patent infringements into account when awarding contracts because it would "impose an impossible burden upon government procurement officials to determine the



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

applicability and validity of any patents affecting any articles desired." *Herbert Cooper*, 38 Comp. Gen. at 278.

The *Motorola* court cited *Herbert Cooper* for this very principal. While in *Herbert Cooper* the RFP at issue happened to include an indemnification clause, that fact was not necessary to the holding.

Interspiro also argues that an indemnification provision "is required if the government intends to authorize patent infringement." Interspiro Reply at 12. Interspiro fails to cite any binding authority, but only cites FAR 27.104(d), which is not on point. FAR 27.104(d) merely states that the Government should "generally" be indemnified against infringement under certain circumstances. It does not even purport to state that an indemnification clause is required if the government intends to authorize, or even foresees the possibility of, patent infringement due to a procurement, as Interspiro contends.

Interspiro next contends that 28 U.S.C. § 1498 does not even apply because "the RFP does not contain the 'authorization and consent' required for its application." Interspiro Reply at 11. Interspiro fails to distinguish *TVI Energy Corp. v. Blane*, 806 F.2d 1057 (Fed. Cir. 1986), which held that "government authorization can be implied." *Id.* at 1060. The *TVI* court specifically noted:

> To limit the scope of section 1498 only to instances where the Government requires by specification that a supplier infringe another's patent would defeat the Congressional intent to allow the Government to procure whatever it wished regardless of possible patent infringement. The coverage of section 1498 should be broad so as not to limit the Government's freedom in procurement by considerations of private patent infringement.

*Id.* Accordingly, Interspiro's argument here against implied authorization and consent are without merit.[5]

Finally, Interspiro takes issue with both the Air Force's and MSA's position that the patent infringement issue was rightly not given consideration because it is speculative. Interspiro cites to *Aircraft Porous Media, Inc.*, B-241665.3, Apr. 8, 1991, 91-1 CPD ¶ 356, for the proposition that the Air Force should have considered whether MSA could perform without infringing Interspiro's patents because, unlike the agency in *Aircraft*, it had notice of these potential infringement issues.

Interspiro again misreads the clear language of a cited decision. In *Aircraft* the GAO ruled that "[a] *potential* for patent infringement does not provide a basis for objection to award" (emphasis added). Thus, absent a definitive patent infringement, the GAO found there to be no basis for the protester's objection. This is precisely the situation here. As MSA noted in its Motion (at 23), the Government must award contracts "irrespective of the possibility or inevitability of infringing the patents of other bidders or non-bidders." *Motorola*, 729 F.2d at 771. Interspiro's "patents pending" argument must be rejected.

---

[5] Interspiro in its Reply (at 12, n.7), also notes that the potential value of the infringement in *TVI* was "*de minimis*," whereas the potential infringement by MSA involves a contract evaluated at over $35 million. However, the *TVI* court's referenced characterization of the infringement as "minimal at best" was not relevant to its decision whether the infringing contractor was immune under section 1498 (the "sole issue before [the court]"), but rather was a comment regarding the likelihood of success on a potential claim against the government for infringement at that point. *Id.* at 1059-61.

## B. There Were no "Fatal Flaws" in the Evaluation of MSA's Proposal[6]

Next, Interspiro argues that the Air Force misevaluated MSA's proposal, but its arguments merely re-hash previously refuted contentions.

### 1. MSA Satisfied All the RFP Requirements for the Unit Submitted for Field Testing

Interspiro contends that MSA failed to satisfy requirements set forth on the Field Evaluation form, because the evaluators wrote [redacted]. Interspiro Reply at 21-23. This argument is a derivation of Interspiro's already-refuted argument that offerors were required to submit so-called "Three-Mode SCBAs" for field testing.

As explained above, the RFP required that the units to be field tested be the offeror's existing commercial SCBAs that had certain minimum NIOSH and NFPA certifications, and did *not* require APRs or PAPRs to be field tested. *See* Sections IA, B above. The Field Evaluation forms, however, were to be used not only for field evaluations of the base units during the procurement, but also during the evaluation of the initial production units developed under the contract after award. AR 19, 72-76. Thus, the forms included space for evaluation of aspects of the units that would not be present on the base unit, but would be present on the production units. AR 130-33.

---

6 Interspiro repeats its contentions that the self-identified risks in MSA's proposal should have led the Air Force to assess something other than a "low" risk rating, but it has not rebutted MSA's demonstration that the RFP required offerors to identify risks, that Interspiro also identified numerous risks in its design approach, and that the purpose of offeror risk assessments is for an agency to ensure that an offeror understands the challenges of the project. *See Aero Corp., S.A. v. United States*, 38 Fed. Cl. 739, 760 (1997). Thus, MSA's risk matrix demonstrates its thorough understanding of the project and amply justifies the Air Force's "low" risk assessment. AR 1042.

The portions of the forms for evaluation of MSA's base unit that are [redacted] do not represent [redacted], but rather simply represent features that were not going to be assessed during the procurement. AR 2204-24. As Interspiro concedes, the same features were [redacted] on the forms used to evaluate Interspiro's base unit. Interspiro Reply at 22-23; AR 2137-55. The forms confirm that exactly the same standards were used to evaluate both offeror's units. There was no evaluation "flaw."

**2. MSA Satisfied the RFP Requirement Regarding Commercial Availability of the SCBA Unit Submitted for Field Testing; Interspiro Continues to Misstate the RFP Commercial Item Provisions**

Interspiro contends that MSA failed to satisfy a requirement to submit a "commercial item," Interspiro Reply at 23-26, but Interspiro badly misstates the record and the Government and MSA motions.

Interspiro contends that MSA's SCBA does not qualify as "commercial item" within the meaning of FAR 2.101, because the unit submitted for field testing must have been a [redacted] Interspiro Reply at 24. There was no such requirement, as has been explained. Interspiro also argues that the SCBA that MSA will develop under the contract will not [redacted] and therefore does not qualify as a commercial item. Interspiro Reply at 24. Again, there was no requirement that MSA's base unit be [redacted] In any event, MSA stated in its proposal that it will [redacted]. AR 569-70.

Finally, Interspiro contends that the modifications to be made to MSA's SCBA are [redacted] so they cannot qualify as a "commercial item." Interspiro Reply at 25. Interspiro misstates the "commercial item" rules. The "commercial item" regulations provide that an

agency determines before the procurement whether a "commercial item" could meet the agency's requirements. FAR 12.101(a). If so, the designation of the procurement as one for "commercial items" affects the procedures applicable to the procurement and the clauses that may be incorporated into the contract. *See generally* FAR Part 12. Such a designation does not alter the RFP evaluation criteria; the agency must adhere to the RFP when evaluating proposals. The requirement in the RFP was that MSA submit its existing commercial SCBA, and a design approach to meet the end product requirements, and MSA undisputedly met those requirements.

Interspiro's suggestion that the modifications to be made to MSA's unit were other than [redacted] is without support. Interspiro cites nothing in the proposals to support its contention that Interspiro was [redacted] in [redacted] than MSA. The record, indeed, suggests the reverse:

[redacted]

In sum, Interspiro's "commercial item" arguments are wholly without merit and should be rejected.

## II. The Record Shows That The Air Force Took Reasonable Corrective Action

Interspiro again contends that the agency failed to take reasonable corrective action. Interspiro Reply at 27. Interspiro puts forth nothing to challenge MSA's earlier arguments on



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

this point. MSA Mot. at 42. Interspiro argues that the new SSDD does not explain or address why the agency chose [redacted] MSA's proposal, Interspiro Reply at 28, but this is flatly inaccurate. The revised SSDD elaborates on [redacted] explaining the life-saving purpose of this procurement. AR 1888-89. The agency's final award decision must be upheld according to its clearly articulated rational basis. *See, e.g., WorldTravelService v. United States*, 49 Fed. Cl. 431, 442 (2002). Interspiro's apparent argument that the Air Force's earlier decision to take corrective action somehow creates an additional criteria for the Court to apply is unsupported and erroneous. The Court need look no further than whether the award decision has a rational basis.

## III. The Evaluation and Scoring of Proposals Was Rational and Consistent with the RFP's Terms

### A. The Evaluation of Subfactor 3 Was Reasonable, Consistent with the RFP, and Is Supported by the Record

Interspiro challenges [redacted] features[7] cited in support of MSA's blue rating under Subfactor 3, yet its arguments remain devoid of merit. Further, Interspiro only responds to its own mischaracterized representations of the Air Force's and MSA's Motions and the underlying evaluation record.

#### 1. Only MSA's Proposed Design Has the Capability for [redacted]

Interspiro cannot contest the fact that MSA's strength for the [redacted] AR

---

[7] In its original Motion, Interspiro also contended that even though both offerors proposed systems that [redacted], "MSA, but not Interspiro, received credit for this factor." Interspiro Mot. at 29. As Interspiro has provided no response to the fact that MSA and Interspiro were evaluated equally for this feature, Gov't Mot. at 31-32; MSA Mot. at 28-29, no further reply on this issue is required.

1492, was appropriately assigned based on MSA's [redacted] features that exceeded the requirements. Interspiro therefore resorts to rewriting its own version of this strength in order to argue either (1) that it is entitled to an identical one or (2) that MSA's strength was improperly assigned.

MSA's strength as identified by the evaluators is based on [redacted]. First, MSA's design [redacted]. Second, MSA's design [redacted]. And, third, [redacted]. Unless Interspiro's proposal identified all [redacted] components, which it does not, it is not entitled to an identical strength. *SGT, Inc.*, B-294722.4, July 28, 2005, 2005 CPD ¶ 151. Interspiro's proposal does not describe a single one of these elements, let alone all of them.

With regard to [redacted], Interspiro continues to rely on the *post-hoc* claims from Mr. Brookman regarding the capabilities of Interspiro's proposed design.[8] This declaration cannot serve to supplement the contents of Interspiro's proposal months after the evaluation. Not only is Interspiro unable to claim that it proposed this feature, but it concedes that MSA's proposal [redacted]. Interspiro Mot. at 32.

Finally, in responding to Interspiro's claims that it was entitled to the same strength as MSA, both the Air Force and MSA referred to Interspiro's own proposal, which states [redacted]

---

[8] While Interspiro claims that it described this ability in its proposal at AR 340, nothing on the referenced page refers to [redacted] Interspiro Reply at 31 n. 24.

[redacted]." AR 365-66; Gov't Mot. at 31; MSA Mot. at 27-28. After being confronted with [redacted], Interspiro now tries to downplay the effect of the statement. Interspiro Reply at 34 (claiming that this statement [redacted] Yet, the statement speaks for itself, and, further, nothing in Interspiro's proposal refers to [redacted].[9] This safety feature is [redacted] to MSA's proposal.

2. **The Evaluation of [redacted] was Reasonable, Consistent with the RFP, and Supported by the Record**

Interspiro persists in its challenge to the evaluators' citation of the [redacted] of MSA's [redacted] as a basis for its blue rating under Subfactor 3. Interspiro Reply at 36. Yet, this is not an area where Interspiro is alleging a noncompliance or unequal treatment. Rather, even though MSA plainly stated in its proposal that its [redacted] and that the [redacted] Interspiro claims this is not enough. AR 649. Despite this unambiguous proposal statement, Interspiro contends nonetheless that it was improper for the Air Force to accept MSA's proposed [redacted] "uncritically." Interspiro Mot. at 29. But, as the Air Force explains, it "had no basis to question the [redacted]

---

9 Since it cannot claim that it proposed the ability to [redacted], Interspiro instead criticizes MSA's proposal for providing insufficient detail regarding this capability. Interspiro Reply at 33. MSA not only described how its [redacted] AR 565, but it also described how the [redacted] AR 648-49.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted] as set forth in its proposal." Beebe Decl. ¶ 3. "[A]n agency need not conduct such an independent investigation where it can find the proposal reasonably commits the offeror to meet the RFP requirements; the issue of whether the [awardee] actually has the capability to perform the contract as promised in its proposal is a matter of responsibility." *Am. Native Med. Transport, L.L.C.*, B-276873, Aug. 5, 1997, 97-2 CPD ¶ 73.

Not only was it wholly appropriate for the Air Force to accept MSA's proposed [redacted], but, the Air Force went one step further to [redacted]. The Air Force [redacted], and MSA's unit [redacted]. Beebe Decl. ¶ 2. In response, Interspiro now contends that because the units [redacted] by the Air Force were the commercial [redacted] units, they should not be considered. Interspiro Reply at 36. Nonetheless, for the [redacted] portion of its proposed design, MSA proposed the same unit that [redacted] by the Air Force as its [redacted] unit (with only [redacted]) and the same [redacted]. Beebe Decl. ¶ 2; AR 935; AR 1014. Therefore, the Air Force utilized an adequate basis for verification of [redacted].[10]

**3. The Evaluation of MSA's [redacted] Was Reasonable, Consistent with the RFP, and Supported by the Record[11]**

Interspiro argues that MSA's proposed [redacted] unit failed to comply with the RFP, and that in order to bring it into compliance with the requirements, [redacted] must be added

---

[10] Further, as the offerors' proposed [redacted] under Subfactor 3 were the product of further design and development, they are likely [redacted] than their existing commercial [redacted]. Interspiro itself actually confirms this in its proposal [redacted]

[11] This section also responds to the contention that MSA failed to meet a requirement for a [redacted]. Interspiro Reply at 26.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

to MSA's unit. Interspiro Reply at 34-35. It is undisputed that irrespective of how MSA described its [redacted], it nonetheless stated clearly and unconditionally that it [redacted] AR 518. Also, MSA took [redacted] requirements. AR 466-67, 517-18. Further, Interspiro forgets that neither offeror is proposing an existing unit. *See, e.g.*, AR 364 (Interspiro's references to the various aspects of its proposed redesign). The [redacted] is a component of the design for the "next generation" SCBA unit. AR 38. Particularly as part of such design or development process, the Air Force is reasonably entitled to accept an offeror's promises to comply with the requirements. *See, e.g., Gen. Servs. Eng'g, Inc.*, B-245458, Jan 9. 1992, 92-1 CPD ¶ 44.

Interspiro also asks this Court to ignore the fact that, even if Interspiro's challenges to MSA's proposed [redacted] and ability to comply with the RFP requirements are true (which they are not), this would have no impact on MSA's [redacted]. Interspiro Reply at 35. In other words, this Court would have to ignore Interspiro's inability to establish prejudice. The Air Force and MSA confirmed several important [redacted] that, contrary to Interspiro's allegations, are not "irrelevant."[12] Interspiro Reply at 35.

- None of Interspiro's arguments, even if true, could make up the huge [redacted] between the offerors' [redacted]. AR 357-58, 365, 649, 2171; MSA Mot. at 31.
- Interspiro's [redacted] is demonstrably erroneous and based on its own speculative estimation. For example, for calculating [redacted] Interspiro only includes [redacted].

12 Interspiro has only selectively and briefly responded to these various [redacted] arguments in one footnote in its Reply. Interspiro Reply at 35 n. 29.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AR 365 (emphasis added). Accordingly, Interspiro has [redacted].[13] AR 365.

Finally, Interspiro has completely failed to respond to MSA's observation that Interspiro itself admitted that it must make [redacted] to [redacted]. MSA Mot. at 32-33. Interspiro states in its proposal that its proposed design is not yet complete, but it [redacted] AR 364 (emphasis added). Accordingly, Interspiro cannot eliminate or even close the [redacted].

### B. The Evaluation of the Program Production Plan Subfactor Was Reasonable, Consistent with the RFP, and Supported by the Record

Interspiro challenges its [redacted] under the program production plan subfactor based on the Air Force's conclusion that Interspiro had not eliminated [redacted] of responding to "true wartime surge requirements." AR 1487-88. Only Interspiro is at fault for this rating. It identified [redacted], AR 366, and the Air Force [redacted] stating that this potential for delay in production was [redacted] AR 191. While Interspiro responded [redacted], the Air Force informed it that it had [redacted] been [redacted] when it invited Interspiro to submit a FPR. AR 160-61. Even though the Air Force explicitly informed Interspiro that its [redacted] was insufficient to [redacted] handling surge requirements, Interspiro accepted its assigned [redacted] and informed the Air Force that it [redacted] AR 158. Interspiro should not be heard now to challenge [redacted] that it

---

13 [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

willingly accepted.[14] [redacted], in contrast, were appropriately reserved for offerors [redacted].[15] MSA Mot. at 37; AR 1034, 1039.

**C. The Evaluation of Interspiro's Past Performance Was Reasonable, Consistent with the RFP, and Supported by the Record.**

Interspiro challenges its past performance evaluation, raising an entirely new argument in this litigation that the agency "failed to assess the relevancy of Interspiro's contracts in the aggregate." Interspiro Reply at 39. This argument is untimely. Interspiro never asserted this argument in its Complaint, Amended Complaint, or Motion for Judgment. Now, in its final brief, Interspiro attempts to introduce this new claim.

Interspiro did not raise this argument earlier because it is wrong. The RFP does not require the agency to evaluate the relevancy of an offeror's contracts in the aggregate, but only states that the agency *may* do so if, in its discretion, the agency deems it appropriate:

> The Government is not bound by the offeror's opinion of relevancy [of the offeror's present/past performance]. The Government *may* consider an offeror's contracts in the aggregate in determining relevancy should the offeror's present and past performance lend itself to this approach.

AR 34 (emphasis added); *see also Day & Zimmerman Servs. v. United States,* 38 Fed. Cl. 591, 609 (1997). As the RFP clearly states, it was within the Air Force's discretion not to examine

---

14 [redacted].

15 While Interspiro contends such capability is unsupported, [redacted] *See, e.g.,* AR [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

Interspiro's contracts in the aggregate when making the relevancy determinations. Interspiro disagrees, but according to the RFP, the agency is "not bound" by Interspiro's opinion. AR 34.

Interspiro contends in particular that the Air Force ignored its performance [redacted], arguing that the agency wrongly considered this contract as a stand-alone effort and determined the contract to be [redacted] because it [redacted]" Interspiro Reply at 39. Contrary to Interspiro's contention, the record shows the Air Force found [redacted] to be [redacted] after a full and careful evaluation that took into account more than just [redacted]. *See* AR 1521. The Air Force found that this contract constituted a [redacted] and did [redacted] *Id.* Not only did this contract [redacted] feature referenced in the relevancy definitions," but it also [redacted] of what this solicitation requires per the relevancy definitions in the RFP," as the record indicates. *Id.* Unlike what Interspiro argues, the agency did not need to evaluate this contract by combining it with the other cited contracts because the RFP uses the permissive language "may." *See* Interspiro Reply at 39; *see also* AR 34, 1521.

Furthermore, there is no basis for Interspiro to contend that by aggregating this contract with the others, the relevancy rating would have been different: as a matter of logic, evaluating a [redacted] contract in combination with others does not change the [redacted] into [redacted] contract. The record shows that the Air Force gave thorough consideration to Interspiro's past contracts in determining the relevancy ratings. Interspiro simply disagrees with the outcome, but mere disagreement does not sustain a protest. *See Synetics, Inc. v. United States*, 45 Fed. Cl. 1, 10 (1999) ("[m]ere disagreement with the . . . evaluation does not itself render the evaluation unreasonable").



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Interspiro also contends that the Air Force failed to gather information from other sources known to the Government about its past performance as the "incumbent contractor." Again, there was no requirement that the Air Force do so, as the RFP stated only that the Air Force "may" gather information from other sources.[16] AR 34. Interspiro's unsupported arguments show no errors on the part of the Air Force in the evaluation of its past performance, and should be dismissed.

## IV. Interspiro is Not Entitled to Equitable Relief

Finally, Interspiro has not refuted either MSA's or the Government's demonstration that it is not entitled to equitable relief. As MSA explained, Interspiro must still prove entitlement to injunctive relief even if it could prevail on the merits (which it cannot do). Because Interspiro has not carried its burden, the Court should deny Interspiro's request for equitable relief.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenor MSA respectfully requests that the Court deny the Motion for Judgment filed by Interspiro and enter judgment or dismissal with prejudice.

[16] Interspiro contends that the Air Force failed to evaluate [redacted] Interspiro Reply at 38, 40. Yet Interspiro has not rebutted MSA's demonstration that Interspiro conceded in its proposal that [redacted] falls outside the scope of this evaluation factor. AR 380.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

Respectfully Submitted,

Of Counsel:
Brian T. McLaughlin

s/ Thomas P. Humphrey, Esq.
Counsel of Record
Elizabeth W. Newsom, Esq.
Amy E. Laderberg, Esq.
Rebecca K. Lee, Esq.
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel. (202) 624-2500
Fax (202) 628-5116

Counsel for Mine Safety Appliances Company

Dated: August 25, 2006



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**CERTIFICATE OF FILING**

I hereby certify that on the 25th day of August, 2006, the foregoing Defendant-Intervenor Mine Safety Appliances Company's Reply to Interspiro's Response to MSA's Cross Motion for Judgment on the Administrative Record was filed electronically. This filing will be available to all parties by operation of the Court's electronic filing system.

Courtesy service was also provided at the following addresses:

Dorie Finnerman, Esq.
Trial Attorney
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

Rand L. Allen, Esq.
Daniel P. Graham, Esq.
Wiley, Rein & Fielding LLP
1776 K Street, N.W.
Washington, D.C. 20006

David R. Hazelton, Esq.
Latham & Watkins
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004

s/ Thomas P. Humphrey