AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

**Electronically Filed on August 7, 2006**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | |
|---|---|
| INTERSPIRO, INC.,<br>Plaintiff,<br>and<br>SCOTT TECHNOLOGIES, INC., d/b/a SCOTT HEALTH & SAFETY,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant,<br>and<br>MINE SAFETY APPLIANCES CO.,<br>Defendant-Intervenor. | No. 06-425C; No. 06-443C<br>Judge Firestone<br>**CONSOLIDATED** |

**DEFENDANT-INTERVENOR MINE SAFETY APPLIANCES COMPANY'S OPPOSITION TO INTERSPIRO'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND <u>CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD</u>**

Of Counsel:
Brian T. McLaughlin

Thomas P. Humphrey, Esq.
Counsel of Record
Elizabeth W. Newsom, Esq.
Amy E. Laderberg, Esq.
Rebecca K. Lee, Esq.
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel. (202) 624-2500
Fax (202) 628-5116

Counsel for Mine Safety Appliances Company

Dated: August 7, 2006

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ iii

QUESTIONS PRESENTED ........ 2

COUNTER-STATEMENT OF FACTS ........ 3

A. The Air Force's Requirement for the Next Generation Self Contained Breathing Apparatus ........ 3

B. The RFP Evaluation Process ........ 5

C. Purchase Description and NIOSH Standards ........ 7

D. Submission of Proposals, Evaluation and Award Decision ........ 8

ARGUMENT ........ 11

I. The Air Force Considered All Facts Relevant to the Evaluation; Interspiro Misreads the RFP Requirements ........ 11

A. The RFP did not Require Offerors to Have Developed a "Three-Mode SCBA" and Submitted Such a Unit for Field Testing ........ 12

B. Interspiro Misinterprets the Commercial Item Provisions ........ 15

C. Interspiro's "Patents Pending" Are Irrelevant ........ 17

D. The Low Risk Rating of MSA's Proposal was Rational and Consistent with the RFP ........ 21

II. The Evaluation and Scoring of Proposals Was Rational and Consistent with the RFP's Terms ........ 23

A. The Evaluation of the Design Approach Subfactor was Reasonable, Consistent with the RFP, and Is Supported by the Record ........ 23

1. [redacted] MSA's Proposed Design has the [redacted] ........ 24

2. MSA's Design [redacted] ........ 28

3. The Evaluation of [redacted] Was Reasonable, Consistent with the RFP and Supported by the Record ........ 29

4. The Evaluation of [redacted] was Reasonable, Consistent with the RFP, and Supported by the Record ........ 30



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

B. The Evaluation of the [redacted] Subfactor was Reasonable, Consistent with the RFP, and Supported by the Record .......... 34

C. The Air Force Faithfully Applied the RFP Requirements in Performing the Evaluation of [redacted] Past Performance .......... 38

III. The SSDD Articulated a Rational Cost-Technical Tradeoff .......... 41

IV. Interspiro Is Not Entitled to Injunctive Relief .......... 44

CONCLUSION .......... 46



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES


*Aero Corp., S.A. v. United States*, 38 Fed. Cl. 739 (1997) ........ 22

*Bannum, Inc. v. United States*, 60 Fed. Cl. 718 (2004) ........ 16

*Computer Sciences Corp. v. United States*, 51 Fed. Cl. 297 (2002) ........ 43

*E.W. Bliss Co. v. United States*, 77 F.3d 445 (Fed. Cir. 1996) ........ 24

*Gentex Corp. v. United States*, 58 Fed. Cl. 634 (2003) ........ 45

*Gulf Group Inc. v. United States*, 61 Fed. Cl. 338 (2004) ........ 25

*Industrial Prop. Management, Inc. v. United States*, 59 Fed. Cl. 318 (2004) ........ 23

*Mantech Telecomm. and Information System Corp. v. United States*, 49 Fed. Cl. 57 (2001) ........ 42

*Motorola, Inc. v. United States*, 729 F.2d 765 (Fed. Cir. 1984) ........ 18

*Overstreet Electric Co., Inc. v. United States*, 59 Fed. Cl. 99 (2003) ........ 43

*PGBA, LLC v. United States*, 389 F.3d 1219 (Fed. Cir. 2004) ........ 44, 45

*TVI Energy Corp. v. Blane*, 806 F.2d 1057 (Fed. Cir. 1986) ........ 18, 19

*Trojan, Inc. v. Shat-R-Shield*, 885 F.2d 854 (Fed. Cir. 1989) ........ 18

*W.L. Gore & Associates, Inc. v. Garlock*, 842 F.2d 1275 (Fed. Cir. 1988) ........ 18

*World Travel Serv. v. United States*, 49 Fed. Cl. 431 (2001) ........ 43


## GOVERNMENT ACCOUNTABILITY OFFICE CASES


*Aircraft Porous Media, Inc.*, B-241665.3 ........ 18

*Forest Regeneration Servs. LLC*, B-290998 ........ 25

*NLB Corp.*, B-286846 ........ 16

*Robertson Leasing Corp.*, B-279756 ........ 29

## FEDERAL STATUTES

28 U.S.C. § 1491(b)(3) ........ 45

28 U.S.C. § 1498(a) ........ 17, 18

## FEDERAL REGULATIONS

29 C.F.R. § 1910.134(g)(4)(iii) ........ 27

FAR 2.101 ........ 16

FAR 15.308 ........ 43



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

**Electronically Filed on August 7, 2006**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | |
|---|---|
| INTERSPIRO, INC., Plaintiff, and SCOTT TECHNOLOGIES, INC., d/b/a SCOTT HEALTH & SAFETY, Plaintiff, v. UNITED STATES, Defendant, and MINE SAFETY APPLIANCES CO., Defendant-Intervenor. | No. 06-425C; No. 06-443C<br>Judge Firestone<br>**CONSOLIDATED** |

**DEFENDANT-INTERVENOR MINE SAFETY APPLIANCES COMPANY'S OPPOSITION TO INTERSPIRO'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND**
**CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1, Defendant-Intervenor Mine Safety Appliances Company ("MSA") respectfully requests that the Court deny Interspiro's Motion for Judgment on the Administrative Record, deny Interspiro's request for injunctive relief, and grant MSA Judgment on the Administrative Record.

MSA's proposal was clearly superior to Interspiro's [redacted], including [redacted]. Interspiro's arguments to the contrary are nothing more than mere

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

disagreement with the Air Force's evaluative judgments. That is, Interspiro seeks to have the Court substitute its judgment for that of the agency, which is not permitted. Also, Interspiro seeks, *sub silentio*, to change the RFP. For example, Interspiro invents a requirement for offerors to have developed what it refers to as a "Three-Mode SCBA," or a "Three-Mode Commercial Item SCBA," therefore, Interspiro argues, its own proposal must have been best. Also, Interspiro would alter the past performance evaluation factor to state that the incumbent (which it claims to be) is entitled to an automatic competitive advantage, therefore its past performance rating should have been [redacted] Both propositions are obvious non-sequiturs.

At bottom, Interspiro's arguments come down to the proposition that, because it was [redacted], Interspiro's proposal must have been the best value – there again, Interspiro seeks to have the Court to substitute its judgment for the agency's ultimate business judgment. Particularly on acquisitions of such critical life or death equipment, however, only the agency may decide [redacted] to obtain better equipment.

None of Interspiro's arguments have merit. MSA's proposal exceeded the RFP requirements, and the award to MSA is amply justified by the record.

## QUESTIONS PRESENTED

1. Did the Air Force ignore any facts that suggest that Interspiro's proposal was superior, or that suggest that MSA's proposal should have been eliminated or downgraded?



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

2. Were the Air Force evaluation and award decision irrational, inconsistent with the RFP, and not supported by the record?

3. Did the Source Selection Decision fail to articulate a rational basis for selecting MSA as the best value proposal?

4. Should this Court grant Interspiro injunctive relief?

## COUNTER-STATEMENT OF FACTS

### A. The Air Force's Requirement for the Next Generation Self Contained Breathing Apparatus

In this procurement, the Air Force sought to fulfill its need for "next generation Self Contained Breathing Apparatus (SCBA)" that, among other things:

> provide[s] respiratory protection in a chemical, biological, radiological, and nuclear (CBRN) environment in 1.) SCBA only mode; 2.) SCBA and Air Purifying Respirator (APR) selectable mode, and 3.) SCBA and Powered Air Purifying Respirator (PAPR) selectable mode.

AR 38. An SCBA, as its name implies, is one type of device used to provide breathable air to persons, typically emergency services responders, who must enter hazardous environments. *See generally* AR 38, 1708.[1] Other types of devices that perform a similar function include an Air Purifying Respirator ("APR") and a Powered Air Purifying Respirator ("PAPR"). The difference between an SCBA, on the one hand, and an APR or PAPR, on the other hand, is the source of the air supply. An SCBA supplies compressed air from a cylinder mounted on the user's back. *See generally* AR 38, 49 (describing cylinders). The obvious limitation of this

---

1 "AR" refers to the Administrative Record filed by the Government.

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

device is that the cylinder holds a limited air supply, and the user must leave the scene before that air supply is exhausted.

APRs and PAPRs supply air from the atmosphere, called "ambient" air, sending it through a filter to clean it for the user. *See* AR 44 (discussing "filtered air capability"). In an APR, the user's breath draws air through the filter and into the facepiece, while in a PAPR, air is pushed through the filter by a battery powered blower. *See* AR 48 (discussing PAPR battery requirements). APRs and PAPRs are not restricted by limited duration air supplies like SCBAs, but they can only operate properly when ambient air contains sufficient oxygen levels and limited contamination. The Air Force sought a "next generation" unit that could operate as an SCBA alone, or as an APR or PAPR, and could operate safely in chemical, biological, radiological, and nuclear ("CBRN") environments in any of these modes. AR 38.

Prior to issuing the RFP, the Air Force conducted "extensive" market research. AR 1709-11 (summarizing market research); AR Tab 13 (Market Research Report). Its market research showed that SCBAs "are readily available in the commercial market," but that commercial units "could not fulfill the Government's need for a one-face mask configuration with dual purpose capabilities . . . both with CBRN protection." AR 1544. The Air Force determined, however, only "minor" modifications would be needed to existing commercial units to satisfy the Air Force requirement. AR 1545.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

### B. The RFP Evaluation Process

The Air Force recognized that the commercially available units were at "various stages of development." AR 1545. To maximize competition, the RFP implemented a multi-staged evaluation process. Offerors were to submit their *existing* commercially available SCBAs, called "base units," for field test evaluation. AR 28 (RFP Subfactor 2 part a). Also, offerors were to submit a narrative explaining their approach for modifying the base units to meet the Air Force's ultimate requirements. AR 28 (RFP Subfactor 3).

The RFP set forth fewer requirements for the base unit than for the end product unit that was to be designed and delivered under the contract. The requirements for the base unit were minimal: they were required to be the offeror's "existing commercial SCBA units," and the offeror was required to ensure that they had been certified in accordance with certain minimum industry standards. AR 28 (citing specifically ¶¶ 3.4.5 and 3.4.6 of the Purchase Description); AR 47 (¶¶ 3.4.5, 3.4.6). The unit to be developed and delivered under the contract, however, was required to meet all of the requirements of the RFP's Purchase Description ("PD"). AR 47. The PD contained detailed specifications for the unit's design, operation, wearability and other characteristics. AR 43. There was no requirement that the end product to be delivered under the contract be available commercially, either at the time proposals were submitted or even at the time of award.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

Significantly, the Air Force noted in the RFP that it would use formal source selection procedures for a best value procurement. It notified offerors that the Air Force may result in an award to a higher rated, higher priced offeror, stating:

> This is a best value source selection conducted in accordance with Air Force Federal Acquisition Regulation Supplement (AFFARS) 5315.3 and MP5315.3, Source Selection, as supplemented by AFMCFARS. Award will be made to the offeror who is deemed responsible in accordance with the FAR, whose proposal conforms to the solicitation's requirements, and which is judged to represent the best value to the Government. . . . This may result in an award to a higher rated, higher priced offeror.

AR 31.

The RFP established 5 evaluation factors: (I) Mission Capability, (II) Proposal Risk, (III) Present and Past Performance, (IV) Cost/Price and (V) Small Business Participation. AR 32. The Mission Capability factor was further comprised of 4 Subfactors. Under Subfactor One, Certifications and Test Data, the Air Force confirmed that the certifications and test data of the base unit met the RFP minimum requirements. Subfactor Two was the Field Evaluation. This evaluation consisted of the Air Force's field testing of the offeror's base unit. Subfactor Three was SCBA Design Approach. The Air Force evaluated the offeror's approach to modifying its base unit to meet the Air Force's ultimate needs. Under Subfactor Four, Program Production Plan, the Air Force evaluated the offeror's production plan and assessed its viability. AR 32.

Because the proposed prices were to be firm-fixed prices, the RFP provided a straightforward price evaluation. After reviewing the proposed prices for



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

reasonableness and to ensure they were reasonably balanced across the various contract line items ("CLINs"), the Air Force multiplied the proposed unit price for each CLIN by the estimated quantities provided in the RFP, totaled them and compared the totals. AR 35-36.

### C. Purchase Description and NIOSH Standards

The PD incorporated industry standards for the SCBA product that was to be developed. It stated that the end product SCBA "shall meet and/or exceed all minimum requirements specified in the referenced standards." AR 43. The PD referenced, among others, standards developed by the National Fire Protection Association ("NFPA") and by the National Institute for Occupational Safety and Health ("NIOSH"). The Air Force was aware that at least one NIOSH "standard" was still in the process of development and was subject to change: the NIOSH Concept for Chemical, Biological, Radiological, and Nuclear (CBRN) Tight Fitting, Powered Air Purifying Respirator (PAPR) Standard 2004. AR 44. Throughout this procurement and today, this document has been in draft, not final, form and exists only as a "Concept" paper and not as a final standard. See App. B to Scott Mot. (marked "Draft for Discussion").

The Air Force accounted for this and other evolving concepts in its PD, stating that should "these existing standards be replaced by a newer numbered or titled standard," the most current standard shall apply. AR 43. The PD referenced the 2004 version of this NIOSH Concept. AR 44. Before offerors submitted initial proposals, NIOSH revised the draft Concept twice, once on March 30, 2005 and



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

again on June 20, 2005. *See* Exhibits 1 & 2 attached to MSA's Opp. to Scott. Mot. On August 23, 2005, NIOSH announced that it would revise the draft Concept again, to include relaxing some requirements. AR 1027. On September 16, 2005, offerors submitted initial proposals. Subsequently, on November 4, 2005, NIOSH issued the promised revised draft CBRN PAPR Concept relaxing certain "flow rate/breathing rate" standards. *See* App. B to Scott Mot.

**D. Submission of Proposals, Evaluation and Award Decision**

[redacted] offerors submitted proposals by the due date of September 16, 2005, including Interspiro, Scott and MSA. AR 1702. After initial evaluations, [redacted] proposals remained in the competitive range. AR 1702. The Air Force conducted discussions, requesting each offeror to respond to questions, framed as Evaluation Notices ("EN"). *See, e.g.*, AR Tab 2 at 1119-79 (ENs and responses of Scott). Following discussions, on January 12, 2006, offerors were provided the chance to revise their proposals. *See, e.g.,* AR 1117.

After discussions the Air Force conducted a final evaluation. The Air Force rated offerors on the Mission Capability Factor with adjectival ratings, in which a "blue" meant "exceptional," a "green" meant "acceptable," a "yellow" meant "marginal" and a "red" meant "unacceptable." AR 33. The Air Force rated offerors on the Proposal Risk Factor as either "high" risk, "moderate" risk, or "low" risk, with "low" obviously the most favorable rating. *Id.* The Air Force rated the relevance of each example of the offerors' past performance to the present procurement as either "very relevant," "relevant," "semi-relevant" or "not relevant."

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

Based upon its assessment of the quality of the offerors' past performance as a whole, the Air Force assigned overall past performance ratings of either "high," "significant," "satisfactory," "unknown," "little" or "no" confidence. AR 34-35.

After the final evaluation, the results stood as follows:

| | MSA | Interspiro | Scott |
|---|---|---|---|
| **Factors 1 & 2: Mission Capability and Proposal Risk** | | | |
| Subfactor 1: Certifications/Test Data | green/low risk | [redacted] | [redacted] |
| Subfactor 2: Field Evaluation | **blue**/low risk | [redacted] | [redacted] |
| Subfactor 3: Design Approach | **blue**/low risk | [redacted] | [redacted] |
| Subfactor 4: Program Production Plan | green/low risk | [redacted] | [redacted] |
| **Factor 3: Present and Past Performance Confidence Rating** | **high confidence** | [redacted] | [redacted] |
| **Factor 4: Price** | $35,995,298 | [redacted] | [redacted] |
| **Factor 5: Small Business Participation** | [redacted] | [redacted] | [redacted] |

AR 1485-88, 1491-96, 1702-03, 1886. As the table shows, MSA's proposal was clearly superior on [redacted] evaluation factors. In the Mission Capability subfactors, MSA [redacted] receive a "blue" *i.e.* exceptional rating [redacted] proposal element, and MSA received two of them. MSA also received [redacted] ratings on the [redacted] factors, including "low" Proposal Risk ratings across all Mission Capability subfactors and a "high confidence" Present and Past Performance assessment.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

As for price, [redacted]. The prices proposed by MSA [redacted]: $35,995,298 [redacted], respectively. AR 1702-03.

The RFP provided that award would be made to the proposal that the Air Force found represented the best value. AR 31. [redacted] The Source Selection Authority ("SSA") chose MSA, deeming its superior [redacted] price. In explaining his judgment, the SSA recognized the life-saving nature of this technology:

> In my opinion, MSA's technical proposal and the benefits associated with its proposal [redacted] provided [redacted] the other offerors. MSA had the [redacted] in Factor I . . . However, it was the reason for the blue ratings that convinced me that MSA's proposal was [redacted]. MSA's proposal provided [redacted] because of its [redacted] which will [redacted] for the emergency responder. It is [redacted] and it provides superior [redacted]. The MSA proposal also provided [redacted] system with the PAPR and the ability [redacted].

AR 1888.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## ARGUMENT

### I. The Air Force Considered All Facts Relevant to the Evaluation; Interspiro Misreads the RFP Requirements [2]

Interspiro contends in the first two sections of its argument that the Air Force ignored what Interspiro alleges are "facts" that show Interspiro's proposal was superior and that MSA's proposal was either noncompliant or should have been downgraded. Interspiro Mot. at 18-26. On the contrary, these alleged "facts" are not facts.[3] In effect, Interspiro argues based upon what it wishes the RFP had said, rather than what it actually stated.

All of these Interspiro arguments share a false premise. Interspiro incorrectly presumes that the RFP required offerors to have developed and submitted what Interspiro calls a "Three-Mode SCBA." There was no such requirement.

---

[2] Interspiro's arguments in Sections A.2, B.2, B.3, C.1, and C.2 were not included in its Amended Complaint. The Court had directed plaintiffs to file amended complaints that included all issues they intended to raise in this litigation, and the Court even extended the deadline for filing amended complaints to allow plaintiffs more time to identify all possible arguments. *See* Order dated June 22, 2006. While the Court therefore should not consider these arguments, at a minimum, Interspiro's continually changing arguments signal its inherently weak position.

[3] Because Sections A and B of Interspiro's brief assert similar arguments, MSA has combined its responses to them.

### A. The RFP did not Require Offerors to Have Developed a "Three-Mode SCBA" and Submitted Such a Unit for Field Testing

Interspiro criticizes the Air Force for failing to give it credit for allegedly [redacted] developed and manufactured a "Three-Mode SCBA," for [redacted], and for failing to disqualify MSA because it [redacted]. Interspiro Mot. at 19, 26.

These allegations are refuted by the fact that the RFP did not require that an offeror have developed a "Three-Mode SCBA" or submitted such a unit for field testing.[4] The Air Force recognized that commercial products were in "various stages of development." AR 1545. It structured the RFP to maximize competition by allowing offerors to qualify for field testing so long as they supplied their complete "existing commercial SCBA unit" that "compl[ied] with paragraphs 3.4.5 and 3.4.6 of the Purchase Description in the RFP." AR 28, 47. Paragraphs 3.4.5 and 3.4.6 simply required that the base unit have met certain minimum NFPA and

---

4 Significantly, the term "Three-Mode SCBA" does not appear in the RFP [redacted]. It appears [redacted] in Interspiro's brief. Interspiro only provides a generic definition for the term, to mean an SCBA with APR/PAPR capability that can switch between modes without exposing the user to ambient air. Interspiro Mot. at 1 n.1. Those capabilities are not, however, all that the RFP required in this next-generation SCBA. The Air Force's ultimate requirements included – among many others – that the unit meet NIOSH standards for providing "respiratory protection" in CBRN environments. *See* AR 43, PD § 3.1.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

NIOSH requirements.[5] They did not require an offeror's base unit to be a "Three-Mode SCBA." AR 47.

Indeed, the Air Force reviewed the myriad certifications and test data submitted by MSA (AR 569-627) and reasonably concluded that MSA's base unit satisfied these requirements. AR 503. Interspiro has not challenged that determination.

The same RFP provisions defeat Interspiro's argument that the Air Force erred by failing to consider Interspiro's [redacted]. The RFP stated that the Air Force was only allowed to perform field testing on an offeror's "existing commercial SCBA units." AR 28 (RFP Subfactor 2a). The unit Interspiro represented as its existing commercial SCBA and "base unit" was [redacted] AR 327. Accordingly, that was the only unit eligible to be subjected to field testing, and Interspiro's argument (Interspiro Mot. at 19) that some other unit should have been tested is frivolous.[6]

---

5 Section 3.4.5 did not even mention APRs or PAPRs. AR 47. In response to a question from offerors, the Air Force clarified that "APR and PAPR modes are not required" by Section 3.4.6. AR 2409.

6 Interspiro only submitted [redacted], stating:

[redacted]

(continued...)



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Interspiro also contends that it was [redacted] in its development efforts [redacted] and should have received a more favorable [redacted] rating, allegedly because Interspiro was [redacted] "developed and manufactured Three-Mode SCBA products." Interspiro Mot. at 19. The record demonstrates otherwise.

Interspiro relies principally on a statement in the draft Price Evaluation Memorandum that Interspiro [redacted] AR 1557. However, the Air Force evaluators said [redacted] about MSA, citing [redacted] compared to other offerors. AR 1551.

Moreover, the proposals show that Interspiro is [redacted] its product development [redacted]. In its proposal, Interspiro stated that [redacted]. AR 327. MSA [redacted] AR 935.

Interspiro's [redacted] is not evidence of an [redacted], however, because Interspiro told the Air Force that [redacted]

[redacted]

(continued)

AR 327 (emphasis added). Because this [redacted], it was not eligible for field testing.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]

AR 363 (emphasis added). Interspiro states in its proposal that [redacted]. AR 367-69.

In sum, Interspiro's contentions must be rejected. The RFP did not require offerors to have developed or submitted a "Three-Mode SCBA" for field testing, and Interspiro [redacted].

B. **Interspiro Misinterprets the Commercial Item Provisions**

Next, Interspiro contends that it [redacted] [redacted] propose what it calls [redacted] that was a "commercial item" and that MSA should have been disqualified [redacted] Interspiro Mot. at 19-21, 24.

[redacted] More fundamentally, what the RFP required was a commercially available SCBA for field testing, an explanation of the offeror's design approach to modify the commercially available SCBA to meet the Air Force requirements, and a production plan. AR 31-35. Interspiro's argument that the "commercial item" designation trumps these specific RFP requirements would render the Design Approach evaluation subfactor irrelevant.

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

This protest argument is an untimely challenge to the terms of the RFP and has been waived. *See Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 726-28 (2004).

In addition, Interspiro completely misconstrues the meaning of a "commercial item." Interspiro seems to assume that an item can only qualify as a "commercial item" if there will be no further modifications made to it, *i.e.*, if it is sold commercially in its existing form. That is not the law. The FAR definition of "commercial item" includes items subject to modifications that are either "of a type customarily available in the commercial marketplace," or otherwise if the modifications are "minor." FAR § 2.101 ("commercial item" definition part (3)). In construing these provisions, GAO has noted that "there is no prohibition against making a modification to a commercial item." *Id.*; *NLB Corp.*, B-286846, Feb. 26, 2001, 2001 CPD ¶ 67. Based upon its market research, the Air Force found that while no existing commercially available unit meets its needs, existing units could meet Air Force needs after "minor modifications." AR 1545.

If there were such a requirement, Interspiro would have failed to qualify. Interspiro acknowledged in its proposal that its [redacted]. It describes [redacted] AR 328.

Interspiro contends that MSA's product [redacted]. Interspiro Mot. at 24. On the contrary, MSA has a



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted], AR 935, that complied with the RFP requirements for a base unit and submitted it for field testing, just as the RFP required.

In summary, Interspiro cannot assert that the Air Force must disqualify MSA on the ground that its proposed [redacted]

### C. Interspiro's "Patents Pending" Are Irrelevant

Next, Interspiro contends that the Air Force failed to consider that Interspiro has "patents pending" on SCBA technology and products, and states that these patents pending could disrupt the delivery of SCBAs or increase someone's costs, if Interspiro is issued a patent and MSA is found to have infringed it. Interspiro Mot. at 21-23. This argument is refuted by well-established Federal Circuit precedents, which Interspiro did not cite.

Section 1498 of Title 28, United States Code provides that the remedy for a patent owner whose patent is being infringed by a Government contractor is an action against the Government for damages. It states:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in [this Court] for the recover of his reasonable and entire compensation for such use an manufacture.
>
> . . . .
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm or corporation for the Government and with



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a).

Numerous Federal Circuit decisions explain that an action for damages is the patent holder's *exclusive* remedy; the patent holder *may not* seek an injunction or otherwise disrupt the Government from obtaining the goods and services that it needs. *Trojan, Inc. v. Shat-R-Shield*, 885 F.2d 854 (Fed. Cir. 1989); *W.L. Gore & Assocs., Inc. v. Garlock*, 842 F.2d 1275 (Fed. Cir. 1988); *TVI Energy Corp. v. Blane*, 806 F.2d 1057 (Fed. Cir. 1986). The policy underlying the statute is to give the patent holder a remedy "while saving the government from having its procurements delayed." *Aircraft Porous Media, Inc.*, B-241665.3, Apr. 8, 1991, 91-1 CPD ¶ 356.

As the Federal Circuit explained in *Motorola, Inc. v. United States*, 729 F.2d 765 (Fed. Cir. 1984) it follows that a potential patent infringement does not provide a basis for objection to the award of a contract. Rather, the United States must award contracts "irrespective of the possibility or inevitability of infringing the patents of other bidders." *Motorola,* 729 F.2d at 771.

Interspiro argues that section 1498 is only available if the contractor is acting with the Government's "authorization or consent," which, Interspiro says, has not been given here, because Interspiro found no RFP provision expressly stating that "authorization or consent" had been given. Interspiro Mot. at 22-23. The Federal Circuit has spoken to this very argument. In *TVI,* the Court found implied authorization or consent in circumstances nearly identical to these. There, the

Government issued a solicitation, and one of the bidders, in the course of demonstrating a product in response to the solicitation, allegedly infringed a patent. *TVI*, 806 F.2d at 1058-59. The Court had no trouble finding that the alleged infringer's conduct was pursuant to "authorization or consent" by the Government.

Were it otherwise, any offeror could disrupt a Government procurement simply by asserting a possible infringement, in contravention of the policies underlying Section 1498. The Court explained:

> To limit the scope of section 1498 only to instances where the Government requires by specification that a supplier infringe another's patent would defeat the Congressional intent to allow the Government to procure whatever it wished regardless of possible patent infringement.

*Id.* at 1060. Thus, Interspiro cannot maintain that the Government was barred from awarding a contract to MSA because of Interspiro's "patents pending," and because the only remedy is a suit for royalties, Interspiro's argument that the procurement could be disrupted is plainly without merit.

To the extent Interspiro contends that the Air Force was obliged to assess MSA a less-favorable risk rating because of possible infringement of yet-to-be-issued patents, it is simply wrong. Such an assessment would require the Air Force to engage in multiple layers of speculation that would have significantly delayed this procurement. First, the Air Force would have had to speculate whether a patent would even be issued. The Air Force certainly had no basis to speculate on that. Although *in this litigation* Interspiro submitted a declaration from its patent counsel opining that a patent will issue (*see* Interspiro Exh. K), the Air Force could

not have considered a declaration that it first received six months after the evaluation. The declaration itself is self-evidently self-serving. Counsel could hardly have opined that the very patent application he prepared for Interspiro is likely to be denied.

Also, the Air Force would have had to speculate as to the scope of a patent that might issue. There is no basis for such speculation; it would require prescience into the future actions of the Patent and Trademark Office. Furthermore, the Air Force would have to speculate on whether MSA's technology might infringe a patent that has not issued and the scope of which is unknown.[7] The Air Force is not required to engage in such a speculative exercise. *Aircraft Porous Media, Inc.*, B-241665.3, Apr. 8, 1991, 91-1 CPD ¶ 356. This Court should not adopt a legal proposition that would require Federal agencies to conduct such lengthy and speculative analyses as a condition of a awarding a contract.[8]

In summary, Interspiro's "patents pending" are irrelevant and its arguments should be rejected.

---

7 Interspiro submitted for filing various declarations purporting to offer opinions about its pending patent applications, but because Interspiro has failed to file a motion to supplement the Administrative Record with its declarations, those declarations are not properly before the Court.

8 If the Air Force were to engage in such speculation, it is just as likely to cut against Interspiro as it is to cut in favor of it. Interspiro [redacted] faces infringement issues with other companies' patents. Interspiro's [redacted] AR 368. Interspiro states that [redacted] AR 368.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

## D. The Low Risk Rating of MSA's Proposal was Rational and Consistent with the RFP

Finally, Interspiro challenges the Air Force's "low" proposal risk ratings of MSA on Subfactor 3, Design Approach. Interspiro Mot. at 24-26. Interspiro contends that MSA's own risk assessment in its proposal [redacted] *Id.* at 25. Interspiro contends that the Air Force "ignored" [redacted]. This argument is baseless.

The RFP required all offerors to self-identify potential risks in their proposals. It stated:

> The offeror shall address proposal risk by identifying those aspects of the proposal considered to involve cost and/or mission capability subfactor risk and classify each in accordance with MP5315.305, paragraph 5.5.2, Proposal Risk Ratings. Provide the rationale for each risk and its rating, including quantitative estimates of the impact on cost, schedule, and performance. Describe the impact of each identified risk in terms of its potential to interfere with or prevent the successful accomplishment of other contract requirements set forth in the SOW. Suggest a realistic "work-around" or risk mitigator for identified risks that will eliminate or reduce risk to an acceptable level. Identify and classify any new risks introduced by such risk mitigation.

AR 27. Thus, MSA's identification of risks was required by the RFP.

All offerors submitted similar risk assessments, although Interspiro deviated from the RFP requirements by neglecting to classify the level of these risks as either "low", "moderate" or "high." AR 366-69. *Id.* Interspiro identified [redacted] risks in its proposal, including:



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

[redacted]

The purpose of the requirement for offerors to self-identify proposal risks is usually for an agency to ensure that an offeror is well-acquainted with the challenges inherent in a project. *See Aero Corp., S.A. v. United States*, 38 Fed. Cl. 739, 760 (1997). In that sense, an agency typically regards a proposal more highly if it fully and accurately identifies and discusses the risks. Thus, [redacted] reflects MSA's thorough understanding of the project. AR 1042.

The Air Force had ample basis to conclude that MSA's proposal presented low proposal risk. Indeed, MSA's [redacted] demonstrated that MSA knows what it is doing. The evaluators concluded as much, explaining the low risk rating as follows:



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]

AR 1492-93. Interspiro's challenge to the proposal risk assessment is without merit and should be denied.

## II. The Evaluation and Scoring of Proposals Was Rational and Consistent with the RFP's Terms

Interspiro asserts several challenges to the Air Force's technical evaluation, but these arguments are based on unsupported or erroneous factual allegations or constitute little more than mere disagreement with the Air Force's evaluation. *Indus. Prop. Mgmt., Inc. v. United States*, 59 Fed. Cl. 318, 323 (2004) ("'[t]he fact that [plaintiff] disagrees with the evaluator's conclusions is not enough for this court to overturn them.'").

### A. The Evaluation of the Design Approach Subfactor was Reasonable, Consistent with the RFP, and Is Supported by the Record

First, Interspiro challenges MSA's "blue" rating under Subfactor 3, Design Approach, challenging [redacted] features that the Air Force cited in support of its "blue" rating. None of these contentions has merit.

**1. [redacted] MSA's Proposed Design has the Capability for [redacted]**

The Air Force's "blue" rating of MSA under Subfactor 3 was based in part upon the Air Force's conclusion that MSA's design offered the [redacted] AR 1492. Interspiro erroneously contends both that MSA's design does not possess this feature, and that Interspiro's proposed design also had this feature. Interspiro Mot. at 27-28.

In fact, this excerpt refers to [redacted] features offered by MSA's proposal, and [redacted] are fully supported by its proposal. First, it refers to the capability [redacted] that is, to [redacted]. MSA's proposal discusses that very feature:

[redacted]

AR 640. Along with this description, MSA provided [redacted].[9] *See* AR 640.

---

[9] Interspiro's attempts to argue that MSA's design does not offer this feature because it noted [redacted]. Interspiro Mot. at 28.

(continued...)



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

Interspiro's design does not offer this feature. Nothing in Interspiro's proposal refers to [redacted]. AR Tab 2. [redacted] Interspiro relies on a declaration from its President, Mr. Brookman. Interspiro Mot. at 28, Exh. J. That declaration is not properly before this Court, but in any event it is irrelevant, because the Air Force's evaluation was based on Interspiro's proposal, not on a declaration Interspiro submitted for litigation purposes. *Gulf Group Inc. v. United States,* 61 Fed. Cl. 338, 348-49 (2004). The Air Force is neither expected nor required to assume that Interspiro proposed features [redacted]. *See Forest Regeneration Servs. LLC,* B-290998, Oct. 30, 2002, 2002 CPD ¶ 187.

The second feature reflected in the Air Force's assessment is the [redacted]. MSA explained clearly in its proposal how this feature [redacted] requirements:

---

(continued)

Interspiro's reliance on MSA's [redacted] associated with its design approach and characterization of them as noncompliances is misguided for the reasons already explained. The Air Force's conclusion that MSA's design was more advantageous *with* this feature [redacted], than Interspiro's, which did not even offer this feature, is the sort of evaluative judgment that is for the agency to make, and not for Interspiro to second-guess. *E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed. Cir. 1996).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

[redacted]

AR 565 (emphasis added). [redacted] AR 565, 640-41, 648.

Apparently, Interspiro incorrectly concluded that MSA's [redacted] was merely attributed to the ability to [redacted]. Interspiro Mot. at 29. That is not what the evaluation report states. Rather, it refers to the [redacted] AR 1492.

Moreover, [redacted] is a minimum requirement of the RFP. *See, e.g.*, [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]. MSA proposed [redacted] *See, e.g.*, AR 565.

With Interspiro's unit, [redacted] AR 365-66; Interspiro Mot. at 29. The advantages of MSA's approach are significant, especially since [redacted]

Curiously, with regard to the ability [redacted] Interspiro's own proposal contradicts the assertions now raised in its brief, stating: [redacted]

[redacted] Interspiro not only failed to describe the same capabilities in its proposal that serve as [redacted] the bases for MSA's "blue" rating, but Interspiro explicitly [redacted]

2. **MSA's Design Did Not** [redacted]

Interspiro contends that even though both offerors proposed systems that did not [redacted], "MSA, but not Interspiro, received credit for this factor." Interspiro Mot. at 29. First, MSA's blue rating, as admitted by Interspiro, is not based on [redacted]. AR 1492 [redacted]

Further, despite Interspiro's allegation to the contrary, as reflected in the final SSDD, the SSA [redacted] The SSA [redacted] AR 1887; *see also* AR 1683 (Award Decision Briefing attributing blue rating to [redacted]). [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

actually received [redacted] feature during the technical evaluation. AR 1487, 1492, 1887.

Finally, even if [redacted] had been [redacted] for MSA's blue rating, which it was not, Interspiro's approach is nonetheless inferior when compared to MSA's proposal. Interspiro's proposed SCBA unit [redacted]. In the underlying Final Technical Evaluation Report, the evaluators noted unconditionally that while [redacted] AR 1492, for Interspiro, [redacted] AR 1487.

### 3. The Evaluation of [redacted] Was Reasonable, Consistent with the RFP and Supported by the Record

Next, Interspiro challenges the evaluator's citation of the [redacted] of MSA's SCBA as a basis for its "blue" rating. Interspiro Mot. at 29. The Final Evaluation Report states that MSA's SCBA [redacted]" AR 1492. Interspiro criticizes the Air Force for accepting MSA's [redacted] Interspiro Mot. at 29.

These contentions are without merit. MSA states in its proposal that its [redacted] and that [redacted] AR 649. While there is no basis for the Air Force to question these representations, *Robertson Leasing Corp.*, B-279756; B-279756.2, July 17, 1998, 98-2 CPD ¶ 46, the Air Force did not [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

[redacted] It actually [redacted] SCBAs when they were submitted for field evaluation. AR 2422. MSA's SCBA with [redacted]. AR 2422.

In contrast, in its proposal, Interspiro's SCBA, [redacted]. AR 357-58. With a [redacted] Interspiro admits that its proposed unit would [redacted], AR 357-58, and [redacted]. AR 46. Accordingly, MSA's proposed unit was [redacted].

While Interspiro quibbles over [redacted], Interspiro Mot. at 29 (referring to [redacted]), even if the quibbles were valid, MSA's unit would nonetheless [redacted]. As the Air Force concluded, [redacted] . . . ." AR 1889.

#### 4. The Evaluation of [redacted] was Reasonable, Consistent with the RFP, and Supported by the Record

Finally, Interspiro challenges the [redacted] basis for MSA's "blue" rating on Subfactor 3: [redacted]. AR 1492. Interspiro erroneously contends



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

that the only reason MSA's [redacted] is because MSA "does not comply with the [redacted] required by the RFP's Purchase Description." Interspiro Mot. at 30-31. Notably, Interspiro does not identify the specific requirements that MSA allegedly fails to meet, nor does it demonstrate how it contends MSA fails to meet them.

Even assuming Interspiro's allegations were valid, which they are not, they would not permit Interspiro to [redacted] between the two offerors' units. The [redacted] between the two offerors' [redacted] is [redacted]. AR 649 ([redacted]); AR 365 ([redacted]). Further, MSA's [redacted] discussed in Section III.A.3. Specifically, [redacted] than Interspiro's. AR 649 ([redacted]); AR 357-58, 2171 ([redacted]).

Interspiro argues that for MSA to meet the PAPR output requirements, MSA must [redacted]. Interspiro Mot. at 30. Sheer [redacted] demonstrates that Interspiro's argument fails, because MSA's [redacted] advantage over Interspiro is so substantial. MSA's [redacted]. AR 649. If MSA [redacted] than Interspiro's and [redacted] than Interspiro's. Further, Interspiro's own [redacted] are



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

demonstrably erroneous, because Interspiro [redacted]. While Interspiro proposes [redacted], it only accounts for [redacted] AR 365. Interspiro cannot have it both ways, and correction of this error would further [redacted] advantage.

As for Interspiro's contention that MSA's [redacted] does not meet some requirements, Interspiro again misleadingly relies upon MSA's [redacted] as the basis for its claim that MSA's proposal does not meet the [redacted] requirements. Interspiro Mot. at 30. Again, that argument is incorrect for the reasons already explained. The [redacted] was required by the RFP and merely identifies [redacted], not noncompliances. AR 660. MSA in fact committed to full compliance [redacted], AR 43, 647, and fully committed to meet all design requirements:

[redacted]

AR 518. Interspiro's assertion that MSA must make [redacted] to [redacted] which it claims will [redacted] and thus [redacted], Interspiro Mot. at 30, is unavailing. Interspiro itself admitted it must make [redacted] to [redacted] to [redacted], stating in its proposal:



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]

AR 364 (emphasis added).

These various proposed [redacted] would require Interspiro to [redacted] Thus, again, Interspiro's contentions do not explain, or close, MSA's significant [redacted] advantage, as similar, if not greater, [redacted].[10]

In sum, none of Interspiro's challenges to MSA's "blue" rating under Subfactor 3, Design Approach have merit.[11] MSA's proposed design exceeded the

---

[10] Interspiro also suggests that MSA's [redacted] does not meet the RFP requirements. Interspiro Mot. at 31 n.9. That contention is incorrect. MSA's proposal shows that MSA's [redacted] meets the PD requirements. AR 647; AR 48. Interspiro also contends that its [redacted] is [redacted] than MSA's, which is not borne out by its example because Interspiro [redacted]. *See* AR 365. However even if it were true, it is at the expense of [redacted]

[11] Even if all of these challenges had merit – which they do not – MSA would still remain the higher-rated proposal. Interspiro has not challenged MSA's "blue" rating under Subfactor 2, the Field Evaluation subfactor. Thus, even if Interspiro's other challenges were correct, MSA would still have that "blue" rating and [redacted] MSA's proposal would [redacted] superior.

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

RFP requirements in ways that Interspiro's did not. The Court should reject Interspiro's contentions.

### B. The Evaluation of the [redacted] Subfactor was Reasonable, Consistent with the RFP, and Supported by the Record

Interspiro challenges the Air Force's assignment of [redacted] for Interspiro under the [redacted] subfactor, arguing that it was "arbitrary and capricious because it failed to properly perform the arithmetic necessary to assess Interspiro's ability to meet the government's surge requirements." Interspiro Mot. at 31. Interspiro's challenges to the Air Force's "arithmetic" notwithstanding, Interspiro misreads the RFP. The RFP did not impose an upper limit on SCBA units to be produced during a surge period. Rather, it provided that a contractor must comply with *any* order exceeding the maximum Best Estimated Quantity ("BEQ"), stating "the Contractor shall honor *any order exceeding the maximum order limitation* in paragraph (b), unless that order (or orders) is returned to the ordering office within 10 days after issuance." AR 24 (emphasis added). The Air Force developed its own estimate of what constitutes a "minimum acceptable surge," but only for evaluation purposes. AR 1487. Interspiro was required, but failed, to demonstrate that it could handle [redacted]

In its initial proposal, Interspiro explained that [redacted], yet it



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

offered no [redacted]. AR 366. During discussions, the Air Force expressed concern about Interspiro's ability to meet surge requirements and asked Interspiro [redacted]"[12] AR 191.

In response, Interspiro stated that [redacted] AR 186. In its assessment of Interspiro's response [redacted], the Air Force observed that "true wartime surge requirements could be [redacted]." AR 1487-88. The Air Force further noted that Interspiro's [redacted] response [redacted] AR 1488. The Air Force informed Interspiro on January 12, 2006 that it had been assigned [redacted] under the [redacted] subfactor when it invited Interspiro to submit a

---

12 The Air Force submitted another [redacted] to Interspiro addressing [redacted] and explained that the Air Force had been informed of a [redacted]. AR 195. Accordingly, responding to surge requirements is [redacted] for Interspiro.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

final proposal revision. AR 160-61. Interspiro [redacted] to its proposal. AR 158.

Interspiro glosses over these fundamental concerns and instead attacks the Air Force's calculations of surge capacity. In fact, the Air Force's calculation of Interspiro's stated surge capabilities is accurate. The BEQ's in the RFP establish quantities for one-year periods. For each of the option years, the BEQ SCBA quantities is 2,000 SCBA units, AR 7-14, a number which Interspiro does not dispute. Interspiro Mot. at 32. In response to [redacted], Interspiro stated [redacted], Interspiro Mot. at 186, which would be required [redacted] AR 1488.

Interspiro's undue focus on the numbers led it to overlook another critical fact. The BEQ's specified in the RFP and referred to in [redacted] represent numbers of *SCBA units* – for the out-years, the annual BEQ for SCBA units (both with and without PAPRs) is 2,000 units per year. AR 7-14. Importantly, however, offerors were required to deliver **2 cylinders for each SCBA unit** (one for the unit and one spare). AR 2403. In other words, the cylinder requirements are actually double the BEQ, or 4,000 cylinders. [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]. AR 186 [redacted] Interspiro Mot. at 32. Accordingly, in a surge period, Interspiro only proposed [redacted] of the SCBA BEQ units, which is [redacted] AR 1488. In fact, the Air Force's calculation of Interspiro's surge capability credited Interspiro with a significantly greater ability than it in fact proposed.

Finally, even assuming that Interspiro's lawyers' calculations of its surge capability of [redacted] Interspiro Mot. at 31, is valid, this surge capability is [redacted] surge capability. In its proposal, [redacted], AR 1034. *See also* AR 1496 ([redacted]). These surge capabilities reflect the ability to handle true wartime surge requirements. In stark contrast, Interspiro's surge capability is [redacted], and is certainly deserving of the assigned [redacted]. MSA was appropriately assigned a [redacted] risk rating for its ability to deliver the [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

### C. The Air Force Faithfully Applied the RFP Requirements in Performing the Evaluation of Interspiro's Past Performance

Interspiro next challenges the evaluation of the Present and Past Performance factor, arguing that the Air Force was *required* to score Interspiro [redacted] on this factor. Interspiro Mot. at 32-33. Once again, Interspiro's contentions disregard the RFP and amount to nothing more than mere disagreement with the Air Force evaluative judgments.

First, Interspiro misstates the RFP requirements. Interspiro asserts that an offeror's past performance "would be evaluated on 'the development and production'" of various technologies. Interspiro Mot. at 32. That is not correct. The RFP stated that the Present and Past Performance evaluation would consist of an assessment of the "confidence in the offeror's ability to successfully accomplish the proposed effort." AR 33. This assessment was to be based upon much broader information than simply the "development and production" of technologies. Rather, the evaluators were to perform "an integrated analysis of the risks and strengths identified" from the offeror's "past work record." AR 33. Offerors were to submit a so-called "FACTS Sheet" for each of "its three most relevant SCBA contracts/efforts" and "its three most relevant APR contracts/efforts" over the last four years. AR 29. In addition, offerors were to submit one page simply listing all the contracts that the offeror has performed in the last 3 years. *Id.* The evaluators rated the overall relevancy of the offerors' past contracts/efforts to the present procurement, then assessed their overall confidence in the offerors' ability to perform. AR 34-35.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

Interspiro plucks the phrase "development and production" from the definitions of the RFP relevancy ratings, but it distorts the meaning. The relevancy definitions simply state that a past contract would be evaluated as relevant based upon the extent to which it "involved the magnitude of work and complexities" that this solicitation requires. AR 34. The definitions further state that an example of a relevant contract – but by no means the only example of a relevant contract – might be a past contract that "involved the development and production" of the technologies in this procurement. *Id.* The ultimate assessment was not how far along the offeror's products had developed in past contracts, but rather how much confidence the evaluators had that the offeror could perform, assessed broadly upon "an integrated analysis of the risks and strengths identified" from the offeror's "past work record." AR 33.

The record contains ample basis for the Air Force's rating of Interspiro on the Present and Past Performance factor as [redacted]. *See* AR Tab 7 (Final Performance Confidence Assessment Group Report). Of the 6 contracts that Interspiro submitted for evaluation, [redacted] AR 1517. The Air Force determined that it was [redacted] *Id.* at 1518. Of the remaining 5 Interspiro contracts, [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted].[13] All 5 of these remaining Interspiro contracts were [redacted] compared to the proposed effort, ranging [redacted]. AR 1516-1519. The Air Force deemed [redacted]. *Id.* at 1521.

Significantly, moreover, Interspiro's performance record was [redacted] AR 1522. Interspiro has not challenged this assessment. Thus, Interspiro's past performance [redacted]

MSA, in contrast, had [redacted]. Its 6 contracts all [redacted]. The [redacted] of its contracts were [redacted]. [redacted]. AR 1522-28. MSA had no [redacted]

---

13 Interspiro claims that it [redacted] AR 1518. Rather, the contract was for [redacted] *Id.*



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

performance reviews, [redacted] rather received [redacted] from its customers. AR 1527. Thus, the Air Force reasonably assessed MSA a "high" confidence rating. Interspiro has not identified a single MSA relevancy rating that it claims was in error.

Interspiro contends that the Air Force failed to consider its [redacted]." Interspiro Mot. at 33. On the contrary, Interspiro admitted in its proposal that [redacted] to be evaluated in this factor. AR 380. Also, the present solicitation calls for a "next generation" SCBA, that is, a product that does not now exist. Thus, there is no "incumbent" contractor. Moreover, the Air Force did consider all the contracts that Interspiro submitted, including Interspiro's [redacted] The Air Force found that contract [redacted] but noted that it "[redacted] and that it "involved [redacted]" than the current effort. AR 1516.

In summary, Interspiro has failed to demonstrate any errors in the evaluation of its Present and Past Performance, and its arguments in this regard should be rejected.

## III. The SSDD Articulated a Rational Cost-Technical Tradeoff

Interspiro next challenges the Source Selection Decision on various grounds. It seems to suggest that the Air Force failed to take the corrective action it stated it



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

would take. Also, Interspiro contends that the SSA's cost-technical tradeoff was deficient because it "ignored" certain issues that favor Interspiro.[14] At bottom, Interspiro asserts that it "is in the best position to field the required products on the fastest schedule and at the lowest price," and in essence no SSDD could be reasonable if it failed to select Interspiro. Interspiro Mot. at 33-36.

These allegations are without merit. First, the Air Force took the very corrective action that it said it would take. It represented that the SSA would "reconsider the proposals" and "issue a new Source Selection Decision Document," and that is precisely what the SSA did. AR 2117; *compare* AR 1749-55 *with* AR at 1883-89. More importantly, whether the Air Force's corrective action went as far as Interspiro would have liked is, at bottom, immaterial. An agency has "broad discretion" to take corrective action that it deems necessary. *Mantech Telecomm. and Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 65 (2001). What matters is

---

[14] In a footnote, Interspiro raises two additional cost-related factors that it says the agency failed to consider: Interspiro's [redacted] that allegedly would result from using a supply source other than Interspiro as the "incumbent contractor." Interspiro Mot. at 34, n. 14. This argument is an untimely challenge to the RFP terms, which clearly stated what prices would and would not be evaluated. *See Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 726-28 (2004). The RFP stated expressly that the cost of [redacted] would not be evaluated, and it did not provide for evaluation of other [redacted]. AR 36. Moreover, there is no basis for Interspiro's claim that such costs, if evaluated, would [redacted]. Interspiro is *not* the "incumbent," as Interspiro itself concedes that this is a procurement for a "next generation" SCBA. AR Tab 8 at 1545, Tab 1 at 28. Thus, there is no basis to believe that there would be costs to the Air Force resulting from the award to MSA that would not be incurred with Interspiro.

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

whether the underlying award decision is rational and consistent with the record. *See, e.g., World Travel Serv. v. United States*, 49 Fed. Cl. 431, 442 (2001) ("Under the arbitrary and capricious standard, this court must uphold a procurement decision so long as it has a rational basis").

Second, the SSDD presents a reasonable cost-technical tradeoff. It documents the SSA's independent judgment based on the evaluation record. Under the FAR, a source selection decision must "include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs." FAR § 15.308.

The SSDD did just that. The SSA also articulated a reasonable basis for finding MSA's [redacted], finding that MSA's technical strengths could better [redacted] AR Tab 14 at 1888. Contracting agencies have wide discretion in making best value decisions, and the Court must defer to the agency's judgment. *Overstreet Elec. Co., Inc. v. United States*, 59 Fed. Cl. 99, 108 (2003) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government."); *Computer Scis. Corp. v. United States*, 51 Fed. Cl. 297, 306 (2002) ("[a]s long as a rational basis is articulated and relevant factors are considered, therefore, the agency's action must be upheld.").

Finally, the SSA did not "ignore" anything. The alleged "facts" that Interspiro claims were ignored are not facts at all, but merely Interspiro's self-



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

serving opinions about its own superiority – opinions not shared by the evaluators and not supported in the record. MSA has previously refuted all of Interspiro's contentions. In short, the revised SSDD elaborated a reasonable basis for the cost-technical tradeoff in properly awarding the contract to MSA.

## IV. Interspiro Is Not Entitled to Injunctive Relief

In no event is Interspiro entitled to injunctive relief. Interspiro seeks a permanent injunction, alleging that the Air Force "fail[ed] to comply with the legal requirements governing the conduct of this procurement." Interspiro Mot. at 36.

In deciding whether to issue a permanent injunction, this Court examines the following four factors: (1) whether the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). Interspiro is not entitled to any relief because it cannot prevail on the merits.

Even if Interspiro could succeed on the merits, it still is not entitled to equitable relief. The Federal Circuit has made it clear that "in a bid protest action, section 1491(b)(4) does not automatically require a court to set aside an arbitrary, capricious, or otherwise unlawful contract award." *PGBA*, 389 F.3d at 1226. Rather, even if a plaintiff succeeds on the merits, this court must examine the strengths of the three other factors and use its "equitable discretion" to determine



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

whether granting the relief would be appropriate. *See id.* at 1225-26, 1228-29, 1231 (affirming this Court's decision to withhold injunctive relief and weighing the relevant factors, even though the agency's action was determined to be arbitrary and capricious).

In addressing the remaining factors regarding irreparable harm, harm to the respective parties, and the public interest, Interspiro relies only on garden variety arguments that generically apply in nearly every post-award bid protest. This, however, is not a garden-variety procurement. Where a procurement is for equipment needed for safety and national defense, ordinary protester concerns are insufficient to tip the balance in favor of injunctive relief. *See Gentex Corp. v. United States*, 58 Fed. Cl. 634, 636 (2003) (denying injunctive relief, notwithstanding the violation of procurement regulations, because "the public interest, in particular, the safety of our nation's aircrew, could be compromised by the delay in this procurement which would result from such an injunction"). The SCBAs that the Air Force is seeking to procure are *life-saving* instruments, to be used by first responders in service to the national defense. The degree of harm to the Air Force as well as to the public interest if an injunction were granted strongly weighs in favor of allowing the Air Force to continue with the award decision. This Court is required to give "due regard to the interests of national defense and national security" in bid protest decisions. 28 U.S.C. § 1491(b)(3).

The safety of Air Force personnel is at stake in this procurement. The SCBAs that the Air Force seeks do not currently exist – they are the "next-generation"



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

SCBAs. AR 1544-45. Thus, the extra margin of safety they provide over the current SCBAs is currently unavailable to first responders. This procurement should not be further delayed.

For all of these reasons, Interspiro is not entitled to injunctive relief, even if it could prevail on the merits.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenor MSA respectfully requests that the Court deny the Motion for Judgment filed by Interspiro and enter judgment or dismissal with prejudice.

Respectfully Submitted,

Of Counsel:
Brian T. McLaughlin

s/ Thomas P. Humphrey, Esq.
Counsel of Record
Elizabeth W. Newsom, Esq.
Amy E. Laderberg, Esq.
Rebecca K. Lee, Esq.
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel. (202) 624-2500
Fax (202) 628-5116

Counsel for Mine Safety Appliances Company

Dated: August 7, 2006



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## CERTIFICATE OF FILING

I hereby certify that on the 7th day of August, 2006, the foregoing Defendant-Intervenor Mine Safety Appliances Company's Opposition to Interspiro's Motion For Judgment On The Administrative Record And Cross Motion For Judgment On The Administrative Record was filed electronically. This filing will be available to all parties by operation of the Court's electronic filing system.

Courtesy service was also provided at the following addresses:

Dorie Finnerman, Esq.
Trial Attorney
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

Rand L. Allen, Esq.
Daniel P. Graham, Esq.
Wiley, Rein & Fielding LLP
1776 K Street, N.W.
Washington, D.C. 20006

David R. Hazelton, Esq.
Latham & Watkins
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004

3
s/ Thomas P. Humphrey