AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

**Electronically Filed on August 25, 2006**
**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

INTERSPIRO, INC.,

Plaintiff,

and

SCOTT TECHNOLOGIES, INC., d/b/a SCOTT HEALTH & SAFETY,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

MINE SAFETY APPLIANCES CO.,

Defendant-Intervenor.

No. 06-425C; No. 06-443C

Judge Firestone

**CONSOLIDATED**

**DEFENDANT-INTERVENOR MINE SAFETY APPLIANCES COMPANY'S REPLY TO SCOTT HEALTH & SAFETY'S RESPONSE TO MSA'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Of Counsel:
Brian T. McLaughlin

Thomas P. Humphrey, Esq.
Counsel of Record
Elizabeth W. Newsom, Esq.
Amy E. Laderberg, Esq.
Rebecca K. Lee, Esq.
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel. (202) 624-2500
Fax (202) 628-5116

Counsel for Mine Safety Appliances Company

Dated: August 25, 2006

**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

## TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

I. Scott Completely Misreads the Record in Asserting that the Air Force Improperly Accepted [redacted] .......... 2

II. The Air Force Applied the Most Current NIOSH Standard Consistently to All Proposals .......... 4

- A. The Air Force Applied the Draft Concept Even-Handedly .......... 5
- B. MSA's Proposed Unit Complies with the RFP .......... 8
- C. Under Any Version of the Draft Concept, MSA's Proposed Unit Is Superior .......... 10

III. The Air Force Reasonably Determined that MSA's Proposal Satisfied the Maintenance and Warranty Requirements .......... 11

IV. The Air Force Evaluation of Risks and Price/Cost were Reasonable, Consistent with the RFP, and Supported by the Record .......... 15

V. The Air Force Adhered to the Evaluation Process in the RFP and Treated Offerors Equally .......... 16

VI. Scott is Not Entitled to Equitable Relief .......... 19

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365 (Fed. Cir. 1999) .................. 14

*Bannum, Inc. v. United States*, 60 Fed. Cl. 718 (2004), *aff'd*, 404 F.3d 1346 (Fed. Cir. 2005) .................. 13, 16

*Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005) .................. 10

*Beta Analytics International Inc. v. United States*, 44 Fed. Cl. 131 (1999) .................. 14

*Consolidated Engineering Services, Inc. v. United States*, 64 Fed. Cl. 617 (2005) .................. 5

*Dubinsky v. United States*, 43 Fed. Cl. 243 (1999) .................. 14

*Hydro Engineering, Inc. v. United States*, 37 Fed. Cl. 448 (1997) .................. 17

*ITT Federal Services Corp. v. United States*, 45 Fed. Cl. 174 (1999) .................. 16

*Information Tech. & Applications Corp. v. United States*, 316 F.3d 1312 (Fed. Cir. 2003) .................. 2, 4

*Telegraph-Instrument Electric Corp. v. United States*, 56 Fed. Cl. 174 (2003) .................. 14

*Yankee Atomic Electric Co. v. United States*, 112 F.3d 1569 (Fed. Cir. 1997) .................. 16

## GENERAL ACCOUNTABILITY OFFICE CASES

*Centech Group, Inc.*, B-278904 .................. 2

*Cerner Corp.*, B-293093 .................. 3

*Infotec Dev., Inc.*, B-238980 .................. 2

*Techsys Corp.*, B-278904.3 .................. 2

## FEDERAL REGULATIONS

FAR 15.308 .................. 17

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

**Electronically Filed on August 25, 2006**
**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | |
|---|---|
| INTERSPIRO, INC., Plaintiff, and SCOTT TECHNOLOGIES, INC., d/b/a SCOTT HEALTH & SAFETY, Plaintiff, v. UNITED STATES, Defendant, and MINE SAFETY APPLIANCES CO., Defendant-Intervenor. | No. 06-425C; No. 06-443C<br>Judge Firestone<br>**CONSOLIDATED** |

**DEFENDANT-INTERVENOR MINE SAFETY APPLIANCES COMPANY'S REPLY TO SCOTT HEALTH & SAFETY'S RESPONSE TO MSA'S CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

The Air Force had a powerful rationale for selecting for award the proposal of Mine Safety Appliances Company ("MSA"). MSA not only proposed a "better SCBA than that proposed by Scott," AR 1888, but "[t]he importance of the SCBA and APR, through their impact on saving lives, makes ensuring Air Force personnel have the best device of the utmost importance." AR 1889. Unable to challenge the merits of the Air Force's decision protecting the lives and safety of firefighters and first responders, or the Air Force's evaluative process, Scott has resorted to distorting not only the Government's and MSA's arguments but the record itself. The most notable example of such tactic is evidenced by the distortion of the sworn statement of Ms. Beebe, the Air Force's Lead Project Engineer in connection with this

procurement. *Compare* Beebe Decl. ¶ 8 *with* Scott Reply at 7, 9, 13-15. Such efforts to alter arguments and the record in order to muster a response are a clear indication of the weakness of Scott's protest.

Scott's protest allegations cannot overcome a critical fact. Scott's inferior proposal and SCBA design were not dictated by any particular standard and are not the result of any errors in the evaluation, but, rather, are products of Scott's own business decision to propose a [redacted] unit that lacks the [redacted] proposed by MSA. Further, Scott should not be allowed to misuse the protest process to reclaim the same opportunity to improve its proposal that it so willingly squandered when it declined to submit a final proposal revision ("FPR"). AR 1115. Scott must accept the consequences of its own choices.

## I. <u>Scott Completely Misreads the Record in Asserting that the Air Force Improperly Accepted a</u> [redacted]

Despite the sworn statement of an Air Force engineer that "the Air Force *did not evaluate* these [redacted]" and "[t]he evaluators *also did not* [redacted] submitted by MSA," Beebe Decl. ¶ 4 (emphasis added), Scott persists in arguing that the Air Force "evaluated [the] [redacted]." Scott Reply at 17. Once the Air Force stated that it did not evaluate the [redacted], that ought to have ended this issue.

Instead, evidently unwilling to let go, Scott shifts to a new, even less meritorious, argument.[1] Scott seems to concede that the evaluators did not evaluate the [redacted] or

---

[1] Scott also suggests that Air Force erred by failing to return the [redacted] to MSA. Scott Reply at 17-18. MSA does not agree that these submission of a [redacted] exceeded the page limits. However, even under that analytical framework, Scott's arguments are unavailing. When an offeror submits a proposal that exceeds the page limits, an agency may simply remove or disregard the pages that exceed the limit. *See Infotec Dev., Inc.*, B-238980, July 20, 1990, 90-2 CPD ¶ 58; *Centech Group, Inc.*, B-278904, Apr. 13, 1998, 98-1 CPD ¶ 149; *Techsys Corp.*, B-278904.3, Apr. 13, 1998, 98-2 CPD ¶ 64. Moreover, prejudice cannot be assumed, even where the agency considers a proposal that exceeds the limits. *Info. Tech. &*

(continued...)

[redacted],[2] but now argues that it was improper for the Air Force to consider *written statements* that MSA made *about* [redacted] in its written proposal. Scott points to two snippets from MSA's written proposal that were quoted on two evaluation forms. The first excerpt from MSA's written proposal stated:

> [redacted].

AR 650.[3] The other excerpt from MSA's written proposal stated:

> [redacted].

AR 633.[4]

Scott amazingly asserts that consideration of these *written proposal* statements was "contrary to the terms of the RFP" because "evaluation of [redacted] was not permitted by the RFP." Scott Reply at 19. Thus, Scott is no longer contending that MSA violated the page limits by submitting [redacted], and, instead is now arguing that it was somehow improper for MSA even to write about [redacted] in its proposal narrative.

---

(continued)

*Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *see Cerner Corp.*, B-293093, Feb. 2, 2004, 2004 CPD ¶ 34 (denying protest that agency considered a proposal that exceeded the page limits for lack of prejudice). Scott has made no showing of prejudice.

[2] For the first time in its Reply, Scott cites a field evaluation form mentioning MSA's [redacted], but that form merely states "[redacted]." AR 2246. That snippet does not support any claim that the Air Force [redacted].

[3] This excerpt is parroted word-for-word on an evaluator form. AR 2244. However, MSA's proposal makes clear that it was MSA (not the Air Force) that [redacted] described in the excerpt.

[4] This excerpt was copied onto an evaluator form. AR 2259.

This argument is frivolous. The RFP describes the items that must be included in a proposal. AR 26-31. Nothing in the RFP restricts an offeror from discussing [redacted] in its written narrative, and nothing prohibits the Air Force from considering such written statements during the evaluation. Scott *itself* included in its proposal a [redacted]. Scott does not even purport to cite the RFP for the proposition that consideration of a written narrative that discusses [redacted] is improper, because it obviously does not say that.[5]

Moreover, Scott cannot, and has not even attempted to, show prejudice, because the Air Force never evaluated [redacted]. Beebe Decl. ¶ 4. Scott derides this point, dismissively characterizing it as "no harm, no foul." Scott Reply at 18. But "no harm, no foul" is not merely a throw away argument; it is the law. The Federal Circuit has made clear that a plaintiff in a bid protest action must prove that it was prejudiced by the agency action it complains about. *Info. Tech. & Applications Corp.*, 316 F.3d at 1319. For all of these reasons, Scott's argument must be rejected.

## II. The Air Force Applied the Most Current NIOSH Standard Consistently to All Proposals

Scott raises numerous challenges to the application of the draft NIOSH CBRN PAPR Concept. While Scott's principal argument has been that the November 2005 draft Concept should have been considered the "most current" standard, it has not argued that MSA's proposal fails to meet that standard (aside from its misguided reliance on [redacted]). Instead, Scott shifts to a new argument that the Air Force "selectively" "mixed and

---

5 Instead, Scott cites MSA's Motion. Scott Reply at 17 (citing MSA Mot. at 5). This is just one of many Scott distortions. MSA simply summarized some of the general RFP provisions. MSA never said that the RFP prohibited offerors from discussing [redacted] in their written narratives or prohibited the Air Force from considering such discussions.

matched" requirements of the June and November draft Concepts. Scott claims this mixing and matching allegedly enabled MSA to comply, but denied Scott strengths it claims it would have had if the November draft Concept had been consistently applied. Scott Reply at 6-17. None of this is true. As is explained below, Scott relies on obvious distortions of the record, most notably of the sworn statement of an Air Force engineer. These allegations, moreover, are a smokescreen.

As is explained below, Scott has not, and, indeed, cannot dispute two fundamental facts which render all of its complaints regarding the NIOSH standards irrelevant: (1) MSA's unit complies with the [redacted]; and (2) under *any version* of the draft Concept, MSA's unit remains technically [redacted]. These two facts are indeed critical, as they render futile any efforts by Scott to establish prejudice. *Consol. Eng'g Servs., Inc. v. United States*, 64 Fed. Cl. 617, 631-32 (2005). Irrespective of Scott's challenges, the contract was awarded to the offeror that proposed the best SCBA unit.

Ultimately, as a result of this protest, the Air Force should not shoulder the blame for Scott's poor business decisions to propose [redacted], AR 1322; Scott Mot. at 14-15; MSA Mot. at 19-20, and to squander the opportunity to make further design changes in a FPR in light of the relaxed requirements. AR 1115.

### A. The Air Force Applied the Draft Concept Even-Handedly

Scott's latest challenge to the application of the NIOSH standard is wrong: the Air Force did not "mix and match" or apply the draft Concepts "selectively." It applied the draft Concept equally to all. Scott badly mischaracterizes the declaration of Air Force Engineer Laurie Beebe, claiming that she said that the Air Force "generally evaluated initial proposals against the June 20, 2005, draft concept," and then selectively applied the November 2005 Concept [redacted]." Scott Reply at 7 (emphasis in original) (citing Beebe Decl. ¶



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

8); *see also id.* at 9, 13-15 (mischaracterizing Ms. Beebe's declaration to support Scott's argument that the draft Concept was improperly applied and that the Air Force "mixed and matched" requirements from different standards).

Ms. Beebe said nothing of the sort. Ms. Beebe plainly states in her declaration:

> The evaluators generally evaluated initial proposals against the June 20, 2005, draft Concept, but we knew that the NIOSH standards would be changing. NIOSH introduced the revised draft Concept on November 4, 2005, which relaxed certain requirements. Accordingly, during the final evaluation, where the November 4, 2005, draft Concept varied from earlier drafts [redacted] requirements set forth in the November 2005 draft Concept, we considered this approach to be acceptable. This was required by the RFP, which provides that "the most current standard shall always apply."

Beebe Decl. ¶ 8. The Air Force further states that "The Air Force relied upon the June 2005 version at the time it conducted its initial evaluations, and by the time it issued its Final Technical Evaluation Report, it [redacted] comply with the November 2005 version." Gov't Mot. at 14. While the evaluation was complicated by the timing of the issuance of revisions to the draft Concept, the ultimate result is that the November 2005 changes were applied. Scott's misrepresentations are glaring.

Aside from distorting Ms. Beebe's declaration, Scott's sole basis for arguing that the Air Force applied the draft Concepts unequally is that the Air Force did not assign [redacted] Scott now contends that the Air Force "failed to consider Scott's [redacted]," but only cites back to its own Motion. Scott Reply at 14. Both the Air Force and MSA refuted the allegations regarding areas where Scott perceived that it was entitled to [redacted]:

- A [redacted] (which Scott refers to by the unit's [redacted] was not required under any version of the draft Concept, and higher breathing rate requirements existed for only that PAPR variant. Gov't Mot. at 14-15; MSA Mot. at 19-20. Either a [redacted] or a [redacted] PAPR is permissible under any version of the draft Concepts at issue. *Id.*

- Maintaining [redacted] when the blower is on is no longer a NIOSH requirement, and, regardless, [redacted]. MSA Mot. at 20-21 n. 5.

Further, although Scott claims its [redacted] will [redacted] Scott Mot. at 24, Scott stated that in its [redacted], thereby eliminating any basis for the strength it now seeks. AR 1124 (emphasis added). [redacted]. As the Air Force and MSA have stated, Scott cannot have it both ways. Gov't Mot. at 10; MSA Mot. at 20.

That Scott was measured against the November 2005 draft Concept is evidenced by the Air Force's acceptance of Scott's claims that it [redacted] Scott erroneously contends that it "never indicated that its present compliance was based on the November 2005 Concept, nor did Scott ever receive evaluation credit for the ability to [redacted] Scott Reply at 14. On the contrary, the Air Force did not consider Scott's ability to [redacted] to be supported until Scott cited the relaxed requirements of the November 2005 draft Concept as the basis for its [redacted]

In its initial proposal, although Scott's proposed [redacted] requirements and presented [redacted] it claimed that this is [redacted] AR 1228; *see also* AR 1362 ("Scott is [redacted]

[redacted]). The Air Force was not convinced and [redacted] noting that its [redacted] to meet the requirements. AR 1172. In its initial [redacted], Scott explained in more detail the [redacted] that contributed to its [redacted] and stated that it would [redacted] AR 1161. A mere two weeks later, Scott submitted a [redacted] on [redacted] which finally claimed that [redacted] AR 1124. The Air Force relied on [redacted] referencing the November 2005 draft Concept to [redacted] Scott's Subfactor [redacted] rating [redacted] to [redacted] and eliminated Scott's [redacted]. AR 1495.

Finally, for Scott now to contend that the RFP was ambiguous as to which draft Concept would be applied is disingenuous at best. Scott Reply at 15-17. As Scott plainly states in its Motion, "the Air Force, under the RFP, was required to evaluate whether the offerors' proposed designs 'me[t] and/or exceed[ed] all minimum requirements' of the [November] 2005 Concept because it was the 'most current standard'." Scott Mot. at 18. The Air Force's evaluation was in fact consistent with Scott's interpretation. As the Air Force, Scott, and MSA all interpreted the requirement in the same way, there is no indication of ambiguity, let alone a latent ambiguity.

**B. MSA's Proposed Unit Complies with the RFP**

Contrary to Scott's arguments, MSA unequivocally committed to comply with all requirements, regardless of which NIOSH draft Concept was in effect. MSA stated [redacted] AR 518. MSA's commitment was clear and unconditional.

Also, MSA [redacted]. AR 466-67, 517-18. The Air Force



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

reasonably concluded that MSA would meet all the design requirements, and Scott has not even attempted to demonstrate how MSA's unit fails to comply with any standard.

Scott persists with its erroneous contention that MSA "admi[tted] [redacted] Scott Reply at 9. MSA makes no such admission. At most, in its proposal [redacted], MSA identified [redacted] AR 1042 (emphasis added). [redacted] are not noncompliances. Nowhere in MSA's proposal does it "admit" that its [redacted]. On the contrary, MSA made an unequivocal promise to meet all requirements. AR 518. Thus, MSA did comply with the requirements.

Moreover, contrary to Scott's suggestion, MSA proposed to comply with the November 2005 draft Concept in all respects.[6] AR 1027-28. Scott's only basis to argue otherwise is a statement in MSA's initial proposal [redacted] Scott Reply at 11; AR 1028. Of course, that was necessarily a [redacted] statement because the November 2005 draft Concept had not been released yet. Moreover, Scott is in no position to be critical. It promised far less:

[redacted]

---

6 Scott contends that the Air Force erred by failing to conduct a new evaluation of MSA following the issuance of the November 2005 Draft Concept. Scott Reply at 11-12. Yet, there was no need to, as MSA had already [redacted], AR 1027-28, and the revisions made to the standard were exactly as [redacted]. *Compare* AR 1027-28 *with* Scott Mot., App. B.

[redacted]

AR 1321-22 (emphasis added). The only [redacted] to which Scott refers [redacted] and the [redacted] AR 1321. Noticeably absent is the [redacted]. Further, Scott does not promise or even state that it [redacted].

### C. Under Any Version of the Draft Concept, MSA's Proposed Unit Is Superior

Regardless which Draft Concept applied, MSA's proposed unit is superior to Scott's. MSA's technical advantages would not be eliminated by the application of a more stringent or lenient version of the draft Concept. As Scott fails to explain, the requirements would be changed equally for both offerors. If the bar is set lower, both offerors' proposals would be stronger in comparison to the requirements but would not change relative to each other. Irrespective of which set of requirements are applied, MSA's unit would be superior. For example, MSA's [redacted], *compare* AR 1325 *with* AR 649, and only MSA's unit has [redacted]. AR 1887. Accordingly, Scott has not, and cannot, establish that it was harmed as a result of the Air Force's evaluation. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005).

Most, if not all, of MSA's identified strengths, as well as its relative technical advantages over Scott, are products of proposal elements [redacted] AR 1887-88. Despite Scott's repeated representations to the contrary, the November 2005 draft Concept was not "selectively" applied. Scott Reply at 7, 15. Indeed, the November



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

2005 draft NIOSH CBRN PAPR Concept only selectively changed the June 2005 version, in particular, with regard to the relaxation of the flow/breathing rate requirements.

Finally, as the Air Force and MSA explained in detail, Scott's unit is not only [redacted] than MSA's, but this difference is a product of Scott's own business decisions – a point that Scott has not rebutted. Of particular note is its choice of [redacted] even though this [redacted]. Gov't Mot. at 14-15; MSA Mot. at 19-20, AR 1322. Further, Scott acknowledges that it could have [redacted] based on such simple design changes as [redacted]; however, Scott could have, but declined, to submit a final proposal revision after the November Draft Concept was issued. AR 1114-15; Scott Mot. at 22-23 n. 12, 24.

In sum, Scott's arguments that the Air Force misevaluated the proposals in its application of the draft NIOSH Concepts are wholly without merit.

## III. <u>The Air Force Reasonably Determined that MSA's Proposal Satisfied the Maintenance and Warranty Requirements</u>

In its contentions regarding the maintenance and warranty requirements, Scott shifts to new arguments, again relying heavily on misquotes and mischaracterizations of both the Government's and MSA's positions. Remarkably, Scott states that *MSA* (or the Government or both) stated that the RFP requires that Air Force personnel be currently (*i.e.*, as of the date of the proposal) "licensed" to perform warranty repairs, that without such a license, the unit is not "field maintainable," and that MSA had [redacted] Scott Reply at 4.

These assertions bear no resemblance to MSA's actual arguments. In its motion, Scott contended that MSA's unit is not "field maintainable." Scott Mot. at 25. MSA cited numerous



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

excerpts from MSA's [redacted] MSA Mot. at 24; AR 635, 650. Also, Scott argued that MSA's warranty [redacted]. Scott Mot. at 25-26. MSA noted that its [redacted] AR 558. Scott's characterizations of MSA's positions are made of whole cloth.

Moreover, Scott's surprising new arguments strain the RFP language and ignore the difference between maintenance and repairs. As the Government succinctly explained in its response to Scott's motion to compel, "in the industry, there is a distinction between field maintenance," and "repair" by authorized service personnel. *See* Exh. A hereto. "Field maintainability" refers to the day-to-day field maintenance, whereas "repairs" refers to fixing the unit when it breaks. *Id.* The RFP required MSA's unit to be field maintainable, AR 55, [redacted]. AR 635, 650. The RFP required MSA to provide its standard commercial warranty, AR 20, [redacted]. AR 518, 558. That was all that the RFP required.

No particular warranty terms were required. MSA's [redacted] AR 558. Although MSA's warranty [redacted] the RFP did not require a warranty to provide that.

Scott suggests that MSA's unit is not [redacted] because Scott mistakenly assumes that MSA's warranty [redacted]. The warranty simply does not say that. In fact, the warranty [redacted] AR 558. *See also* AR 975, 987, 1001. [redacted]

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

[redacted] AR 558.

Moreover, the record shows that during the procurement Scott did not interpret the RFP [redacted] Scott did not [redacted]. The only [redacted] of Scott's warranty in its proposal [redacted]:[7]

> [redacted]

AR 1305; *see also* AR 1363. Scott cannot claim that this language demonstrates that its warranty [redacted]. Scott's argument has been waived, because an offeror may not protest an award decision by asserting an RFP interpretation it did not adopt during the procurement. *Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 726-28 (2004), *aff'd,* 404 F.3d 1346 (Fed. Cir. 2005).

Scott also claims that MSA's warranty imposes extra costs on the Air Force to [redacted] Scott Reply at 5-6. However, as MSA's unit is fully [redacted]

---

7 [redacted]. *Compare* AR 1305 *with* AR 1363.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted], this argument is without merit. MSA's product is fully [redacted].[8]

In any event, Scott misreads MSA's proposal. MSA committed to provide all the items necessary [redacted] within its CLIN prices – [redacted] *See* AR 418-49 (CLIN 7), AR 424 [redacted]).[9] As to costs for warranty repairs, Scott erroneously relies on a [redacted] AR 416-424. [redacted].

---

8 For that reason and others, the cases cited on page 6 of Scott's brief are inapposite. Scott cites to two case that address nothing more than the consequences of an offeror's clear failure to comply with a mandatory technical requirement. Scott Reply at 6 (citing *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365 (Fed. Cir. 1999) and *Beta Analytics Int'l Inc. v. United States*, 44 Fed. Cl. 131 (1999)). In contrast, MSA complies with both RFP requirements at issue. Further, *Tel-Instrument Elec. Corp. v. United States*, 56 Fed. Cl. 174 (2003), which Scott contends is "dispositive" because the offeror was declared ineligible for qualifying its warranty, addresses circumstances where the RFP required offerors to provide their "standard commercial warranty," yet the awardee added new limitations to its standard warranty. Here, MSA included [redacted]. Finally, Scott also cites to *Dubinsky v. United States*, 43 Fed. Cl. 243 (1999), yet the RFP in *Dubinsky* contained specific, mandatory terms and conditions for offerors' proposed warranties (unlike this RFP), with which the awardee failed to comply.

9 There is no CLIN for training classes, the RFP did not require prices for training, and Scott did not [redacted]. AR 1134-42.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

In sum, Scott's arguments regarding warranty and maintenance are wrong, and they are based upon [redacted]. Scott's arguments must be rejected.

## IV. <u>The Air Force Evaluation of Risks and Price/Cost were Reasonable, Consistent with the RFP, and Supported by the Record</u>

In MSA's opening brief, MSA demonstrated that the Air Force adhered to the RFP in the Cost/Price factor evaluation and the Proposal Risk factor evaluation. In its Reply, Scott continues to claim that the Air Force did not evaluate certain warranty costs, but as MSA has demonstrated both before and in the present brief, all the elements needed to [redacted] were included in MSA's prices, and there was no cost for MSA to perform [redacted].

To the extent that Scott contends that there will be additional costs arising out of MSA's warranty, Scott has not offered any proof that its own warranty presents no added costs to the Air Force, because Scott did not include [redacted] in its proposal. Further, while there is conflicting information in Scott's proposal about [redacted] its warranty, there is no question that MSA [redacted]. *Compare* AR 1305, 1363 *with* AR 558.

Finally, the methodology that the Air Force stated it would use to perform the Cost/Price evaluation was laid out in detail in the RFP (AR 35-36) and the Air Force followed that methodology. Scott knew exactly how the Cost/Price evaluation would be performed, and did not protest those RFP terms. *See, e.g.,* AR 1363 (noting in Scott's proposal risk matrix that [redacted]"). Having participated in the procurement on those RFP terms,



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Scott has waived any argument that the Cost/Price evaluation should have proceeded differently. *Bannum, Inc.*, 60 Fed. Cl. at 726-27.

With regard to "life cycle costs," Scott appears to concede that such alleged costs may not be considered in the Cost/Price evaluation, because the RFP did not provide for evaluation of life cycle costs. Scott Reply at 21. Scott nonetheless argues that the Air Force failed to assess the risk of added life cycle costs. This is a distinction without difference and is an effort to convert a firm fixed *price* contract and evaluation into a life cycle *cost* evaluation.[10]

The Air Force had ample basis to conclude that MSA's proposal presented low proposal risk, based upon MSA's [redacted]. AR 1492-93. Scott's challenge to the proposal risk assessment is without merit and should be denied.[11]

## V. The Air Force Adhered to the Evaluation Process in the RFP and Treated Offerors Equally

Scott contends that its proposal included strengths similar to those in MSA's proposal, but Scott was not given credit in the evaluation for them. Scott Reply at 24-28. Scott further claims that but for this error, it should have been [redacted] *Id.* Scott's arguments have no merit and even fail to track the evaluation process accurately. *ITT*

---

[10] Contrary to Scott's contentions, MSA did not state in its proposal that [redacted]. AR 1042. Also, MSA's risk matrix does not state that [redacted]. For a firm-fixed-price contract, the risk of design and development cost growth is on the contractor. *Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1579 (Fed. Cir. 1997). Scott's [redacted]. AR 59-66.

[11] Scott offers no new arguments regarding evaluation [redacted] (Scott Reply at 23, n. 13), so those arguments should be rejected.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

*Fed. Servs. Corp. v. United States*, 45 Fed. Cl. 174, 187-88 (1999) (rejecting protester's argument "that the agency understated its technical superiority by failing to assign blue ratings for those factors in which the SSET had identified numerous strengths").

Both the Air Force and MSA cited the specific components in MSA's proposal that formed the basis for the Air Force's conclusions as to MSA's relative superiority. As articulated in the SSDD, "MSA's proposal provided a better SCBA than that proposed by Scott. It is [redacted] AR 1888. Contrary to Scott's contention, the record shows that the SSA did not "mechanically rely" on MSA's blue ratings. Scott Reply at 26. The SSA detailed the specific discriminators that led him to choose MSA. In particular, under Subfactor 2, MSA's blue rating was based on [redacted]. AR 1887. Under Subfactor 3, MSA's blue rating was based on [redacted]. AR 1887.

Scott still contends there is error because there is no evidence that the SSA "considered" Scott's strengths. Scott Reply at 26. This assertion reveals Scott's fundamental misunderstanding of the SSA's discretion. MSA's proposal features cited in the SSDD reflect the discriminators that the SSA found significant [redacted]. The SSA is not required to parrot back and agree with all of the findings of the technical evaluators. FAR 15.308 ("While the SSA may use reports and analyses prepared by others, the source selection decision shall represent the SSA's independent judgment.") If the SSA did not mention a strength found by the evaluators, it was because the SSA did not find that strength significant enough to discriminate between the proposals, or because both offerors shared that strength, so it was not a discriminator. *See Hydro Eng'g, Inc. v. United States*, 37 Fed. Cl. 448, 467 (1997)

("Technical ratings are aspects of the procurement process involving discretionary determinations of procurement officials which a court should not second guess.")

Scott's contention that it shares strengths identified by the SSA in MSA's proposal is wrong. As MSA previously explained:

[redacted]

- Scott's contention that Scott and MSA were evaluated unequally with regard to [redacted] is simply wrong. Both offerors received [redacted] during the technical evaluation, AR 1492, 1495, and it was ultimately not cited by the SSA as a justification for MSA's blue rating. AR 1887.

Scott does little more in its Reply than repeat verbatim arguments in its original Motion that the Air Force and MSA have already refuted. *Compare* Scott Mot. at 35 *with* Scott Reply at 27 (reciting verbatim three of the four bullets from Scott's original motion addressing these purported shared strengths).

---

12 Although Scott cites to evaluator notes to support its claim, the pages cited do not reflect this feature. Scott Mot. at 35; AR 2317-18. Similarly, even though Scott finally cites to its proposal purportedly to support its assertion that it proposed this feature, again, the cited pages are inapposite. Scott Reply at 26 n. 14; AR 1314-15. Further, Scott admits [redacted]

Finally, contrary to Scott's contentions, its [redacted] were taken into account by the evaluators. Scott's ratings [redacted]. There were *no* [redacted] dropped following the initial evaluation. Scott Reply at 27. Specifically, *all* areas from Scott's proposal under Subfactors 2 and 3 noted as [redacted] are stated identically in the final technical evaluation. *Compare* AR 2344-46 (initial evaluation) *with* AR 1494-95 (final evaluation). Scott does not even attempt to demonstrate that those [redacted] *required* the Air Force to evaluate its proposal [redacted] much less that those "strengths" rendered Scott's proposal technically equal to that of MSA.

## VI. <u>Scott is Not Entitled to Equitable Relief</u>

Finally, Scott has not refuted either MSA's or the Government's demonstration that it is not entitled to equitable relief. As MSA explained, Scott must still prove entitlement to injunctive relief even if it could prevail on the merits (which it cannot do). Because Scott has not carried its burden, the Court should deny Scott's request for equitable relief.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant-Intervenor MSA respectfully requests that the Court deny the Motion for Judgment filed by Scott and enter judgment or dismissal with prejudice.

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

Respectfully Submitted,

s/ Thomas P. Humphrey, Esq.
Counsel of Record
Elizabeth W. Newsom, Esq.
Amy E. Laderberg, Esq.
Rebecca K. Lee, Esq.
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel. (202) 624-2500
Fax (202) 628-5116

Counsel for Mine Safety Appliances Company

Of Counsel:
Brian T. McLaughlin

Dated: August 25, 2006



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**CERTIFICATE OF FILING**

I hereby certify that on the 25th day of August, 2006, the foregoing Defendant-Intervenor Mine Safety Appliances Company's Reply to Scott Health & Safety's Response to MSA's Cross Motion for Judgment on the Administrative Record was filed electronically. This filing will be available to all parties by operation of the Court's electronic filing system.

Courtesy service was also provided at the following addresses:

Dorie Finnerman, Esq.
Trial Attorney
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

Rand L. Allen, Esq.
Daniel P. Graham, Esq.
Wiley, Rein & Fielding LLP
1776 K Street, N.W.
Washington, D.C. 20006

David R. Hazelton, Esq.
Latham & Watkins
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004

s/ Thomas P. Humphrey