**AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| **INTERSPIRO, INC.,**<br><br>**and**<br><br>**SCOTT TECHNOLOGIES, INC.,**<br>**d/b/a/ SCOTT HEALTH & SAFETY,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant,**<br><br>**and**<br><br>**MINE SAFETY APPLIANCES CO.,**<br><br>**Defendant-Intervenor.** | **Civil Action No. 06-425C**<br>**(Judge Firestone)** |

**PLAINTIFF INTERSPIRO, INC.'S REPLY IN SUPPORT OF ITS MOTION TO CORRECT AND SUPPLEMENT THE ADMINISTRATIVE RECORD**

Pursuant to RCFC 5.2(a)(3), Plaintiff Interspiro, Inc. ("Interspiro") submits this Reply in support of Interspiro's Motion to Correct and Supplement the Administrative Record ("Motion"). Interspiro will not repeat points that it made previously in connection with the Motion. Instead, Interspiro wishes to address certain factual assertions in Defendant's Opposition to Interspiro's Motion ("Def. Opp.") which appear to reflect a basic misunderstanding of the facts.

First, Defendant makes the inaccurate assertion that that the Administrative Record ("AR") as filed by Defendant "contains the documents described in paragraph 22 of Appendix C

of the Rules of the Court of Federal Claims, and Interspiro does not contend otherwise." Def. Opp. at 4. The reality is that the AR filed by Defendant fails to include all of the materials published by the Air Force in Federal Business Opportunities in connection with this procurement. Nor does the AR include any of the communications between interested parties and the agency in connection with this procurement. As pointed out at page 2 of Interspiro's Response to the Court's August 9, 2006 Order, Appendix C to the Court's Rule provide for such materials to be included in the AR. See RCFC Appendix C ¶¶ 22(d) and (i).

Second, although Defendant argues against including materials generated as part of the Air Force's market research in the AR, its own statements document that industry input is highly relevant to this procurement. Defendant specifically acknowledges specifically: "Industry sources were an important aspect of this research. . . ." Def. Opp. at 5. Indeed, Defendant's Opposition goes on for several paragraphs describing the input that the Air Force received from industry and how industry input affected this procurement. Id. at 4-6. Defendant's own statements thus document the relevance of these materials.

Third, Defendant asserts incorrectly: "The RFP does not permit the Government to take into account any representations made by the offeror other than representations set forth in an offeror's proposal or in its two-hour orientation/instructional session for the Air Force." Id. at 6. In reality, the RFP provides for the use of market information not specifically included in offeror's proposals. See, e.g., AR 30 (RFP's provision that "[t]he Government will use data provided by each offeror" and "may use data obtained from other sources"); AR 34 ("RFP's provision that "[i]nformation utilized may be obtained from the references listed in the proposal, as well as from other sources known to the Government."). [redacted]

[redacted][1] If the RFP in fact precluded the Air Force from considering information outside of proposals as now urged by Defendant, then this would be yet another example of the Air Force's violation of the RFP's requirements. The bottom line is that, unless Defendant is prepared to admit that the Air Force's evaluation violated the RFP's requirements by considering information outside offerors' proposals, the AR should include all of the market information provided to the Air Force as part of the procurement process.

Fourth and finally, Defendant ignores critical facts when arguing that the original draft RFP was for a Three-Mode SCBA. See Def. Opp. at 6-9. The facts ignored by Defendant include:

> (a) Both the draft RFP and final RFP contained a "Schedule" of the specific items being procured by the Air Force. In the final RFP's Schedule, the Air Force states that the items being procured are "SCBA with PAPR," "SCBA without PAPR," and "PAPR only." AR 7-14. The draft RFP's Schedule does not provide for the procurement of PAPRs. Supp. AR, Tab 30, 2453-58. Without a PAPR, an SCBA can only operate in a single mode. A straightforward comparison of the draft and final Schedules documents that only the final Schedule could have involved the procurement of a Three-Mode SCBA.
>
> (b) The Air Force's draft Performance Specification provided specifically that an offeror could propose two separate masks--one used for compressed air (i.e., the SCBA only mode) and one used for filtered air (i.e., the PAPR and APR modes). Supp. AR, Tab 24, 2407. As the Air Force explained in its Q&As issued to

---

[1] See also Defendant's Cross-Motion for Judgment Upon the Administrative Record and Opposition to Plaintiff's Motions for Judgment Upon the Administrative Record at 29 [redacted]

> prospective offerors, "it is impossible for a wearer to switch masks without ambient exposure." Supp. AR, Tab 28, 2445 (Q&A 15). The draft Performance Specification, read in its entirety, thus conflicts with the Air Force's position.
>
> (c) Indeed, in the final Purchase Description, the Air Force stated specifically that it was changing the mask requirement to a "one dual purpose mask configuration" where the wearer used one mask for all modes of operation (rather than having to remove one mask and put on another mask, which exposes the wearer to ambient contaminants). Id. at 2445-46. This change would not have been necessary if, as Defendant imagines, there always had been a requirement for a Three-Mode SCBA.
>
> (d) The Air Force's final Purchase Description also added new provision requiring three different modes of operation: "1.) SCBA only mode, 2.) SCBA and [APR] selectable mode, and 3.) SCBA and [PAPR] selectable mode." AR 38. It also added a new provision requiring that: "The wearer shall not be exposed to inhalation, absorption, or ingestion contamination when transitioning from SCBA to APR or PAPR mode." AR 43.

If the draft RFP and draft Purchase Specification required a Three-Mode SCBA as Defendant now suggests, then the obvious question is why were the final RFP and final Purchase Description revised as described above. The answer to this question requires considering the FBO materials and industry input that Defendant now seeks to exclude from the AR. All of the changes identified above to the draft RFP and draft Purchase Specification were made only after, in response to the Air Force's requests for industry input, Interspiro provided information and documentation that it had developed and manufactured Three-Mode SCBAs. It is also noteworthy that the Air Force has identified no possible explanation for these changes to the RFP and Purchase Description other than the Air Force's determination based on Interspiro's input that Three-Mode SCBAs were available in the marketplace.

For the reasons set forth above and in its prior submissions, Interspiro respectfully requests that the Court grant its Motion to Correct and Supplement the Administrative Record.

Dated: August 31, 2006

Respectfully Submitted,

David R. Hazelton, Esq. (Counsel of Record)
Joshua K. Chandler, Esq.
LATHAM & WATKINS LLP
555 11th St., N.W., Suite 1000
Washington, D.C. 20004-1304
Direct Dial: (202) 637-2254
Facsimile: (202) 637-2201
David.Hazelton@lw.com
Joshua.Chandler@lw.com

Attorneys for Plaintiff Interspiro, Inc.

Of Counsel:
Kevin A. Russell, Esq.
Kyle R. Jefcoat, Esq.
David P. Palmer, Esq.
LATHAM & WATKINS LLP