AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| **INTERSPIRO, INC.,**<br>**Plaintiff,**<br>**v.**<br>**UNITED STATES,**<br>**Defendant,**<br>**and**<br>**MINE SAFETY APPLIANCES, INC.,**<br>**Defendant-Intervenor.** | **CASE NO.06-425C**<br>**(Judge Firestone)** |

# SECOND AMENDED COMPLAINT OF PLAINTIFF, INTERSPIRO INC.

1. Plaintiff Interspiro, Inc. ("Interspiro") protests the actions of the Air Force Materiel Command ("Air Force") in connection with the award of a fixed-price requirements contract to Mine Safety Appliances Company ("MSA") pursuant to Request for Proposals No. FA8532-05-R-76133 ("RFP"). The Air Force made the award to MSA at an evaluated price of $35,995,298. [redacted] For these and other reasons set forth in this Complaint, Interspiro respectfully submits that the Air Force's actions were arbitrary, capricious and contrary to law. See 28 U.S.C. § 1491(b)(4) incorporating by reference 5 U.S.C. § 706.

## PARTIES

2. Interspiro is incorporated under the laws of Connecticut with its principal headquarters located at 10225 82nd Avenue, Pleasant Prairie, Wisconsin, 53158. Interspiro is the incumbent contractor to the Air Force for a respiratory unit known as the Self Contained Breathing Apparatus ("SCBA"), as well as related items. It has provided SCBAs and related items to the Air Force for the past ten years.

3. The Air Force is a U.S. Government agency conducting a procurement for SCBA units with a powered air purifying respirator ("PAPR") configuration. The Contracting Officer for the Air Force responsible for the RFP is Lauren Farrell who is located at 642 CBSSS/GBZO-PKBB, 380 Richard Ray Blvd., Suite 104, Robins AFB Georgia 31098-1640.

## JURISDICTION

4. Jurisdiction in this court is proper under 28 U.S.C. § 1491(b). Interspiro alleges that an Executive Department of the United States Government evaluated proposals and engaged in other conduct that was arbitrary, capricious, and in violation of one or more statutes or regulations governing this procurement, including 10 U.S.C. § 2305(a)(2)(A)(i) (stating that a solicitation shall at a minimum include "a statement of . . . all significant factors and significant subfactors which the head of the agency reasonably expects to consider in evaluating [proposals]"); 10 U.S.C. § 2305(b)(1) (stating that "[t]he head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation"); and FAR § 12.602(b) ("Offers shall be evaluated in accordance with the criteria contained in the solicitation").

## FACTUAL BACKGROUND

### A. Overview of Air Force's RFP

5. At present, the Air Force uses two types of systems for assisting the breathing of persons who are subject to contaminated air. First, SCBAs are powered respirators that feed compressed (e.g. bottled) air to a tight fitting mask, or other conduit to the mouth and/or nose, for inhaling by the user. These systems do not permit user access to the ambient atmosphere at all. Second, there are filter/decontamination systems for use in the form of a canister, in connection with a respirator apparatus that rely on cleaning ambient atmosphere to make it suitable for breathing. Such filter systems may or may not make use of auxiliary power. In powered systems, ambient atmosphere is sucked through a suitable filter/decontamination means, or other purifying means, by a powered fan or the like. The purified resultant air is fed to a headpiece of some kind, such as a tight fitting facemask. The complete powered system is known as a Powered Air Purifying Respirator ("PAPR"). While a powered air supplying means, such as a battery operated pump/fan, is usually preferred, air cleaning systems that are not powered by external means also can be used. In these unpowered systems, the user's lung power provides the necessary impetus to force contaminated air through the cleaning element and feed it to the user. These unpowered systems are generally referred to as Air Purifying Respirators ("APR").

6. PAPR or APR systems will protect against contaminants as long as the oxygen level in the purified air is above 19.5 percent by volume. In practical effect, these systems have been designed to use replaceable filter(s) and air purifying canister(s). However, PAPR and APR are of no value where the ambient atmosphere has an oxygen content that is less than 19.5% by

volume. Other situations may exist where the ambient atmosphere is so contaminated that the APR or PAPR cannot handle the problem. In contrast, the SCBA can be used in any environment. However, wearers of SCBA must carry their air supply, which significantly limits how much air can be safely carried – typically no more than a 60 minute supply. Thus, the systems have differing advantages and disadvantages. Most significantly, the PAPR or APR may be used for a longer period of time, but the SCBA can be used in situations where the PAPR or APR would be ineffective.

7. The RFP provides for the supply of both SCBA and PAPR units and related items.

8. In addition, the RFP requires the successful offeror to provide combination SCBA/PAPR units. This requires a mask that functions in (a) SCBA mode, providing supplied air from a tank; (b) PAPR mode, providing filtered ambient air with the help of a blower apparatus; and (c) APR mode, allowing a user to breathe filtered ambient air using only lung power if the blower is turned off. The RFP requires that the system be designed to allow a user to switch from SCBA mode to PAPR mode to APR mode with no exposure to ambient air. See Administrative Record ("AR") at 43. It also requires that system allow at least 24 hours of continuous use in hazardous conditions. Id.

9. The RFP, which is 33 pages long, provides for a Commercial Item acquisition under Part 12 of the Federal Acquisition Regulation ("FAR"). Its first two pages are Standard Form ("SF") 1449 entitled "Solicitation/Contract/Order for Commercial Items." RFP at 1-2. Following SF 1449 is the RFP's "Schedule" on which the offeror is to propose prices for the items being procured for the Base Contract Period (the 12 months following the contract's effective date) and Options I through IV (each for a successive 12-month period). Id. at 3-10.

10. The next section of the RFP is entitled "Contract Clauses." Id. at 11-21. This section contains a variety of standard contract terms, including:

> (a) "52.212-5 Contract Terms and Conditions Required to Implement Statutes or Executive Orders-Commercial Items." Id. at 11-13. The heading to this subsection explains that it is included "IAW [in accordance with] FAR 12.301(b)(4)." Id. at 11. FAR 12.302(b)(4) provides that the clause at 52.212-5 "may not be tailored" and that it "incorporates by reference only those clauses required to implement provisions of law or executive order applicable to the acquisition of commercial items."
>
> (b) "252.212-7001 Contract Terms and Conditions Required to Implement Statutes or Executive Orders Applicable to Defense Acquisition of Commercial Items. Id. at 14. The heading to this subsection explains that it is included "IAW [in accordance with] DFARS 212.301(f)(iii)." Id. Department of Defense FAR Supplement ("DFARS") 212.301(f)(iii) provides for the use of the clause at 252.212-7001 "in all solicitations and contracts for commercial items."

11. The "Contract Clauses" section is followed by a "List of Documents, Exhibits or Attachments" (id. at 21) and "Solicitation Provisions, Representations, Instructions and Evaluations." Id. at 22-33.

12. Under the heading "Evaluation Basis for Award," the RFP provides in part:

> The Government intends to award one contract as a result of this RFP. Award will be made to the responsible offeror whose proposal conforms to all solicitation requirements such as terms and conditions, includes all required representations and certifications, meets all requirements set forth in the RFP, and represents the best value to the Government in accordance with paragraph 3 in this provision.

Id. at 27-28.

13. While the RFP notes that "professional judgment is implicit throughout the selection process," it also requires that the Government evaluators "strive for maximum objectivity" and provides for the following Evaluation Factors and Subfactors:

Factor I: Mission Capability

Subfactor One: Certifications and Test Data
Subfactor Two: Field Evaluation

Subfactor Three: SCBA Design Approach
Subfactor Four: Program Production Plan

Factor II: Proposal Risk

Factor III: Present and Past Performance

Factor IV: Cost/Price

Factor V: Small Business Participation

Id.

**B. The Air Force Failed to Consider that Interspiro Developed and Has Patents Pending on the SCBA/PAPR Technology**

14. A review of the Administrative Record ("AR") reveals that the Air Force failed to take into consideration that Interspiro developed the SCBA/PAPR combination technology and has patents pending on this technology. Indeed, as documented below, it was only after Interspiro briefed the Air Force on its technological breakthrough that the Air Force modified this procurement to include SCBA/PAPR combination units. The Air Force's Source Selection Decision, however, ignores these and other critical facts.

15. Interspiro is the incumbent provider of SCBAs to the Air Force. In the mid 1990's, the Air Force contracted with Interspiro to develop a SCBA mask that could also be used in conjunction with a standard military issue C2A1 canister for breathing filtered air. The product which resulted from this effort was the Chemical Warfare ("CW") kit. Interspiro has produced thousands of CW kits as part of its contract for SCBA supply to the Air Force. Other federal organizations have also purchased the CW kit to support personnel in high threat environments.

16. Interspiro approached the National Institute for Occupational Safety and Health ("NIOSH") to obtain approval for the CW kit. However, NIOSH declined, because at that time

there was no standard that could form the basis for approving a combination filter and SCBA mask.

17. In April 2001, NIOSH and the United States Army Soldier & Biological Chemical Command ("SBCCOM") co-sponsored a Weapons of Mass Destruction ("WMD") conference to explore new technology solutions for responders in WMD environments. Interspiro presented a paper entitled "Interspiro Chemical Warfare Kit: Combination Filter and SCBA Device." After the meeting, the NIOSH Director approached Interspiro to express interest in developing a standard to allow CW kits to obtain NIOSH approval.

18. In 2002, Interspiro met with personnel from Air Force Civil Engineer Support Agency ("AFCESA") in Florida to review the Air Force's user experience with Interspiro SCBA and CW kit. The Air Force stated that it was pleased with the SCBA but found breathing through the C2A1 canister, when operating in filtered air mode, to be difficult. Interspiro promised to look into the matter and develop a solution.

19. Later in 2002 and continuing into early 2003, Interspiro developed the SCBA/PAPR combination technology that would provide breathing assistance to Air Force and military personnel when operating in filtered air mode. Interspiro developed prototypes for confidential disclosure to, inter alia, the Marine Corps Chemical-Biological Incident Response Force ("CBIRF"), the Army's Technology Safety Working Group ("TSWG"), and the Air Force, the intended launch customers.

20. In April 2003, Interspiro applied for a patent on the SCBA/PAPR combination technology it had developed, in advance of the first public display of the concept, which took place at the Terrorism Preparedness and Response Symposium in New Orleans June 2-4, 2003.

Later in 2003, Interspiro presented the concept of the SCBA/PAPR to NIOSH. NIOSH then added the SCBA/PAPR concept to its list of future standards to be promulgated.

21. On August 11, 2004, the Air Force issued a Market Research Questionnaire for the SCBA purchase at issue in this protest. See Ex. F, Air Force SCBA Market Research Questionnaire. This questionnaire did not contain any mention of a SCBA/PAPR combination respirator.

22. On August 26, 2004, Interspiro provided its reply to the Air Force, which alerted the Air Force procurement team at Warner Robins AFB to Interspiro's SCBA/PAPR combination technology. See Ex. G, Intersprio Response to Air Force SCBA Market Research Questionnaire. That same month, Interspiro also briefed the Warner Robins SCBA Program office on SCBA/PAPR technology during the International Chiefs Conference in New Orleans. In response to Interspiro's explanation of this proprietary technology, the Air Force modified its purchase plan from "replacement SCBAs" to "SCBA with PAPR," "SCBA without PAPR," and "PAPR only," as set forth in the current RFP.

23. The Air Force ignored statements in Interspiro's proposal where Interspiro again told the Air Force that it had developed the SCBA/PAPR and that it had patents pending. See e.g. AR at 346, 368 & 384. Interspiro specifically told the Air Force that the risk of patent infringement was a risk with which the Air Force should be concerned. "Another area of risk that deserves disclosure is the commercial and legal issues involving SCBA integrated PAPRs. There are multiple patents issued and pending in PAPR technology that have complicated the design and sourcing of PAPRs." AR at 368. Interspiro put the Air Force on notice that patent infringement was a particular risk for the other proposals.

24. A review of the Administrative Record reveals that the Air Force failed to consider the existence of the pending patents or their potential effect on the RFP. For example, the Air Force failed to consider whether MSA's proposed solution would infringe Interspiro's pending patents. Nor did the Air Force consider the potential cost impact to MSA's proposal were MSA to negotiate royalty or license fees for the use of Interspiro's SCBA/PAPR combination technology. Furthermore, as a "commercial item" procurement, the RFP does not contain FAR clauses under which the Government could authorize or consent to another offerors infringement of a patent. Therefore, the Air Force should have considered the risks to MSA's proposal of meeting scheduled delivery requirements and the risk of not being able to produce MSA's product at all, because of potential failure to reach a royalty or licensing fee agreement with Interspiro. The Air Force failed to consider any of the risks associated with the pending patents filed by Interspiro.

25. Moreover, the Air Force failed to consider whether offerors were proposing "commercial items" even though the RFP repeatedly and emphatically designated this procurement as one for the Acquisition of Commercial Items. See ¶ 10, supra. Interspiro has developed and manufactured Three-Mode SCBA working products which readily can be modified to satisfy all specifications. [redacted]

26. In sum, the Air Force's source selection decision ignored critical facts related to Interspiro's unique position as the developer of the SCBA/PAPR combination technology, and the only manufacturer which could offer SCBA/PAPR products as "commercial items." Not only should the Air Force have credited Interspiro for the advanced state of its SCBA/PAPR technology and products, but it also should have taken into consideration the challenges – both legal and technical – confronting other offerors seeking to develop or utilize this technology.

**C.** [redacted]

27. Based on its evaluation of Interspiro's proposal, the Air Force reported no instances of noncompliance with the RFP's requirements. By letter dated January 12, 2006, the Air Force provided the "final proposal ratings" for Interspiro. The Air Force stated:

> The offeror is advised that the final evaluation ratings of the Mission Capability Factor are as follows:
>
> Subfactor One: [redacted]
> Subfactor Two:
> Subfactor Three:
> Subfactor Four:
>
> The Government's confidence level, [redacted] that the offeror will successfully perform the SCBA effort. The Government determined [redacted]

28. [redacted]

29. Regarding Proposal Risk, the RFP provides for three possible ratings. The best possible rating is "Low," then "Moderate," and finally "High." Id. According to the Air Force's January 16 letter, [redacted]

[redacted]

Id.

30. Interspiro has been manufacturing and supplying SCBAs and related items to industrial users, fire fighters and military agencies for several decades. It has been the supplier to the Air Force under its existing SCBA program for ten years. The Air Force's current RFP is based on an Interspiro design for a combination respirator (what the Air Force often identifies as an SCBA/PAPR). Interspiro has patents pending on critical elements of the SCBA/PAPR technology and products.

31. MSA has no experience as a manufacturer or supplier of SCBA/PAPRs at issue in the RFP. Indeed, in order for MSA to manufacture or supply SCBA/PAPRs to the Air Force, there would need to be a license agreement or other appropriate arrangement under which Interspiro would be paid appropriate fees and royalties. To date, there has been no discussion with Interspiro regarding such a license agreement or other arrangement under which MSA could supply or manufacture such SCBA/PAPRs.

**D. The Air Force's Determination of Interspiro's [redacted]**

32. In its notice of award, the Air Force reported that MSA's evaluated price was $35,995,298.

[redacted]

35. In addition to [redacted] there are other significant factors further increasing the costs associated with MSA's proposal. For example:

> a. As the incumbent contractor, Interspiro has an existing inventory of spare parts and accessories as well as the other resources to perform the required work (e.g., operating and training materials). MSA would have had to incur the additional costs (and associated risks) to establish the needed stockpile of spare parts, inventory and other resources.
>
> b. Interspiro has a patent pending on one or more SCBA-related items needed for any company to meet the RFP's specifications. Any use of potential items by MSA would require the negotiation and payment of license fees and royalties to Interspiro. Any unauthorized use by MSA would result in liability for mandatory damages for patent infringement.
>
> c. There are other substantial costs associated with migrating to a new source of supply for SCBAs and related items, such as retraining all Air Force firefighters. Because Interspiro is the incumbent SCBA supplier to the Air Force, its proposal does not result in such costs.

36. The RFP provided that the Air Force was to "award to the offeror who gives the Air Force the greatest confidence that it will best meet or exceed our requirements **affordably**." RFP at 27 (emphasis added). Further, in a section entitled "Evaluation Basis for Award," the RFP provides that a contract may only be awarded to a higher priced offeror where "the decision is consistent with the evaluation factors," and the Source Selection Authority ("SSA") "reasonably determines" that the technical factors "outweigh[] the cost difference." Id.

## E. The Air Force's Determination of a Need for Corrective Action

37. Interspiro previously filed bid protests at the U.S. Government Accountability Office ("GAO") regarding the Air Force's actions in connection with the RFP. Based on two protests filed by Interspiro (as well as a protest filed by another disappointed bidder), the Air Force made a determination that "corrective action" was necessary. The Air Force took this action before providing a copy of the Administrative Record in connection with proceedings before the GAO.

38. On March 20, 2006, the Air Force filed a Notice of Corrective Action stating in part:

> This confirms our oral notification to the GAO that the Air Force intends to take corrective action in the subject protests. The corrective action Air Force intends to take is as follows:
>
> > The Source Selection Authority (SSA) will reconsider the proposals, and will then issue a new Source Selection Decision Document. The Air Force will notify all parties after all the parties after the SSA has made his new decision.
>
> Accordingly, the Air Force requests the GAO dismiss the subject protests, as they are now academic.

See Exhibit ("Ex.") A hereto.

39. Based on the Air Force's promise to take corrective action, the GAO dismissed Interspiro's protests (Case Nos. B-297965 and B-297965.3) without addressing the merits of those protests. The GAO's one-page decision dated March 21, 2006, stated in part:

> We view the protests as academic because the agency has decided to take corrective action. By letter dated March 20, 2006, the Air Force states that the source selection authority "will reconsider the proposals, and will then issue a new Source Selection Decision Document." The agency further states that all parties will be notified of the new source selection decision.
>
> * * *
>
> Where, as here, an agency undertakes corrective action that renders a protest academic, it is not the practice of the Government Accountability Office to consider academic questions because to do so would serve no useful public policy

> purpose. Thus, the protests are dismissed. Dyna-Air Eng'g Corp., B-278037, Nov. 7, 1997, 97-2 CPD ¶ 132.

See Ex. B hereto.

40. Nearly a month passed before the Air Force provided further notice regarding its promised corrective action. In a notice dated April 18, 2006, the Air Force reported that it was reaffirming its award to MSA. See Ex. C hereto. The Air Force further refused to provide a debriefing or other explanation for its action because, according to the Air Force, it was not making a new award. Id. When Interspiro continued to press for further information, the Air Force further reported that it had not conducted an evaluation of proposals as part of the promised corrective action. Ex. D hereto.

41. On April 28, 2006, Interspiro made two new filings at the GAO. First, Interspiro requested that the GAO reinstate its prior protests (B-297965 and B-297965.3) or, alternatively, reconsider its dismissal of those protests as academic. Interspiro explained in its request that:

> The Air Force represented [in its March 20 request for dismissal] that, as part of this corrective action, it would "reconsider the proposals." It further represented that the protests were "academic" in light of its corrective action. However, contrary to its prior representation regarding corrective action, the Air Force now admits that "no new evaluations took place."
>
> * * *
>
> Significantly, the corrective action actually taken by the Air Force could not possibly render "academic" these grounds for protest because, as the Air Force now admits, there was "no new evaluation" of proposals. The Air Force appears to have been disingenuous, at best, in its prior representations to the GAO and protesters. This lack of candor is apparent, for example, in its April 18 notice reaffirming its award to Mine Safety Appliances Company. It stated that "the SSA reconsidered all six proposals" in a manner that "adhered to the evaluation methodology identified in the RFP provision 'Evaluation Basis for Award.'" Only when the Air Force tried to come up with an excuse for not providing a debriefing to Interspiro did it disclose that, in reality, "no new evaluations took place." (Internal citations omitted).

42. Also on April 28, 2006, Interspiro filed a new protest (B-297965.6) challenging the Air Force's actions both in connection with its April 18 notice and in continuing without correcting its prior actions.

43. Although the Air Force made a series of procedural filings at the GAO in connection with Interspiro's new protest, it did not provide a copy of the Administrative Record or other substantive discussion of the protest grounds raised by Interspiro. Instead, the Air Force sought to avoid and delay providing any meaningful materials on the merits of Interspiro's protest grounds. Further, based on actions and statements by a GAO representative (including statements during a conference call with the parties on Wednesday, May 24), Interspiro was concerned that would not receive the full Administrative Record through the GAO protest process.

44. For these and other reasons, Interspiro is bringing this matter to this Court in the hope of a full and fair adjudication of the substantive issues raised by Interspiro.

**F. A Proper and Reasonable Evaluation of Proposals Consistent with the RFP Would Have Resulted in an Award to Interspiro**

45. Interspiro's [redacted] in light of the RFP's requirement for "affordability" and mandate that a higher priced offeror may be selected only where "the decision is consistent with the [RFP's] evaluation factors and the Source Selection Authority (SSA) reasonably determines that the technical superiority and/or overall business approach and/or superior past and present performance at the higher price offeror outweighs the cost difference." RFP at 27. Moreover, in any best value procurement (especially one for "commercial items" as in this case), price is a critical and often dispositive consideration.

46. Based on the RFP's evaluation factors, there is no reasonable basis for the Air Force's decision [redacted] Moreover, as documented below, a proper evaluation of Interspiro's and MSA's proposals should have resulted in ratings for Interspiro under the RFP's evaluation factors either better than or equal to MSA's ratings. [redacted]

47. The RFP identifies only five evaluation factors. RFP at 27. In addition to "Cost/Price," the other four factors are "Mission Capability," "Proposal Risk," "Present and Past Performance," and "Small Business Participation." Id. These non-price factors are discussed below.

### 1. <u>"Mission Capability" Evaluation Factor</u>

48. In the area of "Mission Capability," the Air Force specifically advised Interspiro that it met all specified requirements and had no deficiencies (as discussed in Part B above). As explained below, a review of the subfactors under "Mission Capability" documents that Interspiro should have received a better rating under each of these subfactors--and certainly not a lower rating--than MSA.

49. The first subfactor under Mission Capability is Certification and Test Data. The RFP provides that this "is met when the proposal provides the required certifications and test data . . . [which] clearly demonstrates that the information meets or exceeds the requirements in a way beneficial to the government." Id. Interspiro provided the requested information, and the Air Force found that Interspiro's proposal met or exceeded the requirements. The RFP specifies that

the Air Force "will not conduct field tests" on any units lacking this information. Id. Interspiro clearly met this subfactor by providing all required certifications and test data. In contrast, MSA had to rely on an unproven SCBA/PAPR design. Under a reasonable application of the RFP's terms, Interspiro should have received a better rating under this subfactor--and certainly not a lower rating--than MSA.

50. The second subfactor, Field Evaluation, concerns whether the mask functions in both filter and supplied air mode. Interspiro pioneered this concept, and has an existing product which it can use with only minor modification to meet the government's needs, while MSA and other competitor's products are still in development. To the extent that MSA surpassed Interspiro in field evaluation, the extra risk inherent in development of totally new products meeting the specifications should have been factored into the analysis of the field results. [redacted] Interspiro's product met or exceeded all of the government's requirements (not surprisingly, as it is the incumbent). Under the RFP's terms, Interspiro should have received a better rating--and certainly not a lower rating--than MSA under this subfactor.

51. The third subfactor, SCBA Design Approach, also should have favored Interspiro because the Air Force could use existing tool kits, existing spare parts inventories, and existing carbon cylinder inventories with Interspiro's products, but not with MSA's or those of other

offerors. The RFP explicitly provides that the Air Force will consider "filter information" and "tool kits" in analyzing this factor. RFP at 28. MSA has an unproven SCBA/PAPR design that necessarily infringes upon Interspiro's patents. [redacted] Under the RFP's terms, Interspiro should have received a better rating--and certainly not a lower rating--than MSA under this subfactor.

52. The fourth subfactor, Program Production Plan, also should have favored Interspiro. Not only does Interspiro have a ten-year history to demonstrate its Program Production Plan, but it also has had time to take steps to improve production and its production plan. MSA has never

produced the SCBA/PAPR at issue in the RFP. MSA's Program Production Plan is therefore theoretical only. MSA would need time to work out problems with its plan as implemented. MSA also would have to procure many items that Interspiro already has in its inventory (cylinders, tool kits, spare parts, etc.). [redacted] It would be unreasonable and contrary to the RFP's terms to rate an unproven plan as equal to or superior than a proven plan.

**2. <u>"Proposal Risk" Evaluation Factor</u>**

53. As documented in Part C above, the Air Force gave the [redacted]

54. Under the RFP's terms, Interspiro should have received a better rating-and certainly not a lower rating under this evaluation factor--than MSA. For this evaluation factor, the RFP provides: "Proposal risk assessment focuses on the weaknesses associated with an offeror's proposed approach and includes an assessment of the potential for disruption of schedule, increased cost, degradation of performance, the need for increased Government oversight, and the likelihood of unsuccessful contract performance." RFP at 29.

55. In light of its years of experience as the incumbent contractor for the Air Force as well as its existing SCBA/PAPR design, Interspiro should have received considerably higher ratings under this evaluation factor than MSA, which lacks both the relevant experience and a

proven SCBA/PAPR design. MSA's proposal clearly poses a greater risk for disruption of schedule, increased cost, degradation of performance, the need for increased Government oversight, and the likelihood of unsuccessful contract performance [redacted] The Air Force's [redacted] risk rating for Interspiro's program production plan was clearly erroneous.

3. **"Present and Past Performance" Evaluation Factor**

56. Interspiro's performance for ten years as the Air Force's supplier of SCBAs also sets it apart from MSA under this evaluation factor. A new contractor such as MSA must be expected to encounter issues. MSA, unlike Interspiro, would have to start fresh to develop the resources and knowledge base to overcome these issues. Furthermore, the contracts that Interspiro submitted for the Air Force to consider demonstrated Intersprio's past expertise in development and production of SCBA systems and related products. In addition, Intersprio is proposing the production of a product which it has completed.

57. Significantly, the Air Force made the determination under this evaluation factor that: [redacted] Based on the facts and the RFP's terms, it would have been unreasonable to have awarded a higher score to MSA under this evaluation factor. The Air Force did not properly apply the RFP's terms to its evaluation of Interspiro's and MSA's past performance, and unreasonably evaluated their relative experience and performance. In any event, nothing under this evaluation factor could possibly overcome Interspiro's huge price advantage.

**4. Small Business Participation Evaluation Factor**

58. Interspiro clearly is superior under this final evaluation factor. It is a small business. In contrast, MSA is a large business whose stock is traded on the New York Stock Exchange. To state the obvious, this evaluation factor provides no basis for overcoming Interspiro's huge price advantage. Any reasonable evaluation of this factor under the RFP's terms would support fully an award to Interspiro.

**G. Additional Instances of the Air Force's Failure to Follow the RFP's Terms**

59. In addition to the errors set forth above, the Air Force failed to follow the specific terms of the RFP in ways that materially prejudiced Interspiro.

**1. The Air Force Improperly Required Non-Certification Test Data in Factor One, Subfactor One**

60. The Air Force has admitted that, in order to receive a score of Blue/Exceptional under Factor I, Subfactor One, an offeror was required to fulfill additional, unannounced data submission requirements, including submission of unverified developmental test data rather than verified certification test data.

61. This violated the terms of the RFP, which allowed submission of additional test data only if generated in the process of obtaining "additional certifications." RFP at 24 (stating as an example of additional information that could be used to achieve a rating of Blue/Exceptional "additional certifications and test data [other] than those identified in Subfactor One . . . .").

**2. The Air Force Failed to Use the Most Up To Date NIOSH Standard For Evaluation**

62. The RFP required the Air Force to use the most current version of the NIOSH Concept for Chemical, Biological, Radiological, and Nuclear (CBRN) Tight Fitting Power Air Purifying Respirator (PAPR) Standard. See RFP at 7 (stating that "should these existing

standards be replaced by a newer numbered or titled standard, the most current standard shall always apply").

63. However, while the RFP originally listed the 2004 version of this standard, in November 2005, a new 2005 standard was issued. According to the terms of the RFP, the Air Force should have applied this newer standard, but it did not.

### 3. The Air Force Failed To Properly Assess the Risk of "Increased Costs" Posed by MSA's Proposal

64. Under Factor II (Proposal Risk), the Air Force was required to assess the potential for "increased cost" associated with each offeror's proposal. RFP at 29.

65. However, the Air Force failed to consider future "life-cycle" costs associated with the operation and maintenance of the equipment of the bidders.

66. The Air Force also failed to consider the potential risk of increased cost of an award to MSA stemming from Interspiro's pending patent on the dual mode mask that is at the heart of this procurement.

## COUNT I

## FAILURE TO EVALUATE PROPOSALS REASONABLY AND IN ACCORDANCE WITH RFP'S REQUIREMENTS

67. Interspiro incorporates by reference paragraphs 1-66 of the Complaint as if fully set forth herein.

68. FAR § 12.602(b) (which governs FAR part 12 procurements like this one) states that "[o]ffers **shall** be evaluated in accordance with the criteria contained in the solicitation." (emphasis added). Similarly, 10 U.S.C. § 2305(b)(1) states, "The head of an agency shall evaluate sealed bids and competitive proposals and make an award based **solely** on the factors specified in the solicitation." (emphasis added).

69. The Air Force acted arbitrarily, capriciously and in violation of law by failing to adhere to the RFP's requirements.

70. The Air Force's evaluation of proposals was also unreasonable and contrary to the facts and information before the agency.

71. Interspiro was prejudiced by the Air Force's failure to adhere to these requirements. The Air Force's failure to adhere to the terms of the RFP prevented Interspiro from receiving the contract award by denying it the opportunity to fairly compete for award.

72. Interspiro has no adequate remedy at law to challenge the Air Force's action.

73. The public interest will be served by proper enforcement of procurement laws. Moreover, there is no prejudice to the Air Force from requiring compliance with applicable statutes and regulations.

## COUNT II

## FAILURE TO PROPERLY CONSIDER PRICE AND WEIGH PRICE AND NON-PRICE FACTORS

74. Interspiro incorporates by reference paragraphs 1-73 of the Complaint as if fully set forth herein.

75. The law and the RFP require that the agency meaningfully consider, in making a source selection decision, whether "one proposal's superiority under the non-price factor[s] is worth a higher price." Beautify Professional Services Corp., B-291954.3 2003 U.S. Comp. Gen. LEXIS 165 at *11-12 (October 6, 2003); see also RFP at 17 (providing that a contract may only be awarded to a higher priced offeror where "the decision is consistent with the evaluation factors," and the SSA "reasonably determines" that the technical factors "outweigh[] the cost difference.").

76. The Air Force acted arbitrarily and capriciously in failing to adhere to these requirements, as set forth above.

77. Interspiro was prejudiced by the Air Force's failure to adhere to these requirements, because it was denied the opportunity to fairly compete for award of the contract.

78. Interspiro has no adequate remedy at law to challenge the Air Force's action.

79. The public interest will be served by proper enforcement of procurement laws. Moreover, there is no prejudice to the Air Force from requiring compliance with applicable statutes and regulations.

## COUNT III

## FAILURE TO TAKE APPROPRIATE CORRECTIVE ACTION

80. Interspiro incorporates by reference paragraphs 1-79 of the Complaint as is fully set forth herein.

81. The Air Force failed to take appropriate corrective action after announcing on March 20, 2006, that it determined that corrective action was necessary in light of Interspiro's prior GAO protests. The Air Force failed to conduct a new evaluation of proposals or take other steps that could possibly have addressed the protest grounds raised by Interspiro.

82. Having acknowledged that its original award decision under the RFP was flawed and could not stand in light of Interspiro's protest allegations, the Air Force had an obligation to take full and appropriate corrective action. Its failure to do so was unreasonable, arbitrary, capricious and not in accordance with law.

## COUNT IV

## FAILURE TO EVALUATE ALL OF THE INFORMATION PRESENTED IN ACCORDANCE WITH RFP'S REQUIREMENTS

83. Interspiro incorporates by reference paragraphs 1-82 of the Complaint as if fully set forth herein.

84. An agency is required to consider relevant, significant information that is presented to it in a proposal. "An agency's decision can be found to be arbitrary and capricious where the agency entirely failed to consider an important aspect of the problem." Sys. Plus, Inc. v. United States, 69 Fed. Cl. 757, 766 (Ct. Cl. 2006) (internal quotations omitted). Furthermore, under the law, "[a]gencies are required to evaluate proposals consistent with the RFP's stated evaluation criteria, including considerations reasonably and logically encompassed by the stated factors." Matter of: Accurate Automation Corp., B-292403, 2003 U.S. Comp. Gen. LEXIS 177 at *20 (September 10, 2003).

85. The Air Force acted arbitrarily, capriciously and in violation of law by failing to evaluate all of the information presented by Interspiro in accordance with the RFP's requirements.

86. The Air Force's evaluation of proposals failed to consider important factors present before the agency.

87. Interspiro was prejudiced by the Air Force's failure to evaluate all of the information presented in accordance with the RFP's requirements. The Air Force's failure in this regard prevented Interspiro from receiving the contract award by denying it the opportunity to fairly compete for award.

88. Interspiro has no adequate remedy at law to challenge the Air Force's action.

89. The public interest will be served by proper enforcement of procurement laws. Moreover, there is no prejudice to the Air Force from requiring compliance with applicable law.

## COUNT V

## FAILURE TO EVALUATE PROPOSALS CONSISTENTLY

90. Interspiro incorporates by reference paragraphs 1-89 of the Complaint as if fully set forth herein.

91. Agencies are required under the law to evaluate each submitted proposal consistently, equally and fairly: "[A]n agency must consistently evaluate and score all proposals and a failure to review all proposals on the same basis renders a decision arbitrary, capricious, and unlawful." Honeywell Fed. Sys., Inc., 89-1 B.C.A. (CCH) P21,444, 1989 GSBCA LEXIS 13 at *53 (January 24, 1989); "It is a fundamental principal of government procurement law that **an agency must treat all offerors equally** and evaluate their offers consistently against the solicitation's requirements . . . . [D]isparate treatment of the firms['] [offers] was inconsistent with the requirement that all firms be treated equally, and thus was improper." In re: Infrared Tech. Corp.-Reconsideration, B-255709.2, 1995 U.S. Comp. Gen. LEXIS 595 at *8-9 (September 14, 1995) (emphasis added).

92. The Air Force acted arbitrarily, capriciously and in violation of law by failing to evaluate Interspiro's and others' proposals consistently in this procurement..

93. The Air Force's inconsistent evaluation of proposals was also unreasonable and contrary to the facts and information before the agency.

94. Interspiro was prejudiced by the Air Force's failure to adhere to this requirement. The Air Force's failure to evaluate Interspiro's proposal consistently prevented Interspiro from receiving the contract award by denying it the opportunity to fairly compete for award.

95. Interspiro has no adequate remedy at law to challenge the Air Force's action.

96. The public interest will be served by proper enforcement of procurement laws. Moreover, there is no prejudice to the Air Force from requiring compliance with applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Interspiro respectfully requests that the Court enter judgment against the United States and further requests

A. An injunction requiring the Air Force to terminate and cancel the contract awarded to MSA pursuant to the RFP;

B. An injunction requiring the Air Force to award the contract to Interspiro consistent with the RFP's terms and applicable law;

C. An injunction requiring the Air Force to take other corrective action as appropriate;

D. A declaratory judgment that the Air Force's award to MSA is arbitrary, capricious, or contrary to law;

E. The award of attorney's fees, costs, proposal preparation expenses, and any other relief that this Court deems just and proper under the circumstances.

Dated this 1st day of September, 2006.

Respectfully Submitted,

David R. Hazelton, Esq. (Counsel of Record)
Joshua K. Chandler, Esq.
LATHAM & WATKINS LLP
555 11th St., N.W., Suite 1000
Washington, D.C. 20004-1304
Direct Dial: (202) 637-2254
Facsimile: (202) 637-2201
David.Hazelton@lw.com
Joshua.Chandler@lw.com

Counsel for Plaintiff Interspiro, Inc.

Of Counsel:

Kyle R. Jefcoat, Esq.
David P. Palmer, Esq.
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Direct Dial: (202) 637-2200
Facsimile: (202) 637-2201
Kyle.Jefcoat@lw.com
David.Palmer@lw.com

Kevin A. Russell, Esq.
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Direct Dial: (312) 876-7693
Facsimile: (312) 993-9767
Kevin.Russell@lw.com